IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RODRIGO ARREOLA, as parent    *
of Hector Arreola, Deceased,    *
and as Personal Representative and    *
Administrator of the Estate of Hector Arreola,    * CIVIL ACTION FILE NO.
CONCEPCION ARREOLA,  as parent of Hector Arreola,    *
and S.A, minor child of Hector Arreola,    *
by next friend Jezreel Imee Custodio,    *
       Plaintiffs,    *
   * Jury Trial Demanded
v.    *
   *
THE CONSOLIDATED GOVERNMENT OF    *
COLUMBUS, GEORGIA,    *
OFFICER MICHAEL AGUILAR, in his individual    *
and official capacity, OFFICER BRIAN DUDLEY,    *
in his individual and official capacity,    *
OFFICER AARON EVRARD, in his individual    *
and official capacity, and    *
COLUMBUS POLICE DEPARTMENT    *
CHIEF OF POLICE RICHARD T. BOREN,    *
in his individual and official capacity,    *
       Defendants.    *

## <u>COMPLAINT</u>

### PRELIMINARY STATEMENT

COME NOW, RODRIGO ARREOLA, as the parent of Hector Arreola, the deceased, and as Personal Representative and Administrator of the Estate of Hector Arreola, CONCEPCION ARREOLA, as parent of Hector Arreola, and S.A., minor child of Hector Arreola, by and through her mother and next friend Jezreel Imee Custodio, Plaintiffs herein, hereby filing this Complaint for Damages against the above-named Defendants, showing the Court as follows:

### INTRODUCTION

1.

This is a civil rights action wherein the Plaintiffs herein named seek relief for the wrongful death of Hector Arreola and the Defendants' violation of Hector Arreola's rights secured by the Civil

Rights Act of 1871 and 42 U.S.C. § 1983; by the United States Constitution, including the Fourth and Fourteenth Amendments; and by the laws and Constitution of the State of Georgia including O.C.G.A. §§ 51-4-1 to 51-1-5 and O.C.G.A. § 19-7-1.

2.

This action arises from Officer Michael Aguilar (Officer Aguilar), Officer Brian Dudley (Officer Dudley), and Officer Aaron Evrard's (Officer Evrard) (collectively the "police officers") objectively unreasonable and excessive use of force against Hector Arreola (Arreola) and their deliberate indifference to Arreola's serious medical needs on January 9, 2017, in their capacity as Columbus Police Department police officers. A struggle between Arreola and the police officers arose out of a police action which commenced in Columbus, Muscogee County, Georgia, when Officer Dudley and Officer Aguilar decided to arrest Arreola for disorderly conduct purportedly to facilitate mental health assistance for Arreola.

3.

During the struggle, the police officers collectively restrained Hector Arreola face-down on his stomach for over six minutes while he begged for his life. When Arreola could no longer speak, he whimpered & moaned. The police officers ignored Arreola's obvious distress, continued to apply force even after they handcuffed Arreola, and thereby effectively denied Arreola the medical assistance he urgently needed to live. In fact, for over two minutes after he was handcuffed, the police officers continued to ride Arreola's back and neck and to push Arreola's face and body into the ground preventing him from breathing properly which caused his death.

4.

Officers Dudley and Aguilar summoned the Columbus, Georgia Fire and Emergency Medical Services Department (Columbus EMS) first for a "psych. eval.," and then again just prior to the struggle, instructing "Routine. No lights and siren. Hard no siren." After the police officers had Arreola in custody,

they never alerted Columbus EMS that there was any emergency or reason for concern even though the serious medical need was obvious. Shortly after Arreola left the scene in an ambulance, he suffered cardiac arrest which resulted in his death. Arreola was declared brain dead and he was disconnected from life support the day after his encounter with the police officers.

5.

Plaintiffs also assert pendant state law claims of for Arreola's wrongful death, battery, and violation of the Georgia Constitution against the named Defendants. Plaintiffs seek compensatory damages, all special damages including medical and funeral expenses, punitive damages, damages for the full value of decedent's life, an award of costs, interest and attorney's fees, and such other and further relief as is available and this Court and the jury deem just and proper.

## JURISDICTION AND VENUE

6.

The Court has jurisdiction over all causes of action set forth in this Complaint based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343, to obtain redress for deprivation of rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  Plaintiff invokes the pendant or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. § 1367 and other applicable law.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and M.D.L.R. 3.4 because a substantial part or all of the events giving rise to this claim occurred in Columbus, Muscogee County, Georgia, which is situated within the district and divisional boundaries of the Columbus Division of the Middle District of Georgia, and because one or more of the Defendants reside within said district and division.

8.

All of the parties herein are subject to the jurisdiction of this Court.

9.

Plaintiffs timely presented their claims to the Consolidated Government of Columbus, Georgia (the City) pursuant to O.C.G.A. § 36-11-1 and other applicable law. (Exhibit 1- Ante Litem Notice.)

## PARTIES

10.

Plaintiff Rodrigo Arreola, a United States citizen, is the father of Hector Arreola, and resides in Columbus, Muscogee County, Georgia. Rodrigo Arreola is entitled to bring this action individually and as the parent of the Decedent, and for the benefit of the Estate of Hector Arreola, as the Administrator and personal representative thereof. Before he was killed due to the acts and omissions complained of in this case, Hector Arreola, was thirty years of age, a resident of Muscogee County, Georgia, and he was the father of S.A., a minor child, born to her mother Jezreel Imee Custodio.

11.

Plaintiff Concepcion Arreola, a United States citizen, is the mother of Hector Arreola, and she resides in Columbus, Muscogee County, Georgia at 760 Moss Drive. Concepcion Arreola is entitled to bring this action as the parent of the Decedent.

12.

Plaintiff S.A., a United States citizen, is the minor daughter of Hector Arreola. S.A. resides with her mother Jezreel Imee Custodio, in Suwanee, Gwinnett County, Georgia. S.A. is entitled to recover for the wrongful death of her father. Jezreel Imee Custodio is entitled to bring this action for the benefit of the minor child as next friend.

13.

Defendant Officer Michael Aguilar was, at all times relevant herein, a Columbus, Georgia, police officer employed by the Columbus Police Department and acting in that capacity at all times relevant herein. Officer Aguilar acted within the scope of his employment which was governed by the policies and procedures of the Columbus Police Department, a department of the Consolidated Government of Columbus, Georgia (the City). Said Defendant is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent care of James C. Clark, Jr., Page, Scrantom, Sprouse, Tucker & Ford, P.C., Synovus Center, 1111 Bay Avenue, 3rd Floor, Columbus, Georgia, 31901, with a mailing address of P.O. Box 1199, Columbus, GA 31902-1199. Otherwise, Officer Aguilar is believed to be a resident of and domiciled in Columbus, Muscogee County, Georgia, and may be personally served at his residence or wherever he may be found.

14.

Defendant Officer Brian Dudley was, at all times relevant herein, a Columbus, Georgia, police officer employed by the Columbus Police Department and acting in that capacity at all times relevant herein. Officer Aguilar acted within the scope of his employment which was governed by the policies and procedures of the Columbus Police Department, a department of the Consolidated Government of Columbus, Georgia (the City). Said Defendant is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent care of James C. Clark, Jr., Page, Scrantom, Sprouse, Tucker & Ford, P.C., Synovus Center, 1111 Bay Avenue, 3rd Floor, Columbus, Georgia, 31901, with a mailing address of P.O. Box 1199, Columbus, GA 31902-1199. Otherwise, Officer Aguilar is believed to be a resident of and domiciled in Columbus, Muscogee County, Georgia, and may be personally served at his residence or wherever he may be found.

15.

Defendant Officer Aaron Evrard was, at all times relevant herein, a Columbus, Georgia, police officer employed by the Columbus Police Department and acting in that capacity at all times relevant herein. Officer Aguilar acted within the scope of his employment which was governed by the policies and procedures of the Columbus Police Department, a department of the Consolidated Government of Columbus, Georgia (the City). Said Defendant is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class mail sent care of James C. Clark, Jr., Page, Scrantom, Sprouse, Tucker & Ford, P.C., Synovus Center, 1111 Bay Avenue, 3rd Floor, Columbus, Georgia, 31901, with a mailing address of P.O. Box 1199, Columbus, GA 31902-1199. Otherwise, Officer Aguilar is believed to be a resident of and domiciled in Columbus, Muscogee County, Georgia, and may be personally served at his residence or wherever he may be found.

16.

Defendant Richard T. Boren, was and is at all times relevant herein, the duly appointed Chief of Police of the Columbus Police Department which is a department of the Consolidated Government of Columbus, Georgia (the City) which is the governing entity of Columbus, Muscogee County, Georgia. As Chief of Police, Defendant Richard T. Boren (Chief Boren) is responsible for setting the policy that his officers are expected to follow and for making sure that said policy is followed. Chief Boren is also responsible for the hiring, training, discipline and supervision of the employees of the Columbus Police Department. Said Defendant is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class Mail sent care of James C. Clark, Jr., Page, Scrantom, Sprouse, Tucker & Ford, P.C., Synovus Center, 1111 Bay Avenue, 3rd Floor, Columbus, Georgia, 31901, with a mailing address of P.O. Box 1199, Columbus, GA 31902-1199.

17.

The Consolidated Government of Columbus, Georgia (the City), also known as the Columbus Consolidated Government, is and was at all times relevant herein the duly organized governing entity of Columbus, Muscogee County, Georgia, created and existing by virtue of the laws of the State of Georgia, an entity subject to suit, and subject to the jurisdiction of this Court. The City is liable for constitutional deprivations pursuant to governmental custom, policy, or practice whether written or unwritten. Monell v. New York Dept. of Social Services, 436 U.S. 658 (1978).

The City's policies, practices, and customs, through its police department, were a moving force in the constitutional violations described in this Complaint. Said Defendant is subject to the jurisdiction of this Court and may be served with process by request for waiver of service by First Class Mail sent care of James C. Clark, Jr., Page, Scrantom, Sprouse, Tucker & Ford, P.C., Synovus Center, 1111 Bay Avenue, 3rd Floor, Columbus, Georgia, 31901, with a mailing address of P.O. Box 1199, Columbus, GA 31902-1199.

18.

At all times relevant herein, Defendants acted under color of state law. Defendants OFFICER AGUILAR, OFFICER DUDLEY, OFFICER EVRARD, and CHIEF OF POLICE RICHARD T. BOREN are sued in their individual and official capacities.

## FACTUAL ALLEGATIONS

19.

Each of the foregoing facts and paragraphs is incorporated as if fully set forth herein. Moreover, the facts set forth in the remainder of this Complaint are applicable to all Counts, Claims, Rights and Causes of Action asserted herein.

20.

At 3:40 A.M. on January 9, 2017, Hector Arreola (Arreola) contacted the Columbus Police Department via their 911 system for assistance. At that time, Arreola was at the Efficiency Lodge Hotel, 1776 Boxwood Place, Columbus, Muscogee County, Georgia.

21.

Officer Brian Dudley, 1-Adam 25, and Officer Michael Aguilar, 1-Adam 28, were sent to 760 Moss Drive, Columbus, Muscogee County, Georgia, to check on the welfare of Concepcion Arreola.

22.

Officers Dudley and Aguilar knocked on Concepcion Arreola's door, waking her. Concepcion Arreola said she was fine and the officers left.

23.

Arreola placed another call to Columbus 911 at 4:55 A.M., on January 9, 2017, explaining he left his hotel room earlier before the police arrived because he needed to check on his mother. Arreola asked Columbus 911 dispatch to send police officers back to 760 Moss Drive, Columbus, Georgia, to check on his mother again.

24.

Officers Dudley and Aguilar went back to 760 Moss Drive to meet with Arreola.

25.

Officers Dudley, Aguilar, and Evrard each had a recording device (body cam) attached to their body which captured audio and video of the events on January 9, 2017, at 760 Moss Drive, 747 Moss Drive, and some portion of the subsequent events relevant hereto. All three had recording devices affixed to their patrol cars too.

26.

Officer Dudley's body cam came loose from his body during a struggle with Arreola, but it

continued to record properly.

27.

Officer Aguilar's body cam recorded video throughout the encounter with Arreola, but its audio was lost at approximately 5:26:29 A.M.

28.

When Officers Dudley and Aguilar returned to 760 Moss Drive, they met Arreola. Arreola exited his car to speak with the officers.

29.

Arreola acted strangely, and Officers Dudley and Aguilar quickly suspected that he suffered from drug use, a mental health problem, or both.

30.

At 5:14:20 A.M., less than five minutes after his arrival, Officer Aguilar asked Arreola if "[he had] ever been diagnosed with anything. Like paranoia, schizophrenic – anything?"

31.

Arreola denied mental illness and alcohol abuse.

32.

Officers Aguilar and Dudley attempted to determine why Arreola believed his mother was in danger. Eventually, Arreola's mother came out to the road in twenty-degree weather to reason with her son in an attempt to get him inside. Arreola declined.

33.

Arreola questioned the motives and identities of Officers Dudley and Aguilar and indicated that he would go stay with a friend in the neighborhood.

34.

Then Arreola walked into a neighboring yard. Officer Aguilar asked Arreola to return to the

street.

35.

At 5:21:04 A.M., Officer Dudley requested EMS respond to 760 Moss Drive for a "psych eval", whereupon Officers Dudley and Aguilar decided to detain Arreola.

36.

Then, Officer Dudley asked, "You got gloves?" In response, Officer Aguilar remarks, "Dude. He's gonna fight like hell. At this point, why don't we just let him… let him settle down."

37.

Officers Dudley and Aguilar walked toward Arreola who had approached the residence at 747 Moss Drive knocking on the door.

38.

Officers Dudley and Aguilar instructed Arreola leave the yard at 747 Moss Drive or face jail.

39.

Arreola disregarded the officers' instructions. Arreola also ignored his mother's entreaties to return home.

40.

At 5:24:30 A.M., as the officers and Concepcion Arreola continued to reason with Arreola, Officer Aguilar radioed, "28, dispatch. If you could have EMS just come, routine. No lights, no sirens. Hard no siren."

41.

Then, Officers Aguilar and Dudley approached Arreola to place him in custody.

42.

Officers Dudley and Aguilar struggled with Arreola as Arreola protested, "I didn't do nothing!"

43.

At 5:25:15 A.M., Arreola's struggle with Officers Dudley and Aguilar began.

44.

As the struggle unfolded, all three men fell to the ground in the front yard at 747 Moss Drive, Columbus, Muscogee County, Georgia.

45.

Arreola screamed, "Ma! They're gonna kill me!" and continued to resist the officers' efforts to handcuff him by holding his hands under his body.

46.

The officers instructed Arreola to roll over on his stomach as he asked whether the events were being recorded.

47.

Officers Dudley and Aguilar put Arreola on his stomach with his face in the dirt, and they sat on his back. They also put their knee(s) in Arreola's back and upper torso.

48.

At 05:26:50 A.M., Officer Aguilar told Officer Dudley, "Just flatten him out," while Arreola continued to scream, "Ma! They're going to kill me!"

49.

In his audio recorded January 10, 2017, statement to the Columbus Police Department's Office of Professional Standards (OOPS) investigators, Officer Aguilar said he weighed 300 lbs. or more when he struggled with Arreola, and he sat in the middle of Arreola's back so that he could flatten him out.

50.

After Officer Aguilar indicated to Officer Dudley that the strategy was to flatten Arreola,

and immediately after Officer Aguilar said, "I'm flattening him," Arreola first said that he could

not breathe, crying, "Ow. I can't breathe," at 5:27:17 A.M.

51.

Arreola said that he could not breathe at least 13 times after he first complained that he could

not breathe.

52.

Arreola's complaints that he couldn't breathe became progressively weaker.

53.

In agony, Arreola sobbed. As he audibly choked, gasped, and struggled to breathe, Arreola

begged for help.

54.

At 05:27:38 A.M., in response to Arreola's complaint that he couldn't breathe, and when

Concepcion Arreola expressed concern, Officer Aguilar said, "He can breathe." Four seconds earlier,

Officer Aguilar reported to dispatch that they had Arreola "contained" but not handcuffed.

55.

At 05:29:09 A.M., Officer Dudley alerted Officer Aguilar that he had secured the last

handcuff.

56.

At 5:29:16 A.M., Officer Aguilar reported, "28 to Dispatch. We finally got him in

handcuffs. You can slow down all the units."

57.

After he was handcuffed, Arreola continued to sob, beg, and plead for help, and he ceased

resisting and struggling with the police.

58.

At 5:29:28 A.M., Arreola again cried, "I can't breathe in!"

59.

Responding to a call for additional officers, Officer Aaron Evrard arrived on scene. At 5:29:24 A.M., he turned off his siren and exited his patrol car.

60.

At 05:29:54 A.M., Officer Evrard arrived in the yard at 747 Moss Drive and approached Officers Dudley and Aguilar.

61.

At 05:30:01 A.M.,[1] as Officer Evrard approached Arreola, Dudley, and Aguilar, his body cam captured footage of Officer Aguilar seated with his full weight on Arreola's upper buttocks/lower back and Officer Dudley with his left knee in Arreola's mid-back. Arreola was face-down, on his stomach with his hands securely cuffed behind his back.

62.

At 05:30:03 A.M., Officer Aguilar remarked to Officer Evrard, "Minimal force used." Then, Officer Evrard asked if they need a break. Thereafter, relieving Officers Aguilar and Dudley, Officer Evrard positioned himself on Arreola's back.

63.

A few seconds after Officer Evrard sat on Arreola's back, Columbus Police Department Police Officer Ronnie Oakes (Officer Oakes) arrived. Officer Evrard asked Officer Oakes to hold Arreola's legs. Officer Oakes did.

---

[1] The time was 05:31:14 on Officer Evrard's body cam. The time displayed on Officer Evrard's body cam was approximately 1:13 (one minute thirteen seconds) ahead of Officer Dudley and Aguilar's body cams. Unless stated otherwise, body cam times referenced herein will be based on the time displayed on Officers Dudley and Aguilar's body cams.

64.

Officer Evrard remained on Arreola's back until 5:31:17 A.M. when he stood up to pat Arreola down and search him.

65.

Arreola was continuously face-down, on his stomach for almost six minutes with a police officer or officers applying substantial force to his back and neck by sitting on him or by putting a knee into his back, or both.

66.

Even after Arreola was handcuffed, he remained face-down on the ground with heavy weight and substantial force applied to his back by police officers for over two minutes.

67.

Arreola was on his stomach, face down for over six minutes before Officer Aguilar, finally, heaved Arreola into a sitting position. When Arreola was placed in a sitting position, at 5:33:03 A.M., he was obviously unresponsive and in distress.

68.

Arreola posed no threat to any person or himself once he was contained.

69.

Arreola posed no threat to the safety of any person or himself after he was handcuffed.

70.

Arreola did not resist or struggle with the police after he was handcuffed.

71.

No less than 5 times after he was handcuffed and while a police officer remained on his back, Arreola sobbed, "I can't breathe."

72.

After he was handcuffed, Arreola continued to beg for his life and was in obvious physical distress. Arreola's mother expressed concern to the police officers repeatedly. Nevertheless, despite Arreola's obvious serious medical condition, Officers Dudley, Aguilar, and Evrard failed to alert Columbus EMS or anyone else that an emergency situation had developed requiring immediate medical care for Arreola.

73.

Even though the police officers noticed that Arreola was unresponsive and that his eyes were fixed and dilated, they failed to seek emergent treatment for Arreola's serious medical condition.

74.

After the police officers alerted dispatch that the scene was "clear for EMS," they stood around talking while they waited for EMS to respond "routine" as requested earlier. They rendered no aid to Arreola.

75.

The police officers briefed Columbus EMS personnel when they arrived on scene but failed to mention the extreme and prolonged force applied to Arreola's back, head, and neck. The police officers did not tell Columbus EMS personnel that Arreola complained of an inability to breathe until he became unresponsive.

76.

At some time prior to their contact with Arreola, Officers Evrard, Aguilar, and Dudley had been trained to take special precautions during arrests involving extreme physical exertion in order to avoid sudden in-custody deaths. The officers were trained to recognize the symptoms of "In-Custody Death Syndrome"; "Positional Asphyxia"; "Acute Exhaustive Mania"; and "Excited Delirium."

77.

The police officers were trained that when an agitated detainee under the influence of drugs is restrained in a stomach-down position with weight applied to the detainee's back, the detainee can experience compressional or positional asphyxia which results in difficulty breathing.

78.

The police officers were trained to get a handcuffed person off his stomach as soon as possible and to diligently monitor the detainee. They were also trained to recognize that breathing difficulties, loss of consciousness, or any combination thereof required immediate medical treatment and transport to an emergency room.

79.

The police officers were also trained that detainees suffering from an oxygen deficiency naturally struggle to breathe, causing the untrained officer to exert additional and unnecessary force which worsens the life-threatening situation.

80.

The police officers were also trained to avoid putting a knee or significant weight on a detainee's back unless absolutely necessary. If a knee or any weight was applied to a detainee's back, the police officers were trained to stop applying such force when the detainee was no longer a threat to anyone.

81.

Although the police officers were trained, the training was not provided by the Columbus Police Department. No policy, procedure, or training of the Columbus Police Department addressed the well-known need for special precautions during arrests involving extreme physical exertion and agitation in order to avoid sudden in-custody deaths.

82.

While Columbus EMS was transporting Arreola to the hospital, Arreola stopped breathing and suffered cardiorespiratory arrest.

83.

Although Arreola was under the influence of methamphetamine and amphetamine (likely a byproduct of the methamphetamine), it was not the cause of his death.

84.

As the direct result of the struggle with the police officers including the prolonged restraint in a prone, face-down position with significant force and weight applied to him as described herein, Arreola suffered gradual systemic acidosis and hypoxia which led directly to and proximately caused his cardiorespiratory arrest on January 9, 2017, and his subsequent death on January 10, 2017.

85.

The lack of urgency and deliberate indifference on the part of the police officers despite Arreola's obvious extremis and distress, and their failure to alert Columbus EMS personnel to his serious medical condition, led to significant delay in the application of necessary medical care. The lack of urgency, indifference, and resulting delay also directly and proximately caused Arreola's cardiorespiratory arrest on January 9, 2017, and his subsequent death on January 10, 2017.

86.

Each of the foregoing acts and omissions demonstrate that Officers Dudley, Aguilar and Evrard used objectively unreasonable and excessive force in the restraint and arrest of Hector Arreola, and that they were deliberately indifferent to Arreola's serious medical need. Thus, the police officers violated Hector Arreola's constitutional and statutory rights which resulted in his injury and wrongful death.

87.

The use of force by Officers Dudley, Aguilar and Evrard was not reasonable under the circumstances and violated Arreola's rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from unreasonable and excessive use of force as well as violating his rights under the Georgia Constitution and state law.

88.

Officers Dudley, Aguilar and Evrard's actions and omissions were deliberately indifferent, unnecessary, wanton and willful, and unjustified. Therefore, they are not entitled to official immunity under Georgia law.

**THEORIES OF RECOVERY**

**COUNT ONE – FOURTH AMENDMENT CLAIM**
**Officers Aguilar, Evrard and Dudley**
**(Excessive Force)**

89.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 88 above as if fully restated herein.

90.

The aforementioned misconduct of Defendants Officers Dudley, Aguilar and Evrard occurred while they acted in their discretionary capacity as officers of the Columbus Police Department.

91.

Detaining, restraining, and causing the death of Hector Arreola (Arreola) constituted a seizure of his person.

92.

Under the circumstances, the force used was objectively unreasonable and disproportionate to any alleged threat that Arreola posed and it was an unreasonable seizure of his person in violation of the Fourth Amendment of the United States Constitution.

93.

Even if Officers Dudley and Aguilar's initial use of force to detain Arreola were justified, the continued use of force by Officers Dudley, Aguilar and Evrard after Arreola was contained and in custody; after there was no danger to any officer or to any other person; and when Arreola was not resisting, was unnecessary, excessive, and objectively unreasonable under the circumstances.

94.

In January 2017, a reasonable police officer would have known that it was unlawful to use gratuitous, disproportionate, and unnecessary force against a person who is restrained and in custody; who does not pose any threat; or who has ceased to resist the police in any meaningful way. A reasonable police officer would also have known that it is unlawful to use force, especially severe and potentially deadly force, once a threat has ended. This is particularly true where the alleged crime is less severe in nature; where attempts to resist have ceased; and where the detainee's life is at risk. The use of force unlawfully was excessive force, was objectively unreasonably and violated the Fourth Amendment rights of Arreola.

95.

Since their conduct was obviously prohibited by the Fourth Amendment thereby making the constitutional violation readily apparent to the police officers, and since the constitutional violations herein were clearly established as such prior to January 2017, Officers Dudley, Aguilar and Evrard are not entitled to qualified immunity. See, e.g., Wate v. Kubler, 839 F.3d 1012, 1021 (2016)(officers had fair warning that plainly unnecessary force after defendant was handcuffed and ceased resisting was unconstitutionally excessive).

96.

As a direct and proximate result of the aforementioned acts and omissions Hector Arreola was injured and died depriving him of his rights under the United States Constitution and causing his

wrongful death for all of which the police officers are liable to the Plaintiffs.

## COUNT TWO – FOURTEENTH AMENDMENT CLAIM
### Officers Aguilar, Evrard and Dudley
### (Deliberate Indifference to Serious Medical Need)

97.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 96 above as if fully restated herein.

98.

The aforementioned misconduct of Defendants Officers Dudley, Aguilar and Evrard occurred while they acted in their discretionary capacity as officers of the Columbus Police Department.

99.

Officers Dudley, Aguilar and Evrard's deliberate indifference to the obvious and serious medical need of Hector Arreola, who was in their custody, violated Hector Arreola's Fourteenth Amendment rights.

100.

The unreasonable lack of urgency and deliberate indifference on the part of Officers Dudley, Aguilar and Evrard despite Arreola's obvious extremis and distress, and their failure to alert Columbus EMS personnel or anyone else to his serious medical condition, led to significant delay in obtaining necessary medical intervention. The unreasonable lack of urgency, deliberate indifference, and resulting delay directly and proximately caused Arreola's cardiorespiratory arrest on January 9, 2017, and his subsequent death on January 10, 2017.

101.

Officers Dudley, Aguilar and Evrard had been trained and were therefore aware that there was a risk of serious harm or death under the circumstances and they disregarded said risk. In January 2017, a reasonable police officer would have known that such deliberate indifference to Arreola's

serious medical need was prohibited by the Fourteenth Amendment. Such disregard is unreasonable and unconscionable, and it violates the Fourteenth Amendment. Officers Dudley, Aguilar and Evrard are not entitled to qualified immunity. See generally, Mann v. Taser Intern, Inc., 588 F.3d. 1291 (2009).

102.

As a direct and proximate result of the aforementioned acts and omissions Hector Arreola was injured and died depriving him of his rights under the United States Constitution and causing his wrongful death for all of which the officers are liable to the Plaintiffs.

## COUNT THREE – SUPERVISORY LIABILITY CLAIM AGAINST CHIEF BOREN AND THE CITY
(42 U.S.C. § 1983 - Monell Liability- Use of Force)

103.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 102 above as if fully restated herein.

104.

On information and belief, Plaintiffs contend that Defendants the Consolidated Government of Columbus, Georgia (the City) and Columbus Police Department Chief of Police Richard T. Boren (Chief Boren) have at all times relevant hereto failed to appropriately train officers, particularly Officers Aguilar, Evard, and Dudley, regarding the manner in which force can be used to subdue or seize an individual who has not committed a crime or who has committed a minor offense.

105.

On information and belief, Plaintiffs contend that Defendants the City and Chief Boren have at all times relevant hereto maintained a system of inadequate policies, procedures, and training pertaining to the proper and permissible use of force by their officers when detaining an agitated person face-down on their stomach.

106.

On information and belief, Plaintiffs contend that Defendants the City and Chief Boren have at all times relevant hereto maintained a system of policies, procedures, and training insufficient to guide their officers on recognizing, avoiding, and responding to the dangers of serious injury or death caused by the application of weight to an agitated, restrained, face-down detainee's back or neck.

107.

The law enforcement community, including the Columbus Police Department and Chief Boren, has been aware for years that sudden in-custody injury and death whether denominated compressional or positional asphyxia, excited delirium, in-custody death syndrome, or by some other name, presents a serious risk of injury or death to detainees in circumstances similar to those Arreola and Officers Dudley, Aguilar and Evrard experienced.

108.

Despite having knowledge of these dangers and despite the obvious need for appropriate policies, procedures and training, Defendants the City and Chief Boren failed to institute sufficient policies, procedures and training, which foreseeably led to lethal consequences.

109.

The policy of the Columbus Police Department is established by and enforced by Chief of Police Richard T. Boren. All officers and personnel of the Columbus Police Department are under Chief Boren's command and act upon his authority and pursuant to his command.

110.

The Use of Force Policy of the Columbus Police Department, established, approved, and enforced by and at the direction of Chief Boren, consists of General Order 3-1, effective October 2016, in relevant part, emphasis in the original, (attached in full as Exhibit 2) reads as follows:

<u>USE OF FORCE</u>

<u>PURPOSE</u>

Officers of the Columbus Police Department will use reasonable force to affect lawful objectives in a manner that is responsive and in accordance with the constitutional rights of all citizens.

<u>POLICY</u>

It shall be the policy of the Columbus Police Department for all officers to use reasonable force to effectively perform the duties of a Police Officer. All officers of the Columbus Police Department shall use discretion in the application of non-deadly force and consider all the consequences of the use of non- deadly force.

3-1.1
<u>PROCEDURE</u>

A.     Officers are authorized to use reasonable force to:
   ▪ Defend themselves or protect others from non-deadly harm
   ▪ Make an arrest
B.     The authorized weapons allowed for non-deadly force are the:
   ▪ Issued ASP21" baton or 36" Crowd Control Baton
   ▪ Chemical Irritants - Oleoresin Capsicum (OC) Spray
   ▪ Taser X26
   ▪ Handcuffs, as a restraining device only
   ▪ Less Lethal Munitions (LLM), as issued
   ▪ Non-Lethal Munitions (NLM), as issued

Flashlights, radios, and other opportunistic objects are not authorized weapons and their use will be examined on a case-by-case basis. Officers must **be issued this policy and** complete the prescribed training prior to carrying or using LLM, NLM, ASP Baton, OC spray, or **Taser**.

Officers will receive refresher training in OC, ASP, NLM and LLM every two years during annual in-service training.

The Columbus Police Department does not train or authorize the use of any neck restraint or choke hold.

3-1.2
<u>USE OF FORCE</u>

Officers are empowered by law to use the reasonable force necessary to effect the arrest of an individual, who by the use of force, is resisting or obstructing the officer to prevent the officer from carrying out his lawful duty. Any officer that uses excessive force to effect an arrest or continues to use force after the person has submitted to arrest is subject to disciplinary action or termination from the Department.

3-1.4
<u>HANDCUFFS</u>

Each officer is issued a pair of "ratchet type" handcuffs.  When used properly, they are

extremely effective hand restraints.  When an officer uses handcuffs, they shall be used in such a manner to obtain maximum security. This is accomplished by double locking the handcuffs. Handcuffs are a defensive device and are to be employed for restraining purposes. Double-locking the handcuffs also prevents them from closing tighter, thereby causing the circulation to the hands to be stopped. Prisoners should be handcuffed with their hands behind their back unless a physical disability or other exigent circumstances exist.  When prisoners are in custody for an extended period of time, they may be handcuffed with hands in front of the body when a waist chain is used.

Any person in the custody or under the control of officers within the following categories shall be properly handcuffed:
- Felony prisoners;
- Belligerent or combative prisoners;
- Verbally abusive prisoners who may turn combative;
- Prisoners who might cause injury to themselves or others;
- Suspects who have been exposed to OC Spray; or
- Arresting or transporting officers may exercise that judgment consistent with good police practice to handcuff any prisoner they deem necessary to restrain.

Plastic flex cuffs may be used for mass arrests or when handcuffs are not available.  Special care shall be taken not to cut off circulation. A cutter should be readily available to remove the flex cuffs.

3-1.6
<u>USE OF LEG RESTRAINTS</u>
Officers shall not restrain a subject's legs by any means where the legs are bound to the hands. This position, commonly known as hog tying, has been linked to positional asphyxia. Suspects in custody will not be placed in a prone position in the Patrol vehicle.

111.

The Deadly Force Policy of the Columbus Police Department, established, approved, and enforced by and at the direction of Chief Boren, consists of General Order 3-2, effective May 2007. (Exhibit 3- Deadly Force Policy.)

112.

Although, great care is taken to describe the proper use of various non-deadly and deadly weapons, no policy addresses sudden in-custody injury and death whether denominated compressional or positional asphyxia, excited delirium, in-custody death syndrome, or otherwise, nor is there mention of any serious risk of injury or death to a detainee in circumstances which include the detention of an agitated, person face-down on their stomach, and when applying weight to a

detainee's back or neck.

113.

Positional asphyxia is mentioned in the Columbus Police Department policy in effect in January 2017, only briefly in conjunction with the use of leg restraints.

114.

The City and Chief Boren, who is a City policymaker and final decision maker, were on notice of the need and failed to promulgate and institute obviously needed, appropriate policies, procedures, and training, through either conscious decision or deliberate indifference to the rights of citizens, in particular to the Constitutional rights of Hector Arreola. Accordingly, the City and Chief Boren have supervisory liability under 42 U.S.C. §§ 1983 and 1988, because their failure to institute obviously needed, appropriate policies, procedures, and training, foreseeably caused Hector Arreola to be deprived of his Fourth and Fourteenth Amendment rights.

115.

The City and Chief Boren are liable to Plaintiffs for compensatory damages, special damages including medical and funeral expenses, damages for the full value of decedent's life, costs, interest and attorney fees, under 42 U.S.C. §§ 1983 and 1988. The policies, procedures, training, or lack thereof were a moving force in depriving Arreola of his rights under the United States Constitution and in causing his wrongful death.

## <u>COUNT FOUR – STATE CONSTITUTIONAL CLAIM</u>

116.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 115 above as if fully restated herein.

117.

Using excessive and unreasonable force against and being deliberately indifferent to

Arreola's serious medical condition not only violated the Fourth and Fourteenth Amendments but also violated their equivalent provisions under the Georgia Constitution, Art. 1, §1, ¶¶ 1, 13.

118.

In addition, use of excessive and unreasonable force and deliberate indifference to Arreola's serious medical condition, also amounted to abuse of a person being arrested in violation of the Georgia Constitution, Art. 1, §1, ¶17.

119.

As a direct and proximate result of the aforementioned acts and omissions, Hector Arreola was injured and died. He was deprived of his rights under the Georgia Constitution and wrongfully suffered death for all of which the police officers are liable to the Plaintiffs.

## COUNT FIVE – STATE LAW BATTERY CLAIM

120.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 119 above as if fully restated herein.

120.

The aforementioned acts of Officers Aguilar, Evrard, and Dudley in using excessive force without justification were an unlawful, willful, and injurious touching that constituted a battery under Georgia law.

121.

Since the use of excessive force was unjustified and willful, Officers Aguilar, Evrard, and Dudley thereby acted with impliedly malicious intent to do the wrong for which they are not entitled to official immunity under Georgia law.

122.

As a direct and proximate result of the aforementioned acts, Hector Arreola was injured and

died. He was deprived of his rights under Georgia law and wrongfully suffered death for all of which the police officers are liable to the Plaintiffs.

## **DAMAGES**

### 123.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 122 above as if fully restated herein.

### 124.

As a direct and proximate result of the above described acts or omissions of Defendants, Hector Arreola was deprived of his constitutional and statutory rights, suffered physical pain and mental anguish, injury, and died. Defendants are liable to the Plaintiffs for all damages proximately flowing from said deprivation of rights and for Arreola's wrongful death as alleged within this Complaint including, but not limited to, all economic and non-economic damages including pain and suffering, mental anguish and emotional distress (which includes shock, indignity, humiliation, fright, and fear of additional personal injury or death, prior to death), and the full value of Hector Arreola's life, all of which naturally and foreseeably flow from the actions and omissions of the Defendants as alleged within this Complaint.

### 125.

Defendants are liable to Plaintiffs for all of the foregoing injuries and damages in an amount to be proven at trial and to be determined by the enlightened conscience of fair and impartial jurors.

### 126.

The aforementioned acts or omissions of Defendants rose to such a level of bad faith, willfulness, and reckless disregard for the consequences as to also authorize the imposition of punitive damages against Defendants in their individual capacities.

127.

Plaintiffs are entitled to recover reasonable attorney fees and expenses of litigation on their federal claims pursuant to 28 U.S.C. § 1988, and because Defendants acted in bad faith in the incident that is the subject of this lawsuit, said Defendants are also liable for attorney fees and expenses under O.C.G.A. § 13-6-11.

**WHEREFORE**, Plaintiffs demand and pray for the following:

a)      That this action be tried by a jury;

b)      That judgment be entered in favor of Plaintiffs and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c)      That Plaintiffs be awarded attorney fees and reasonable expenses of litigation;

d)      That all costs of this action be taxed against Defendants; and

e)      That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.   A JURY TRIAL IS DEMANDED.

Respectfully submitted, this 8th day of January, 2019.

/s/ Mark C. Post
Mark C. Post
Georgia Bar No. 585575
Attorney for Plaintiff


Mark Post Law, LLC
3 Bradley Park Ct., Ste. F
Columbus, GA 31904
P: (706) 221-9371 | F: (706)221-9379
mpost@markpostlaw.com