IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| RODRIGO ARREOLA, as parent of Hector Arreola, Deceased, and as Personal Representative and Administrator of the Estate of Hector Arreola, CONCEPCION ARREOLA, as parent of Hector Arreola, and S.A., minor child of Hector Arreola, by next friend Jezreel Imee Custodio, <br><br> Plaintiffs, <br><br> v. <br><br> THE CONSOLIDATED GOVERNMENT OF COLUMBUS, GEORGIA, OFFICER MICHAEL AGUILAR, in his individual and official capacity, OFFICER BRIAN DUDLEY, in his individual and official capacity, OFFICER AARON EVRARD, in his individual and official capacity, and COLUMBUS POLICE DEPARTMENT CHIEF OF POLICE RICHARD T. BOREN, in his individual and official capacity, <br><br> Defendants. | Civil Action File Number: <br> 4:19-cv-00005-CDL |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs filed a civil rights Complaint asserting claims against Defendants pursuant to 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments, along with supplemental state law claims growing out of events that occurred on January 9, 2017, in Columbus, Georgia when Hector

Arreola (Arreola) suffered fatal injury as a result of the objectively unreasonable and unconstitutional use of excessive force by Officers Evrard, Dudley, and Aguilar named in their individual and official capacities. [*See generally* Plaintiffs' Complaint.]

The relevant and material facts surrounding these events and forming the general basis of Plaintiffs' claims are set forth in the Plaintiffs' Complaint and are incorporated herein by reference as well as significant testimony, investigatory statements, video-recorded events and other evidence referenced here and in Plaintiffs' Statement of Material Facts (PSMF) which is incorporated herein by reference.

Plaintiffs contend that Officers Evrard, Dudley, and Aguilar used force in a manner that was not objectively reasonable resulting in the death of Hector Arreola and that the officers were deliberately indifferent to Arreola's serious medical needs. These issues will be the focus of this Brief in Opposition along with the reasons why Defendants' Motion for Summary Judgment should be denied.

## STATEMENT OF FACTS

Plaintiffs incorporate by reference their concurrently-filed Plaintiffs' Response to Defendants' Statement of Material Undisputed Facts ("PRDSMF") and Plaintiffs' Statement of Material Facts (PSMF).[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, the moving party has the burden of showing the absence of a genuine issue as

---

[1] Facts supporting the Introduction are found at PSMF ¶¶ 1-85. More specific paragraph references are cited in the Argument below.

to any material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The evidence is viewed in the light most favorable to the party opposing summary judgment with all justifiable inferences drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).  Whether a fact is material depends upon whether it is relevant or necessary to the outcome of the case under the applicable law. *Id.* at 248. A factual dispute is genuine if the record could lead a reasonable jury to find for the non-moving party. *Id.*; *see Allen v. Tyson Foods, Inc.*, 121 F.3d at 646.

## ARGUMENT AND CITATION OF AUTHORITY

Defendants' Motion for Summary Judgment depends upon the Court adopting their version of facts which are disputed by the Plaintiffs. For the reasons listed herein, and because disputed facts are viewed in a light most favorable to the non-movant, Defendants' Motion should fail and should be denied.

### I. Plaintiffs' Federal Claims: Hector Arreola's Constitutional Rights Were Violated

#### A. Fourth Amendment Violations

It is undisputed that Hector Arreola (Arreola) was seized by officers performing their discretionary duties. [Complaint, Doc. 1 at 5-6, ¶¶ 13-15; Answer, Doc. 5 at 6, ¶¶ 13-15; Defendants' Statement of Material Undisputed Facts (DSMF) Doc. 12-2 at 4-8; Plaintiffs' Response to Defendants' Statement of Material Undisputed Facts (PRDSMF) ¶¶ 4-8.] Thus, the relevant inquiry is whether qualified immunity applies.[2] *Stephens v. DeGiovanni*, 852 F.3d 1298,

---

[2] In *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017), the Court defined qualified immunity as follows:
> "Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "A successful section 1983 action requires that the plaintiff show [he]

1314 (11th Cir. 2017)(when there is no dispute that government official acted within scope of discretionary authority, the burden shifts to plaintiff to show qualified immunity is not appropriate.) As explained below, qualified immunity does not apply because the officers' actions were not objectively reasonable.

To establish a Fourth Amendment violation based upon excessive force, Plaintiffs must show that Officer Dudley, Aguilar, and Evrard's conduct violated the "objective reasonableness" standard. *E.g.*, *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). "Excessive-force claims are fact-specific; whether the force an officer uses is *reasonable* 'requires careful attention to the facts and circumstances of each particular case.'" *Id.*, 852 F.3d at 1315 (11th Cir. 2017)(quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)(emphasis in original).

> To determine whether the force used to effect a seizure was objectively reasonable, we carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation omitted). Although some amount of force is generally needed to subdue a suspect, the amount used must be *reasonably proportionate* to the need for force. *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002). Courts consider several factors in judging the weight of the government's interests, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

*Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016)(emphasis added).

Three related factors also bear on whether force used by an officer in making an arrest was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens*, 852 F.3d 1298,

---

was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

1324 (11th Cir. 2017)(quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)(citations omitted)).[3] When weighing these factors, courts must not "simply accept the officer's subjective version of events," but should "reconstruct the event in the light most favorable to the non-moving party [to] determine whether the officer's use of force was excessive under those circumstances." *Stephens v. DeGiovanni*, 852 F.3d at 1315 (11th Cir. 2017) (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011)).

### 1. The Use of Force Was Constitutionally Excessive

The crux of the excessive force portion of this lawsuit is whether the police officers' conduct was constitutionally unreasonable once Hector Arreola was in custody and under control, and whether the amount of force the police applied was excessive in light of the circumstances. The parties agree that the police officers were entitled to use some amount of force to subdue Hector Arreola when the struggle began.[4] [Defendants' Brief in Support, Doc. 12-1 at 6; Complaint, Doc. 1 at 19, ¶¶ 93-94.]

Defendants argue that Hector Arreola was actively resisting the police even after he was handcuffed and that he was not under control. [Defendants' Brief in Support, Doc. 12-1 at 8-9.] Plaintiffs set forth evidence that paints a very different picture than the officers' subjective

---

[3] It is undisputed that Hector Arreola suffered cardiac arrest and died after his encounter with Columbus police. [PRDSMF ¶¶ 62-63.] For now, the cause of his physical injury and death has not been the subject of discovery. [PSMF ¶ 56, n. 3 and ¶ 59, n. 4.] As to the extent of the injury inflicted by the police officers, Plaintiffs have alleged and expect to show that Hector Arreola suffered severe hypoxic injury while he was being restrained and neglected by Officers Evrard, Dudley, and Aguilar which led to his irreparable brain damage and death. [PRDSMF ¶ 62-64.]
[4] Whether the police should have detained Hector Arreola at all, and whether the police could have employed more effective tactics than they did before the struggle ensued may cause reasonable people to differ. Nonetheless, the two use of force experts deposed in this case agree that some use of force prior to application of handcuffs was reasonable under the circumstances. [Deposition of William Harmening, Doc. 16 at 23, 30, 32, pp. 89:19-21, 117:9-15,127:22-23; Exhibit F, Deposition of Gregory J. Connor, Ex. 6, p. 4 at ¶ 3.]

characterization of the events which caused Hector Arreola's death. [PSMF ¶¶ 19-82.] That is, the evidence reveals Hector Arreola's progressive deterioration during and after the struggle with police such that it would have been evident to any reasonable officer that he was in distress, and that the force they used and continued to use after Arreola was handcuffed was unnecessary and constitutionally excessive.

Hector Arreola (Arreola) called 911 twice asking them to check on his mother Concepcion Arreola. [PSMF ¶¶ 1-2, 7-8.] In response to these calls, Officer Michael Aguilar (Officer Aguilar) and Officer Brian Dudley (Officer Dudley) responded to Arreola's mother house at 760 Moss Drive in Columbus, Georgia. [PSMF ¶¶ 3, 7-8.] Hector Arreola suffered from mental illness, drug use, or both when the officers encountered him on January 9, 2017. Officers Evrard and Dudley knew it. [PSMF ¶ 9.] The officers called EMS so Arreola could receive a psychological evaluation. They asked for "no lights, no siren" so Arreola would not react negatively. [PSMF ¶¶ 12, 15.] In the course of their interaction with Arreola, the officers decided to arrest him for disorderly conduct when Arreola knocked on his neighbor's door to request that they call 911 at 5:00 A.M. [PSMF ¶¶ 11-13.]

Arreola resisted when Officers Aguilar and Dudley attempted to arrest him. A struggle ensued. [PSMF ¶ 19.] The officers instructed Arreola to stop resisting but Arreola did not listen. Instead Arreola said he didn't do anything wrong and questioned whether the officers were really police. [PSMF ¶ 20 at 6-7.] As they struggled, Officer Dudley requested additional police units, to which Officer Aaron Evrard (Officer Evrard) replied that he was in route. [PSMF ¶ 20 at 7.]

As they struggled, 300 lb. Officer Aguilar told Officer Dudley to flatten Arreola out. That is what the officers did. [PSMF ¶¶ 21-23.] Immediately after Officer Aguilar said he was flattening Arreola, Arreola cried out that he couldn't breathe. [PSMF ¶ 23.] After Arreola's first cry that he

6

couldn't breathe, Officer Aguilar reported to 911 dispatch that they had Arreola contained. [PSMF ¶ 24.] Officer Aguilar reported to dispatch that Arreola was handcuffed and that they could slow down all responding units at 5:29:16 A.M. [PSMF ¶ 29.]

While Officers Aguilar and Dudley were handcuffing Arreola, they applied great weight to his back and neck while he was in a prone position. They continued to do so after Arreola was handcuffed. [PSMF ¶¶ 37, 39, 40-47.] During this time, Arreola audibly choked, gasped, and struggled to breathe. [PSMF ¶¶ 23-34.] Arreola's complaints that he couldn't breathe became progressively weaker. [PSMF ¶ 32.] Arreola continued to beg and plead for help after he was handcuffed. [PSMF ¶ 34.]

Officer Evrard arrived and offered to relieve Officers Dudley and Aguilar. As Officer Evrard approached Arreola and the two officers, Evrard's body camera (body cam) showed Dudley and Aguilar on Arreola's back/neck. Arreola was face down with his hands securely cuffed behind his back. [PSMF ¶¶ 35-37.] Officer Evrard took over and he sat down on Arreola's back. Officer Evrard remained on Arreola's back until 5:32:30 A.M. [PSMF ¶¶ 39-40.] During this time, Arreola ceased whimpering/moaning becoming silent. [PSMF ¶ 49.] After Arreola was face down for over six minutes, Officers Aguilar and Evrard heaved him into a sitting position. [PSMF ¶ 50.] By then Arreola had become unresponsive. [PSMF ¶ 72-73.]

Officers Dudley, Aguilar and Evrard were trained to watch for and detect the symptoms of compressional/positional asphyxia. [PSMF ¶ 51.] Compressional/positional asphyxia is a well-known, preventable danger to police detainees particularly those suffering from mental illness, obesity, narcotic use or a combination of these factors. Application of weight to the back and/or neck of a detainee in a prone position is known to result in sudden death from hypoxia especially after an intense struggle has occurred. [PSMF ¶ 52.] Having been trained, Officers Aguilar, Dudley

7

and Evrard knew the force that they exerted was excessive and dangerous. Nevertheless, they did not let up in time.

Applying the factors set forth in *Smith v. LePage*, *supra,* the government's interest in detaining Arreola was modest in this case. This is so because Arreola called the police and appeared to be mentally ill, and at most he committed the minor offense of disorderly conduct. Similarly, the need for force appears to low compared to the amount of force used by the officers. There was simply no need to remain on Arreola's back for as long as the officers did. Thus, the use of force against Arreola was disproportionate.

This case is similar to *Wate v. Kubler*, 839 F.3d 1012, 1021 (11th Cir. 2016), in that the officers in that case had reason to detain a mentally ill man. But the police continued their application of force once resistance ceased which was found to be wholly unnecessary, and grossly disproportionate to the circumstances. *Id.* As in *Wate*, Arreola ceased resisting the police after he was handcuffed. [PSMF ¶¶ 67-76.]

Arreola's case is distinguishable from *Callwood v. Jones*, 727 F. App'x 552, 560 (11th Cir.), *cert. denied*, 139 S. Ct. 100, 202 L. Ed. 2d 28 (2018). This is so because the officers in *Callwood* were faced with an unrestrained offender who continued his aggressive resistance to the officers' attempts to stop and secure him. *Id.* This case is more like *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009), which held that officers were not entitled to qualified immunity when they tased a suspect seven times while he lay clenched up on the hot asphalt pavement no longer resisting. It follows that the continued use of significant force upon Arreola after he was handcuffed was gratuitous and unreasonable. Accordingly, Arreola's constitutional rights were violated. *Id.*

2. **Plaintiffs' Rights Were Clearly Established**

Two methods are used to determine whether the right to be free from use of excessive force by the police is clearly established given the attendant circumstances.

> In an excessive-force case, where qualified immunity has been pled, "[o]ur circuit uses two methods to determine whether a reasonable officer would know that his conduct is unconstitutional" under the Fourth Amendment. *Fils*, 647 F.3d at 1291. The first considers "the relevant case law at the time of the violation; the right is clearly established if a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Id.* (citation, internal quotation marks, and alteration omitted). "This method does not require that the case law be 'materially similar' to the officer's conduct;" "[b]ut, where the law is stated in broad propositions, 'a very high degree of prior factual particularity may be necessary.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 740-41, 122 S. Ct. 2508, 2516, 153 L.Ed.2d 666 (2002)).
>
> The second method looks "not at case law, but at the *officer's conduct*, and inquires whether that conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, *notwithstanding the lack of fact-specific case law*.'" *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)) (alteration omitted) (emphasis added). The cases fitting this method are known as "obvious clarity," *id.* (quoting *Vinyard*, 311 F.3d at 1355), "a 'narrow exception' to the normal rule that only case law and specific factual scenarios can clearly establish a violation," *id.* (quoting *Lee*, 284 F.3d at 1198-99).

*Stephens v. DeGiovanni*, 852 F.3d 1298, 1315–16 (11th Cir. 2017).[5]

a. **Case law gave fair warning**

At the time that Arreola was injured and died, it was clearly established that the continued use of force against one who has ceased struggling and resisting was unreasonable under the Fourth Amendment. *Wate v. Kubler*, 839 F.3d 1012, 1022 (11th Cir. 2016).

---

[5] Some cases set forth three methods. *See, e.g., Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013)(plaintiff can demonstrate right is clearly established by 1. producing materially similar case; 2. by pointing to broad, clearly established principle that controls novel facts; or 3. showing conduct was so far beyond border between excessive and acceptable force that official had to know he was violating the Constitution.); *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)(plaintiff can show 1. materially similar case already decided, giving notice to police; 2. broader, clearly established principle should control novel facts; or 3. case fits within the exception of conduct which so obviously violates that constitution that prior case law is unnecessary).

Even when a suspect has struggled with police officers, once the threat ends, an officer's use of force is not justified. *Salvato v. Miley*, 790 F.3d 1286, 1294 (11th Cir. 2015)(unreasonable to shoot retreating suspect without warning even after suspect resisted arrest and struck officers multiple times).[6] *See also McKinney v. DeKalb Cty., Ga.*, 997 F.2d 1440, 1443 (11th Cir. 1993) (summary judgment properly denied when disputed facts allowed jury to conclude that victim had put down knife and was merely shifting position, rather than threatening anyone's safety); *Smith v. Mattox,* 127 F.3d 1416, 1418-20 (11th Cir. 1997)(per curiam)(qualified immunity denied when officer broke suspect's arm after suspect, who had just threatened officer with baseball bat, gave up). The officers in this case clearly knew or should have known based on their training that Arreola no longer posed a threat after he was handcuffed. [PSMF ¶ 41-76.]

Accordingly, these and other similar cases put Officers on notice that their conduct was unconstitutional. The officers are not entitled to qualified immunity.

### b. It was readily apparent that the Officers' conduct was prohibited

[A]lthough 'officials must have fair warning that their acts are unconstitutional, there need not be a case on all fours[ ] with materially identical facts, ... so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.' *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1277 (11th Cir. 2004) (internal quotation marks and citation omitted). Moreover, a 'plaintiff can point to a broader, clearly established principle [that] should control the novel facts in [his] situation.' *Morton v. Kirkwood,* 707 F.3d 1276, 1282 (11th Cir. 2013) (internal quotation marks and citations omitted).

---

[6] One factor is whether giving a warning is feasible. *See*, *e.g., Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015)(citing *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Circuit 2010). Officer Brown gave no warning before or during any of his 21 shots. It was feasible for him to do so. Indeed, the occupants of the car may have heard him, especially after he shot out the windows.

It has been "repeatedly held that police officers cannot use force that is 'wholly unnecessary to any legitimate law enforcement purpose.' *Ferraro*, 284 F.3d at 1199 (holding that slamming a handcuffed arrestee's head against a vehicle violated the Fourth Amendment); *see Slicker v. Jackson*, 215 F.3d 1225, 1227 (11th Cir.2002) (denying qualified immunity for an officer who kicked an arrestee already in handcuffs); *Priester v. City of Riviera Beach*, 208 F.3d 919, 926–27 (11th Cir. 2000) (denying qualified immunity to officers who allowed a police dog to attack an arrestee who was already on the ground)." *Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005). It is important to evaluate the level and immediacy of the threat -if one exists at all. *Mercado,* 407 F.3d at 1154-55, 1157-58 (officer not entitled to qualified immunity after using a "less lethal" weapon against an individual armed with knife because no immediate threat posed). These are obvious cases.

It is also obvious to any reasonable police officer -crediting the evidence of record- that Arreola was no longer a threat after he was handcuffed. He had ceased resisting and was in need of medical care. Thus, it should be readily apparent to any reasonable officer that the force applied to Arreola was unconstitutional and prohibited. *Oliver v. Fiorino*, 586 F.3d 898, 908 (11th Cir. 2009). Since this is an obvious clarity case, the officers are not entitled to qualified immunity.

### B. Fourteenth Amendment Violation

Defendant officers were deliberately indifferent to Arreola's serious medical needs. [PSMF 58-66.] Although the police officers called for EMS, they did not tell them to hurry or alert them to Arreola's dire need for medical care and his deteriorating condition. [PSMF ¶ 64-65.] The officers were trained to spot Arreola's deteriorating condition. [PSMF ¶ 51-57.] In addition, it was quite obvious to the officers that EMS was very slow to respond. [PSMF ¶ 66.]

> [A] pre-trial detainee [has] rights that exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. *See City of Revere v.*

11

> *Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983). Nonetheless, Plaintiffs' claims are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment. *See Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th Cir.1985) (holding that "in regard to providing pretrial detainees with such basic necessities as ... medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.") To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Goebert v. Lee County,* 510 F.3d 1312, 1326 (11th Cir.2007).
>
> A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer,* 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. *Hill,* 40 F.3d at 1188–89. In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003).

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)[7]

As in *Mann* Plaintiffs contend that Arreola's "excited delirium" presented a serious medical need. And Plaintiffs contend that the medical need is such that a delay in treatment worsened the condition. Therefore, since the evidence reflects the existence of a serious medical need, the issue then becomes deliberate indifference to that serious medical need.

In order to prove that an officer acted with deliberate indifference, Plaintiffs must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004). Unlike the situation in *Mann*, the law enforcement officers in this case were trained and on notice that their failure to take Arreola for immediate medical treatment would result in serious medical

---

[7] Plaintiffs expect to show that the delay in treatment was a significant contributing factor to Arreoola's death. However, causation is not in issue for the current motion. [PSMF ¶ 56, n. 3 and ¶ 59, n. 4.]

consequences including death. *Mann,* 588 F.3d at 1307 (record clearly indicated that deputies had no knowledge of the medical condition called "excited delirium" or its accompanying risk of death).

Arreola needed urgent medical attention and the officers should have cared enough to notice. They were indifferent. [Harmening Dep., Doc. 16 at 37-38, 147:25-150:9.] This was not mere negligence because they were trained. Willful blindness is not allowed. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1328 (11th Cir. 2007). It follows that Arreola's constitutional rights were violated.

And the officers are not entitled to qualified immunity as it is clearly established that intentional delays in providing access to medical treatment, knowing that the detainee has a life-threatening condition is deliberate indifference which is unconstitutional. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1330 (11th Cir. 2007). Furthermore, this is an obvious clarity case.

II.   Federal Claims against Boren

Plaintiff withdraws the claim against Chief Boren as it has become apparent through discovery that the officers were sufficiently trained with respect to positional/compressional asphyxia to pass constitutional muster.

III.   State Law Claims

Plaintiff withdraws state law claims against the officers as discovery revealed there is no evidence of actual malice. Similarly, there is no evidence that Chief Boren participated in the acts of his officers.

Respectfully submitted, this 13th day of December, 2019.

MARK POST LAW, LLC

By: */s/ Mark C. Post*
Mark C. Post
Ga. State Bar No.: 585575
*Counsel for Plaintiffs*

3 Bradley Park Ct., Ste. F
Columbus, Georgia 31904
mpost@markpostlaw.com
706-221-9371

## CERTIFICATE OF SERVICE

I do hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification to all counsel of record.

This 13th day of December, 2019.

*/s/ Mark C. Post*
Counsel for Plaintiffs