| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:  USE OF FORCE | | | |

**3-1.2**
**USE OF FORCE**

Officers are empowered by law to use the reasonable force necessary to effect the arrest of an individual, who by the use of force, is resisting or obstructing the officer to prevent the officer from carrying out his lawful duty.  Any officer that uses excessive force to effect an arrest or continues to use force after the person has submitted to arrest is subject to disciplinary action or termination from the Department.

**3-1.3**
**BATONS**

When used, the baton is regarded as a weapon.  Its use is an escalation of force.  Sound judgment by members must govern the use of the baton.  When the baton is used, it will be used in accordance with training procedures and the Force Continuum. Use of the ASP baton is considered Level 6 on the Force Continuum.

A.   Use of the ASP Baton

The baton may be used in these circumstances,

- When officers are defending themselves or others from bodily harm;

- To make an arrest when resistance is encountered and other reasonable means have failed; or

- To subdue persons who have threatened bodily harm to themselves or others, if other means have failed or are impractical.

The primary intent of the baton is to temporarily immobilize an aggressive person or to discourage him from pressing an attack on the officer or others.  The baton is not intended to be used to inflict serious injury or to counter deadly force.  The general target areas for the baton are portions of the body that may be struck without causing death or serious injury, but will cause pain or temporarily disable the person.

B.   ASP Strike Locations

These locations are:

- Arm (Radial or top outside, Brachial plexus & Medial or bottom inside)

- Leg (Common Peroneal or outside above the knee, Femoral or inside above the knee and the Calf below the back of the knee)

- Abdomen (Center mass of the torso) for a clearing or cross check strike.

Unless the officer is justified in using deadly force, the officer should not target the following areas: the head, face, throat, sternum or chest, groin or spinal column.  A strike to these areas may result in serious injury, or death.

The baton may also be used to defend from kicks or blows and to stun attacking animals.



PLAINTIFF'S EXHIBIT
5
Wynn
tabbies

CCG003317

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

C.    Crowd Control Baton

The 36-inch Crowd Control Baton shall only be issued to officers who have received training in its use.  This baton will be used in accordance with tactics as taught in the approved training.

**3-1.4**
**HANDCUFFS**

Each officer is issued a pair of "ratchet type" handcuffs.  When used properly, they are extremely effective hand restraints.  When an officer uses handcuffs, they shall be used in such a manner to obtain maximum security.  This is accomplished by double locking the handcuffs.  Handcuffs are a defensive device and are to be employed for restraining purposes.  Double-locking the handcuffs also prevents them from closing tighter, thereby causing the circulation to the hands to be stopped.  Prisoners should be handcuffed with their hands behind their back unless a physical disability or other exigent circumstances exist.  When prisoners are in custody for an extended period of time, they may be handcuffed with hands in front of the body when a waist chain is used.

Any person in the custody or under the control of officers within the following categories shall be properly handcuffed:

- Felony prisoners;

- Belligerent or combative prisoners;

- Verbally abusive prisoners who may turn combative;

- Prisoners who might cause injury to themselves or others;

- Suspects who have been exposed to OC Spray; or

- Arresting or transporting officers may exercise that judgment consistent with good police practice to handcuff any prisoner they deem necessary to restrain.

Plastic flex cuffs may be used for mass arrests or when handcuffs are not available.  Special care shall be taken not to cut off circulation.  A cutter should be readily available to remove the flex cuffs.

**3-1.5**
**CHEMICAL IRRITANTS - Oleoresin Capsicum (OC)**

The Department has approved and issued OC aerosol restraint spray to provide officers with an additional option within the Force Continuum.  It is the policy that officers use OC when warranted, but only in accordance with the procedures set forth.

A.    Authorization

1.    Only officers who have completed the prescribed training in the use of OC are authorized to carry and or use OC.

CCG003318

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|

SUBJECT:   USE OF FORCE

2.   Officers whose normal duties may require them to make arrests shall be required to carry Department issued and authorized OC while on duty or while working police related part-time jobs.

3.   Uniformed officers shall be required to carry Department issued OC canisters in issued holders on the duty belt.  Officers who are working off-duty and in uniform are also required to meet this requirement.

B.   Usage Criteria

1.   OC spray is considered a use of force and shall be employed in a manner consistent with the Department's Force Continuum and training instruction.

2.   OC spray is authorized when:

- a verbal dialog has failed to bring about the subject's compliance;

- the subject has clearly signaled his intention to actively resist the officer's efforts to make an arrest; or

- to protect the officer or others when threatened by a hostile animal

3.   Whenever practical and reasonable, officers should issue a verbal warning prior to the use of OC against a subject.

4.   An officer may use deadly force to protect himself from the use or threatened use of OC when the officer reasonably believes that deadly force will be used against him if he becomes incapacitated.

5.   Once the subject ceases resistance, use of OC is no longer justified or authorized.

C.   Usage Procedures

1.   Whenever possible the officer should be upwind from the suspect prior to using OC and should avoid entering the sprayed area.

2.   Officers should maintain a safe distance from subjects of between two (2) and ten (10) feet.

3.   A single spray burst of between one (1) to three (3) seconds should be directed at the subjects face.  Additional bursts may be used if the initial burst proves ineffective.

4.   Use of OC should be avoided, if possible, under conditions where it may affect innocent bystanders.

CCG003319

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

D.  Effects of OC and Officer Response

1.  Within several seconds of being sprayed by OC, a subject will normally display symptoms of temporary blindness, difficulty in breathing and a burning sensation in the throat and affected areas.  A subject may also experience nausea and impaired thought process.

2.  The effects of OC vary among individuals.  All subjects will be handcuffed as soon as possible after being sprayed.  Officers should be prepared to employ other use-of-force options should OC fail to control the suspect.

3.  Once the suspect has been restrained, officers will immediately begin decontaminating the subject.  Officers will rinse the contaminated area with water.  Officers are required to carry two gallons of fresh water in issued containers in their vehicle.

4.  Officers shall keep subjects that have been exposed to OC in an upright position at all times.  Under no conditions will subjects be placed in a prone or reclined position due to the danger of positional asphyxia.  Subjects will be monitored continuously for indications of medical problems and will not be left alone while in police custody.

5.  Officers should provide assurance to suspects who have been sprayed that the effects are temporary and encourage them to cooperate.

6.  Officer should continue to be alert for any indications that the suspect needs medical care.  These indications may include breathing difficulties, gagging, profuse sweating and loss of consciousness.  Upon observing these or other medical problems or if the suspect requests medical assistance, the officer will summon emergency medical aid as soon as possible. Officers are prohibited from transporting a prisoner needing medical treatment from the scene to the Emergency Room.

7.  Assistance will be offered to any individuals accidentally exposed to OC spray who feel the effects of the agent.  All such incidents will immediately be reported to the officer's supervisor.

E.  Reporting Procedures

1.  All discharges of OC, whether intentional or unintentional, will be reported immediately to an on-duty supervisor.

2.  When a subject has been exposed to OC, a use-of-force and Offense Report will be completed.

3.  All unintentional discharges will be reported on an Inter-Office Memorandum and forwarded to the Bureau Major for review.

4.  Discharges during training and testing are exempted from this reporting requirement.

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:  USE OF FORCE | | | |

F.   Replacement

    1.    All canisters issued are individually serial numbered.  Each will be inspected, weighed and engraved with the officer's pistol number and weight prior to issue.  After any discharge the canister will be turned into Property & Evidence no later than the end of the tour of duty.  An Offense Report outlining the circumstances is required when there has been any discharge.

    2.    Property & Evidence will issue the officer a new canister and retain the used canister as evidence for a period of two years.

    3.    Canisters turned in due to an unintentional discharge will be retained as evidence when any civilian was affected by the discharge.  In cases where there were no civilians affected, the canisters may be released to the Training Division for training use.  The Director of Training shall sign for all canisters released under this section and account for their use.

    4.    The Property & Evidence Quartermaster will keep a numbered accounting of all OC canisters, both in stock and issued.

G.   Inspection

    1.    Line supervisors shall inspect canisters issued to personnel under their supervision during all scheduled vehicle inspections.  Supervisors are to ensure that the canisters are in good condition.  A record of these inspections shall be maintained for accountability purposes.

    2.    Should a supervisor determine that a canister has been tampered with he shall initiate an investigation and complete the proper reports.

## 3-1.6
## USE OF LEG RESTRAINTS

Officers shall not restrain a subject's legs by any means where the legs are bound to the hands.  This position, commonly known as hog tying, has been linked to positional asphyxia.  Suspects in custody will not be placed in a prone position in the Patrol vehicle.

## 3-1.7
## FORCE CONTINUUM

A.   Force Continuum

The Force Continuum provides a series of responses that are available for officers when confronting a subject.  The Force Continuum, as adopted by the Columbus Police Department, consists of 7 steps.

LEVEL 1    Officer Presence: The mere presence of an officer may bring a situation under control.

CCG003321

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

LEVEL 2    Verbal Commands: Communications and verbal commands, given in a professional and firm manner, may diffuse a situation or enable an arrest to be made without additional force.

LEVEL 3    Soft Empty Hands: This level of empty hand control is used when the officer faces passive resistance.  Techniques that are included in this category include pressure points and joint manipulations.

LEVEL 4    Chemicals: OC Spray, Pepperball, and other chemical tools as authorized when the subject has signaled his intention to resist the officer's efforts to make an arrest.

LEVEL 5    Hard Empty Hands: This is used when the officers face active or aggressive resistance.  These techniques have the potential for creating soft tissue damage, lacerations or bone fractures.   Techniques include active countermeasures, stunning strikes and kicks.

LEVEL 6    Impact Tools: This level of force employs the use of the ASP baton, Less Lethal Munitions, and the Taser.  Level 6 is appropriate when empty hand control and/or OC is not sufficient in effecting an arrest.  The use of these tools has the potential for creating soft/connective tissue damage, injuries to include lacerations and bone fractures along with other medical conditions.

LEVEL 7    Deadly Force: This is defined as any method of control that will likely cause serious bodily harm or death.  The use of Deadly Force is governed by OCGA Section 17-4-20 and Section 3-2 of the Police Manual.

B.    Totality of Circumstances

When using force the officer must consider the Totality of Circumstances in responding to a confrontation.  Totality of Circumstances refers to all actions, situational factors and conditions surrounding the confrontation.  Totality of Circumstances involves, but is not limited to:

1.    Officer-Subject Factors include:

- Age
- Sex
- Size
- Skill Level
- Multiple Officers or Subjects

2.    Special Circumstances include:

- Close proximity to a potential weapon
- Special Knowledge
- Injury or exhaustion
- Ground position
- Disability

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

- Imminent danger

## 3-1.8
## USE OF FORCE REPORTING

Whenever force above Level 3 on the Force Continuum, as defined in 3-1.7 A is used to affect an arrest, the officer shall submit a Department Use of Force Report of the circumstances surrounding the incident. Any supervisor who orders or controls a use of force deployment shall be considered to have used force. When this occurs, a supervisor or higher rank shall investigate the incident.  This report will be reviewed by the chain-of-command and forwarded to the Chief of Police.  The Office of Professional Standards shall maintain these reports.  See Section 2-6.5 for reporting requirements.

## 3-1.9
## LESS LETHAL MUNITIONS

A.    Definitions:

Less Lethal Munitions (LLM): Munitions that are designed to incapacitate hostile subjects without causing death or serious injury.  However, use of LLM may result in serious injury and / or death even when properly deployed.  Less Lethal Munitions are considered a Level 6 use of force.

Less Lethal Weapons: Weapons specifically designed or dedicated for LLM.  These include specifically dedicated Remington 870 shotguns, 37mm launchers, or any other weapon designated as less than lethal.

Cover Officer: An officer who acts as a back-up to the officer who is deploying less lethal munition. The cover officer's role is to provide a lethal force option if necessary.

B.    Authorization and Issue Procedures:

1.    Training and Authorized Use: Only officers who have completed the required training and qualified with LLM shall be authorized to check out the dedicated weapons and deploy LLM during an incident.

2.    Dedicated Weapons: Less Lethal Munitions shall only be used in Department approved weapons dedicated for this purpose.

The Remington 870 will be available for daily check out from the Quartermaster Unit. Under normal conditions, all LLM shotguns shall be turned into the Quartermaster Unit prior to the end of the duty shift.

The 37mm launchers are maintained by the SWAT Team and their use is restricted to trained SWAT members or other trained officers as designated by the SWAT Commander with the approval of the Chief of Police.

CCG003323

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

3.   Procedures:

The following procedures shall be followed when checking out the Remington 870 for normal duty use.

The Quartermaster will inspect the shotgun to ensure that there is no ammunition in the magazine or chamber.  The empty shotgun will be placed in a case with 10 less lethal rounds in the case.  No rounds will be placed in the shotgun prior to deployment.

The case will be sealed in an appropriate manner to prevent any tampering with or exchanging of the ammunition.  The cases will be stored at the Quartermaster counter and made available for checkout.

When the case is returned to the Quartermaster Unit, the receiving officer shall ensure that the seal is intact.  Should the seal be broken, that shotgun shall be removed from service until the Quartermaster, or his designee can inspect the weapon, LLM ammunition, and reseal the case.

C.   Deployment:

1.   Officers who are authorized to utilize LLM may check out the shotgun on a daily basis for normal patrol duties.  For special events or other incidents where the use of LLM may be required, weapons may be checked out for an extended period of time, not to exceed the length of the special event.

2.   Shift supervisors should, when possible, ensure that a minimum of two (2) Less Lethal Shotguns are checked out and available for immediate deployment.

3.   The seal shall be broken only when the deployment of LLM is imminent.  Any time a seal is broken and LLM are utilized, the officer who checked out the weapon shall notify a supervisor.  Should any munitions be launched, the officer shall complete an Offense Report and Use of Force Report documenting the circumstances.  If no munitions are launched, the officer shall complete an inter-office memorandum to his/her supervisor outlining the circumstances of the incident.  The launcher and a copy of the memorandum shall be turned into the Quartermaster for inspection and resealing.

Should a seal be inadvertently broken, the officer who checked out the weapon shall document the circumstances on an inter-office memorandum addressed to his/her supervisor.  A copy of the memorandum shall be turned in with the launcher to the Quartermaster Unit for inspection and resealing.

4.   When deploying the shotgun, all officers are responsible for ensuring that the ammunition being loaded into the shotgun is authorized Less Lethal ammunition.

5.   When LLM are deployed, the officer using LLM shall designate a cover officer.  The cover officer is responsible for protecting the officer using LLM and providing the option of deadly force should it be required.  LLM should not be deployed when only one officer is present on a scene.

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| **SUBJECT: USE OF FORCE** | | | |

6. Patrol use of LLM in non-dedicated shotguns or use of lethal ammunition in LLM dedicated shotguns is specifically prohibited.

7. Every effort will be made by officers deploying the munitions to inform other officers on the scene that less lethal munitions are being used prior to their launch.

D. <u>Utilization</u>:

1. Situations that may be suitable for the deployment of less lethal munitions include, but are not limited to:

   A subject who is armed with non-traditional weapons such as a baseball bat, crowbar, or other tool;

   A subject who is armed with a knife or similar weapon where there is not an immediate threat to the officer or a third person;

   A subject armed with a knife, firearm, or other weapon that may attempt to force an officer into using deadly force in order to achieve their suicide;

   Disorderly or violent crowds; or

   An animal that presents a threat to the safety of an officer or other persons

2. Officers shall follow all training guidelines and procedures when deploying any LLM. This shall include recommended distances for use, target areas, and other procedures presented during the required training. Officers shall avoid targeting the head, neck, face, sternum, or groin unless deadly force is appropriate.

3. Officers may respond to a mutual aid request from another Department for less lethal munitions. A supervisor shall be immediately notified of the request and will respond to the scene. Any deployment of LLM by Columbus Police Department personnel will be governed by this policy.

E. <u>After-Action Procedures and Reporting Requirements</u>:

1. Anytime LLM is deployed, a supervisor shall be notified and will respond to the scene as soon as possible.

2. When any LLM are launched, an Offense Report and Use of Force Report will be completed. This report shall be detailed in nature and shall include: the circumstances justifying the use of LLM, any property damage resulting from the LLM, the threat posed by the individual, the range at which LLM was launched, and the location where the LLM round struck the individual.

3. Whenever an individual has been struck by any LLM, EMS shall be requested. Officers shall not transport the suspect prior to an examination by qualified medical personnel. Officers are prohibited from transporting a prisoner needing medical treatment from the

CCG003325

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

scene to the Emergency Room.  Any projectile that is used should be recovered and logged in as evidence in the case.

### 3-1.10
### NON-LETHAL MUNITIONS

A.   Definitions:

Non-Lethal Munitions (NLM): Munitions that are designed to incapacitate hostile subjects without causing death or serious injury.  Non-Lethal munitions are considered Level 4 use of force.

Non-Lethal Weapons: Weapons specifically designed or dedicated for NLM.  These include specifically designed launchers for pepper balls and other projectiles that meet the definition of NLM.

Cover Officer: An officer who acts as a back-up to the officer who is deploying non-lethal munition. The cover officer's role is to provide a lethal force option if necessary.

B.   Authorization and Issue Procedures:

1.   Training and Authorized Use: Only officers who have completed the required training and qualified with NLM shall be authorized to check out the dedicated weapons and deploy NLM during an incident.

2.   Dedicated Weapons: Non-Lethal Munitions shall only be used in Department approved launchers dedicated for this purpose.

Non-Lethal munitions launchers will be available for daily check out from the Quartermaster Unit.  Under normal conditions, all NLM launchers shall be turned into the Quartermaster Unit prior to the end of the duty shift.

3.   Procedures: The following procedures shall be followed when checking out the NLM launchers.

The Quartermaster will inspect the launcher to ensure the proper air pressure is in the tank and the munitions pod is sealed properly.  The minimum air pressure for issue is 2000 psi. The munitions pod will be sealed in an appropriate manner to prevent any tampering.  The cases will be stored at the Quartermaster counter and made available for checkout.

When the launcher is returned to the Quartermaster Unit, the receiving officer shall ensure that the launcher has the minimum air pressure required and that the munitions pod seal is intact.  Should the munitions pod seal be broken, the Quartermaster Unit will replace the pod with a sealed unit and return the opened munitions pod to the Training Division.  The launcher will remain in service.

Should any inspection reveal air pressure below 2000 psi, the Quartermaster Unit shall recharge the tank and place the launcher back into service.  Any launcher that does not retain air pressure, or is damaged, shall be inspected and repaired by the Training

| COLUMBUS POLICE DEPARTMENT<br>GENERAL ORDER | 10-16<br>REVISION DATE | 10-16<br>EFFECTIVE DATE | 3-1<br>IDENTIFIER |
|---|---|---|---|
| **SUBJECT:  USE OF FORCE** | | | |

Division.  A maintenance log will be maintained and a record made when any launcher is refilled with air, a munitions pod is replaced, or a repair needed.

The Training Division is responsible for stocking and maintaining the supply of NLM rounds in accordance with Department needs and the manufacturer's guidelines.  The Training Division will maintain a maintenance log to document repairs to the launchers.

C.    Deployment:

1.    Officers who are authorized to utilize NLM may check out the launchers on a daily basis for normal patrol duties.  For special events or other incidents when the use of NLM may be required, launchers may be checked out for an extended period of time, not to exceed the length of the special event.

2.    When possible, shift supervisors should ensure that a minimum of two (2) Non-Lethal launchers are checked out and available for immediate deployment.

3.    The munitions pod seal shall be broken only when the deployment of NLM is imminent.  Any time a seal is broken and NLM are utilized, the officer who checked out the launcher shall notify a supervisor.  Should any munitions be launched, the officer shall complete an Offense Report and Use of Force Report documenting the circumstances.  If no munitions are launched, the officer shall complete an inter-office memorandum to his/her supervisor outlining the circumstances of the incident.  A copy of the memorandum shall be turned into the Quartermaster at the time the launcher is turned in.

4.    When deploying the launcher, all officers shall follow the procedures as outlined in the training for the NLM.  The proper sequence to make the launcher ready is:

   ▪ Remove the launcher from the case and break the seal on the munitions pod;

   ▪ Load the hopper with the authorized munitions;

   ▪ Firmly attach the air tank and ensure the pressure gage reads a minimum of 1000 psi;

   ▪ Cycle the bolt to make the launcher ready and,

   ▪ When NLM use is imminent remove the safety.

5.    When NLM are deployed against suspect(s) who possess a weapon or have the potential for inflicting serious bodily harm on the officer or others, the officer using NLM shall designate a cover officer.  The cover officer is responsible for protecting the officer using NLM and providing the option of deadly force should it be required.

6.    Prior to launching, when possible, the officer should announce "Pepperball Up and Pepperball Launch" to alert other officers.

CCG003327

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

D.   Utilization:

   1.   Situations which may be suitable for the deployment of non-lethal munitions include, but are not limited to a subject(s) who:

      are violent or armed with non-traditional weapons such as a baseball bat, crowbar, or other tool;

      are armed with a knife or similar weapon where there is not an immediate threat to the officer or a another person;

      may be armed with a knife, firearm, or other weapon who may attempt to force an officer into using deadly force in order to achieve their suicide; or

      Disorderly or violent crowds; or

      animals who present a threat to the safety of an officer or third person.

   2.   Officers shall follow all training guidelines and procedures when deploying any NLM. This shall include recommended distances for use, target areas, and other procedures presented during the required training.

   3.   Officers may respond to a mutual aid request from another Department for non-lethal munitions. A supervisor shall be immediately notified of the request and will respond to the scene. Any deployment of NLM by Columbus Police Department personnel will be governed by this policy.

E.   After-Action Procedures and Reporting Requirements:

   1.   Anytime NLM are deployed a supervisor shall be notified and will respond to the scene as soon as possible.

   2.   When any NLM is launched, an Offense Report and Use of Force Report will be completed. This report shall be detailed in nature and shall include: the circumstances justifying the use of NLM, any property damage resulting from the NLM, the threat posed by the individual, the range at which NLM was launched, and the location where the NLM struck the individual, and the approximate number of rounds fired.

   3.   Whenever an individual has been struck by any NLM, the normal OC decontamination procedures shall be followed. Should the individual display any signs of serious injury, continued difficulty in breathing, or make a specific request for medical treatment, EMS will be called to the scene. Officers are prohibited from transporting a prisoner needing medical treatment from the scene to the Emergency Room.

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:  USE OF FORCE | | | |

**3-1.11**
**TASER PROCEDURES**

Tasers may be used to incapacitate a potentially violent subject and may be deployed when alternative restraint tactics have failed, are reasonably likely to fail, and/or when it is deemed unsafe for an officer to approach a person.

The use of a Taser is considered a Level 6 on the Use of Force Continuum.

A.   Training and Issue:

Only officers who are certified and have met the training standards will utilize the Taser. Instructors shall maintain the required certifications.  Officers are required to be re-certified in the use of the Taser annually.

The training will comply with Department guidelines and be fully documented.

Tasers and cartridges will be controlled and issued by the Quartermaster Unit.  The cartridges will be assigned by serial number.  Officers are responsible for the care and security of the Taser in accordance with training guidelines.

Section 3.1 of the manual shall be a mandatory reading assignment for all annual in-service training programs.

B.   Usage:

The use of Tasers is appropriate when it reasonably appears that it will be the most effective less-lethal response.  It may be deployed when the subject has signaled his intention to resist the officer's efforts to make an arrest and has refused to comply with lawful commands to submit to the officer.

Examples of when a Taser may be deployed include, but are not limited to the following:

- Dealing with a mentally ill subject that is perceived to be violent;

- Violent persons under the influence of drugs and/or alcohol;

- Persons who have expressed the intent and have the means to commit suicide; or

- When a lesser response would likely be ineffective and/or place the officer or the public in jeopardy.

The Taser shall be carried in a secure holster in a cross draw fashion on the non-weapon side of the body.

CCG003329

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   USE OF FORCE | | | |

C.    Restrictions:

The Taser should not be used when the following circumstances are known to exist:

- When the officer cannot safely approach the subject within the device's effective range;

- In proximity of flammable liquids, gases, or any highly combustible materials; or

- When the incapacitation of a subject by the Taser could result in serious injury or death, such as a fall from an elevated position.

When possible, officers should avoid using Tasers on:

- Persons in wheelchair or persons in immediate control of a vehicle or other equipment;

- Pregnant women or persons with apparent physically debilitating illnesses;

- The elderly or children; or

- Persons who are known to have a serious medical condition.  Examples may include a history of cardiac problems and neuromuscular disorders such as multiple sclerosis, muscular dystrophy, or epilepsy.

As with all weapons, the use of the Taser is not authorized once a suspect becomes compliant and/or there is no longer any resistance on the part of the suspect.

D.    Deployment:

Officers who are issued Tasers are responsible for properly maintaining the unit.  Officers shall check the condition of the Taser, batteries, and cartridges following the training guidelines.  The Taser shall be inspected during all scheduled vehicle inspections.  This shall be documented on the inspection form.

The unit supervisor and/or the Quartermaster Unit shall maintain cartridges.  A log shall be maintained that accounts for each cartridge by serial number, date of issue, and the officer signing for the cartridge.

The following guidelines should be used when deploying the Taser:

- Prior to launching, when possible, the officer should announce "Taser Taser" to alert other officers.

- Should a probe penetrate a sensitive area of the body, to include the face, neck, groin, male nipple and female breasts, medical personnel will be called to the scene to remove the probe and examine the subject for any injuries.

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 10-16 REVISION DATE | 10-16 EFFECTIVE DATE | 3-1 IDENTIFIER |
|---|---|---|---|
| SUBJECT:  USE OF FORCE | | | |

- Any officer who is certified in the use of a Taser may remove probes lodged in non-sensitive areas of the body.

- Probes will be considered a biohazard and handled according to the training guidelines.

- Officers should continue to be alert to any indications that the suspect needs medical care. Indications may include breathing difficulties, gagging, profuse sweating and loss of consciousness.

- Anytime a suspect is struck with a Taser, EMS shall be requested.  Officers shall not transport the suspect prior to an examination by qualified medical personnel. Officers are prohibited from transporting prisoners from the scene until they have been examined and cleared by EMS personnel.

E.    Reporting Requirements:

When a Taser has been deployed against a subject, the officer shall notify 911 and a supervisor will respond to the scene.  An Offense Report, a Use of Force Report, and a Taser Usage Report will be completed outlining the details of the deployment, to include the following:

- The location where the probes struck the subject;

- The number of cycles;

- The serial number of the Taser and the cartridge(s) used;

- Who removed the probes;

- EMS Unit called to the scene;

- Any medical issues that were brought to the officer's attention;

The probes, cartridge, blast doors, and a sample of the tagets shall be turned into the evidence room prior to the officer being relieved of duty

Photographs shall be taken whenever the Taser probe lodges in the body.  The issued cameras may be used for this purpose.  Photographs should be taken in a private area such as the County Jail or hospital.  Only officers of the same gender as the subject shall be present.  The film shall be turned into the evidence room with the probes, cartridge, and tagets.

When a Taser is deployed, the supervisor shall ensure that the officer downloads the data at the designated location prior to the end of the shift.  This computer record shall be secured and maintained as a secondary record of usages. The investigating supervisor shall attach a copy of the downloaded report to the Use of Force Report.

The Office of Professional Standards shall be responsible for reviewing and tracking all Taser uses and shall include Taser usage in the unit's annual report and analysis.

CCG003331

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 05-07 REVISION DATE | 05-07 EFFECTIVE DATE | 3-2 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   DEADLY FORCE | | | |

## DEADLY FORCE

### PURPOSE

It is the intent of the Columbus Police Department to be responsive to, and protect the constitutional rights of citizens.  The use of deadly force by employees shall be governed by the provisions set forth in Section 17-4-20 (b), as amended, of the Official Code of Georgia Annotated.  Deadly force shall be used only as a last resort, and then only to prevent death or serious bodily injury to the officer or in the defense of others.

### POLICY

It shall be the policy of the Columbus Police Department to comply with the Georgia Law and to investigate all instances of the Use of Deadly Force by members of the Columbus Police Department.

### 3-2.1
### GENERAL

Deadly force is defined as that force intended to likely cause death or serious bodily harm.  It includes discharging a firearm in the direction of a person, even though there is no intent to kill.  Deadly force shall never be used on mere suspicion that a crime, no matter how serious, was committed or that the person being pursued committed that crime.  Facts unknown to the officer at the time of discharge of the deadly force, by whatever means, cannot be considered in later determining justification for the act.  Justification for the use of deadly force is limited to the facts known by the officer at the time he decides to employ deadly force.

### 3-2.2
### AUTHORIZED USE OF DEADLY FORCE

Under OCGA 17-4-20, officers are authorized to use deadly force to apprehend a suspected felon only under the following circumstances:

A.    The officer reasonably believes that the suspect possesses a deadly weapon or any object, device or instrument which, when used offensively against a person is likely to or actually does result in serious bodily injury;

B.    When the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or

C.    When there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.

CCG003332

| COLUMBUS POLICE DEPARTMENT GENERAL ORDER | 05-07 REVISION DATE | 05-07 EFFECTIVE DATE | 3-2 IDENTIFIER |
|---|---|---|---|
| SUBJECT:   DEADLY FORCE | | | |

**3-2.3**
<u>**UNAUTHORIZED USE OF DEADLY FORCE**</u>

The use of deadly force is specifically prohibited under the following conditions;

- To halt the flight of any suspect or prisoner under conditions which do not meet the criteria listed in 3-2.2 above

- To affect the arrest of a suspect wanted for a misdemeanor.

**3-2.4**
<u>**DEFINITIONS**</u>

- Deadly Force:  Any force that is likely to cause death or serious bodily harm.

- Non-deadly Force:  Any use of force other than that which is considered deadly force.

- Reasonable Belief:   The person concerned, acting as a reasonable man, believes that the described facts exist.  (OCGA 16-1.3 16)

- Serious Bodily Injury:  A bodily injury that creates a substantial risk of death; causes serious, permanent disfigurement; or results in long-term loss of or impairment of the functioning of any bodily member or organ.

CCG003333