Kris Sperry, M.D.
Forensic Pathologist

Certified by the American Board of Pathology in:
Anatomic Pathology
Clinical Pathology
Forensic Pathology

November 27, 2018

Re:  Hector R. Arreola

I have reviewed extensive information and documents concerning Hector Arreola.
These materials include various Body Cam videos (Officers Aguilar, Dudley, Evrard),
written investigative reports generated following the incident, Dash Cam video/audio
recordings, the CSI report and evidence sheet, the autopsy report, toxicology reports,
EMT and medical records, and transcribed 911 calls.

Hector Arreola was a 30-year old white male.  In the early morning hours of January 9,
2017, at around 0500 hours, Mr. Arreola called 911 (again) and requested that police
units respond to his mother's residence, 760 Moss Drive in Columbus, Georgia.
Officers Brian Dudley and Michael Aguillar responded, and met with Mr. Arreola, who
asked them to check on his mother.  At the scene, the officers talked with Mr. Arreola,
and arrived at the conclusion that EMS should be summoned to transport Mr. Arreola
for a psychiatric evaluation. The officers requested EMS, and according to the EMS
report, EMS was contacted at 0527 hours, arriving at the scene at 0539 hours.
However, prior to EMS arrival, the decision was made to arrest Mr. Arreola for
disorderly conduct, after he began knocking on the door of an adjacent residence.  A
struggle ensued, during which the officers were attempting to place Mr. Arreola in
handcuffs.  During this struggle, Mr. Arreola was prone (on his stomach), and can be
heard stating repeatedly, "I can't breathe."  The elapsed time period during which the
officers were holding him in the prone position with their body weight was almost six
minutes.

Officer Evrard arrived at the scene, and his Body Cam footage shows him walking up to
the other two officers and Mr. Arreola at approximately 0531 hours.  At this point, the
two officers are holding Mr. Arreola down, with one officer in his lower thoracic/upper
pelvic region, and Mr. Arreola can be heard making whimpering noises.  His cries
gradually fade and become incoherent, and he appears to stop vocalizing at 0532:23-
34.  At about 0533:23 on Off. Evrard's Body Cam, after Mr. Arreola's legs are shackled,
the officers roll him onto his side; he is adjudged to be breathing, and is placed in a
sitting-up position (with some difficulty) at about 0534:15.

Sperry Forensic Pathology Consultants
302 Watermark Drive
Peachtree City, Georgia  30269
Telephone:  (770)  486-5380
e-mail Dr. Sperry:  stiffdoc@bellsouth.net

EXHIBIT
0004

Dr. Kris L. Sperry
11/27/2018
Page 2 of 5

In the background, EMS is seen to arrive (their arrival time is documented as 0539 on the Columbus Fire and Emergency Medical Services Report), at 0537:25 on Off. Evrard's Body Cam footage.  However, there is no evident urgency; EMS personnel are seen to be standing in the street, near their vehicle, and then speaking with an officer in the driveway while the other officers are conversing between themselves.  None of the officers appear to be checking on Mr. Arreola, and he is not making any discernible sounds during this period.  At 0539:22, the statement is made that, "his eyes are open;" at 0540:27, the EMS personnel start walking back to their vehicle, and they can be seen getting their gurney at 0541:03.  At 0542:17-18, a brief segment of Off. Aguilar's Body Cam video (which lacks audio) shows Mr. Arreola being wheeled on the gurney with his eyes open. The other Body Cam videos confirm that he is not making any verbalizations of any sort at this time.

According to the EMS record, their first view of Mr. Arreola (timed at 0540 in their record) revealed him to be sitting on the ground, in handcuffs and leg shackles, and was determined to be conscious, alert but not speaking, making only non-specific noises/sounds.  Mr. Arreola was transported in the ambulance while still in handcuffs and shackles.  His mental status was designated "incoherent," and his Neuro exam was "aphasic."  At some point during the transfer, Mr. Arreola's condition abruptly deteriorated into a "possible cardiac/respiratory/trauma arrest"; prior to this, there is no record within the EMS document that Mr. Arreola's vital signs were recorded, including blood pressure, pulse, pulse oximetry, or respiratory rate.  At some point prior to 0551 hours, Mr. Arreola sustained his abrupt deterioration.  A Glasgow Coma Scale assessment at 0551 was 7/15, but his blood pressure was 0/0 with a pulse of 115.  His condition continued to deteriorate, and CPR was instituted, an intravenous line established, and he was eventually intubated (the record reflects that all of these events took place at 0551 hours, which is improbable).  His pupils gradually became fixed and dilated.  After he arrived at Midtown Medical Center, treatment restored his cardiac function, but he was irreversibly brain damaged, and died in the intensive care unit the next day.

An autopsy was performed on January 11, 2017.  The autopsy examination did not reveal any significant internal or underlying disease processes; the heart was normal in size and chamber thickness, and the liver exhibited slight fatty change.  There were no significant traumatic injuries, except for some contusions and abrasions of the upper and lower extremities, predominantly the consequence of handcuff and shackle placement.

Toxicology studies performed on admission hospital blood revealed the presence of methamphetamine at 0.90 mg/L, and amphetamine at 72 mcg/L.  These levels are

Sperry Forensic Pathology Consultants, Inc.
302 Watermark Drive
Peachtree City, Georgia  30269
Telephone:  (770) 486-5380
e-mail Dr. Sperry:  stiffdoc@bellsouth.net

Dr. Kris L. Sperry
11/27/2018
Page 3 of 5

relatively low.  No alcohol was detected, nor were any other drugs found in the blood specimens.

The primary Pathologic Diagnosis was "Methamphetamine Toxicity."  There is no mention in the Pathologic Diagnoses that the struggles with and restraint by the law enforcement officers was either a causative or contributive factor in Mr. Arreola's death.  The Opinion section of the autopsy report states that Mr. Arreola "was reportedly involved in a struggle with law enforcement after they were called to his home for apparent paranoid behavior."  There is no record that Dr. Darrisaw, who performed the autopsy, was aware of the information and documentation of events that is contained within the Body Cam and Dash Cam video footage, nor of the actions and omissions that are contained within the EMS record.  Dr. Darrisaw opined that the Manner of Death was, "Accident."

Although Mr. Arreola was ultimately (through autopsy blood testing) found to be under the influence of methamphetamine and amphetamine (which is most likely a byproduct of the methamphetamine manufacture), the two police officers who responded to the scene initially suspected that he may have been under the influence of drugs or was exhibiting signs of mental illness, and needed to be evaluated by a psychiatrist.  A struggle ensued when the officers decided to handcuff Mr. Arreola. Subsequently, during and after the struggle to restrain Mr. Arreola, he was held in a prone (face-down) position, with the weight of at least one of the arresting officers on his back and other areas, and was stating repeatedly that he could not breathe.  He was held in this position for almost six minutes, including after Off. Evrard arrived.  After Off. Evrard arrived, Mr. Arreola was shackled and finally turned on his side.  However, his vocalizations gradually fade and become incoherent; despite this, there is no sense of urgency or serious concern that is voiced by the officers.  The EMS personnel eventually arrived at the scene, but they did not approach Mr. Arreola for several minutes, again exhibiting no urgency.  When he was finally placed on a gurney, Mr. Arreola was not speaking or responding appropriately; no vital signs were obtained; nor was he administered oxygen or any other therapeutic intervention.  During the transport to the hospital, Mr. Arreola suddenly became unresponsive and went in to cardiac and respiratory arrest, sustaining irreversible brain damage, dying the next day.

My opinions, to a reasonable degree of medical certainty, are as follows:

- Although Hector Arreola had methamphetamine and amphetamine in his system at the time of the struggle, restraint and cardiorespiratory arrest, he did not die solely of methamphetamine/amphetamine toxicity.  The prolonged struggle and

Dr. Kris L. Sperry
11/27/2018
Page 4 of 5

restraint are specific, substantial contributing factors to his death; absent these events, more probably than not, he would not have died.

- During the course of the restraint, Mr. Arreola was held in a face down position on the ground with one or more officer's weight on his lower thoracic/upper pelvic region and other areas for a time period of almost six minutes. During this time, Mr. Arreola is heard to repeatedly state that he cannot breathe.

- After the arrival of Officer Evrard and the placement of leg shackles, Mr. Arreola is eventually turned on to his side. However, Mr. Arreola is obviously in extremis and distress before this, and is making only whimpers and unintelligible sounds until those stop.

- At some point, it is determined that Mr. Arreola is "breathing", but there is no further assessment of his condition. EMS personnel had been summoned, but there is no sense of urgency displayed by either the police officers who were immediately by Mr. Arreola, or by the EMS personnel. Again, during this entire time frame, Mr. Arreola is not objectively evaluated.

- Once he was placed in the ambulance, no vital signs were obtained from Mr. Arreola until his condition deteriorated into a cardiorespiratory arrest. This was apparently completely unanticipated by the EMS personnel, as their report also includes a possible traumatic origin for the arrest. The first set of vital signs reveal no blood pressure.

- In my opinion, Hector Arreola did not die of methamphetamine/amphetamine toxicity. It is my opinion that he developed gradual systemic acidosis and hypoxia as the direct result of an intense struggle with law enforcement officers, which included prolonged restraint in a prone position with weight upon his back and other areas. His medical condition clearly deteriorated while he was under the direct supervision of the law enforcement officers, and the obvious lack of urgency or concern led to significant delay in allowing EMS personnel to assume his care.

- Once EMS personnel assumed his care, his condition continued to deteriorate, but this was not noticed or detected as no vital signs were obtained from Mr. Arreola in order to properly assess his condition, until he sustained a cardiorespiratory arrest. Had his pulse, blood pressure and oxygenation been monitored after EMS assumed his care, more likely than not his precarious medical condition would have been detected and interventions instituted. Until the cardiorespiratory arrest, it does not appear than the EMS personnel were concerned with his physical condition.

- The significant delays by the police officers in alerting EMS personnel that Mr. Arreola was in imminent medical danger tangibly and substantially contributed to his death.

Dr. Kris L. Sperry
11/27/2018
Page 5 of 5

- The Manner of Death for Hector Arreola should more properly be designated as "Homicide."

Kris Sperry, M. D.

Sperry Forensic Pathology Consultants, Inc.
302 Watermark Drive
Peachtree City, Georgia  30269
Telephone:  (770) 486-5380
e-mail Dr. Sperry:  stiffdoc@bellsouth.net