# Official Report



| | |
|---|---|
| Division of Forensic Sciences | Headquarters |
| Georgia Bureau of Investigation | DOFS Case #: 2017-1000874-0008 |
| State of Georgia | Report Date: 3/22/2017 |

George Herrin Jr., Ph.D.
Deputy Director

* NAME Accredited *

**Requested Service:** Consultation
**Agency:** GBI-Reg. 02-Columbus
**Agency Ref#**
**Requested by:** DeMarco, C.

**Case Individuals:**
Victim: Hector Arreola

**Evidence:**
2017-1000874-001    DECEDENT



I have reviewed the case file and agree with the conclusions of the medical examiner.

Jonathan Eisenstat
Jonathan Eisenstat
Chief Medical Examiner

**CC:**

**Related Agencies:**
Muscogee Co. District Attorney
Chattahoochee Judicial Circuit
GBI-Medical Examiner-HQ DOFS          ACN: DARRISAW
Muscogee Co. Coroner
GBI-Reg. 02-Columbus                   ACN: 0201723417

**End Official Report**

# Roberts, Brittany

| | |
|---|---|
| From: | Tyler C. Cashbaugh <TCC@psstf.com> |
| Sent: | Tuesday, June 02, 2020 4:32 PM |
| To: | Roberts, Brittany |
| Cc: | Arreola_ Rodrigo _C0836_1209_ EMAILS |
| Subject: | Hector Arreola DOFS case number is 2017-1000874 |
| Attachments: | OPS Investigative Summary (Arreola).pdf |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Brittany, attached is the Columbus Police Department Office of Professional Standards Investigative Summary for the above case that Dr. Darrisaw wanted to review. Please let me know if she needs anything else.

Thanks.

Tyler C. Cashbaugh
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
Synovus Centre
1111 Bay Avenue, Third Floor
Columbus, GA  31901
P.O. Box 1199
Columbus, GA  31902
Email: tcc@psstf.com
Direct Dial: (706) 256-5306
Fax: (706) 323-7519



CASE NO. 17-01

COMPLAINT

OF

CHIEF R. T. BOREN

OFFICER FIRST CLASS MICHAEL S. AGUILAR

AND

OFFICER BRIAN J. DUDLEY

INVESTIGATED

BY

THE OFFICE OF PROFESSIONAL STANDARDS

Submitted to the Chief of Police on _July 7,_ 2017.

Returned to Professional Standards on _July 10,_ 2017.

_____
Chief of Police

CCG000014




# Columbus Police Department
P. O. Box 1866  510 Tenth Street
Columbus, Georgia  31902-1866

## Major F. D. Blackmon
## Office of Professional Standards

R. T. Boren
Chief of Police

L. H. Miller
Assistant Chief

Lieutenant R. L. Graham
(706) 225-4418
Criminal Intelligence Unit
Internal Affairs Unit

Sergeant T. L. Birris-Mayo
(706) 225-4479
Internal Affairs Unit
Polygraph Examiner

Sergeant Jeffery G. Bridges
(706) 225-4471
Accreditation Manager
Planning & Research
Internal Affairs Unit

D. A. Bray
Administrative Secretary
(706) 225-4474

**To:** R. T. Boren, Chief of Police

**From:** F. D. Blackmon, Major

**Date:** April 13, 2017

**Subject:** **OFFICE OF PROFESSIONAL STANDARDS CASE 17-01**
**Officer First Class Michael S. Aguilar and Officer Brian J. Dudley**

**Incident:** Death of Hector Arreola

**Accusation/Violation:** Section 3-1 – "Use of Force"

**Interviews Conducted With:**
Sergeant Randolph M. Kiel
Officer First Class Michael S. Aguilar
Officer First Class Aaron D. Evrard
Officer Brian J. Dudley
Officer W. Ronnie Oakes
Firefighter Aaron Bush
Emergency Medical Technician James Barnes
Chris Moreland
Alan Tarvin
Raymond Tarvin

**Findings:** Section 3-1 – Exonerated

**Investigators:**
Major F. D. Blackmon
Lieutenant R. L. Graham
Sergeant T. L. Birris-Mayo
Sergeant J. G. Bridges

FDB/db

Phone (706) 653-3105    Fax (706) 653-3130
An Equal Opportunity Organization

CCG000015




# Columbus Police Department
P. O. Box 1866   510 Tenth Street
Columbus, Georgia   31902-1866

## Major F. D. Blackmon
### Office of Professional Standards

R. T. Boren
Chief of Police

L. H. Miller
Assistant Chief

Lieutenant R. L. Graham
(706) 225-4418
Criminal Intelligence Unit
Internal Affairs Unit

Sergeant T. L. Birris-Mayo
(706) 225-4479
Internal Affairs Unit
Polygraph Examiner

Sergeant J. G. Bridges
(706) 225-4471
Accreditation Manager
Planning & Research
Internal Affairs Unit

Sergeant T. B. Dorrough
(706) 225-4473
Internal Affairs Unit
Accreditation, Planning
and Research

D. A. Bray
Administrative Secretary
(706) 225-4474

To:   Brian J. Dudley, Officer Bureau of Patrol Services

From:   *F. D. Blackmon*
F. D. Blackmon, Major

Date:   July 10, 2017

Subject:   **CASE CONCLUSION**
**OFFICE OF PROFESSIONAL STANDARDS' CASE #: 17-01**

The Office of Professional Standards has completed our administrative investigation into the incident involving the arrest of Hector Arreola on Monday, January 9, 2017.

The investigation's findings reveal that the amount of force used to exact the arrest of Mr. Arreola was justified, lawful, and proper. The investigation of this case is classified as exonerated.

FDB/db

c:   R. T. Boren, Chief of Police
L. H. Miller, Assistant Chief of Police
J. D. Hawk, Major, Bureau of Patrol Services
T. C. Danford, Captain, Bureau of Patrol Services




# Columbus Police Department
P. O. Box 1866  510 Tenth Street
Columbus, Georgia  31902-1866

## Major F. D. Blackmon
### Office of Professional Standards

R. T. Boren
Chief of Police

L. H. Miller
Assistant Chief

Lieutenant R. L. Graham
(706) 225-4418
Criminal Intelligence Unit
Internal Affairs Unit

Sergeant T. L. Birris-Mayo
(706) 225-4479
Internal Affairs Unit
Polygraph Examiner

Sergeant J. G. Bridges
(706) 225-4471
Accreditation Manager
Planning & Research
Internal Affairs Unit

Sergeant T. B. Dorrough
(706) 225-4473
Internal Affairs Unit
Accreditation, Planning
and Research

D. A. Bray
Administrative Secretary
(706) 225-4474

To:      Michael S. Aguilar, Officer First Class Bureau of Patrol Services

From:    *F.D. Blackmon*
         F. D. Blackmon, Major

Date:    July 10, 2017

Subject: **CASE CONCLUSION**
         **OFFICE OF PROFESSIONAL STANDARDS' CASE #: 17-01**

The Office of Professional Standards has completed our administrative investigation into the incident involving the arrest of Hector Arreola on Monday, January 9, 2017.

The investigation's findings reveal that the amount of force used to exact the arrest of Mr. Arreola was justified, lawful, and proper. The investigation of this case is classified as exonerated.

FDB/db

c:  R. T. Boren, Chief of Police
    L. H. Miller, Assistant Chief of Police
    J. D. Hawk, Major, Bureau of Patrol Services
    T. C. Danford, Captain, Bureau of Patrol Services

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 7 of 20

17-01 INVESTIGATIVE SUMMARY                                    OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                    Page 1 of 12

On January 9, 2017, members of the Office of Professional Standards were requested to respond to 760 Moss Drive in reference to a person that had been arrested, and upon transport to the hospital, had quit breathing and suffered cardiac arrest. Major F. D. Blackmon, Lieutenant R. L. Graham, and Sergeant J. G. Bridges responded to the scene and Sergeant T. L. Birris-Mayo responded to the Midtown Medical Center in order to conduct an administrative investigation.

Officer First Class Michael Aguilar and Officer Brian Dudley responded to a call at 760 Moss Drive at approximately 0501 hours, where they met with complainant, Hector Arreola. After a discussion with the officers, an agitated Arreola walked up the street and began knocking on a door. Officers attempted to place Arreola under arrest for disorderly conduct, at which time he resisted. Officers forcefully took Arreola to the ground, where he continued to resist efforts to be placed in handcuffs. Arreola had previously suffered a laceration above his left eye, which was re-opened during the struggle. After being placed in handcuffs, EMS arrived and transported Arreola to the hospital. Arreola quit breathing in the ambulance and died a few days later at the hospital.

Chief R. T. Boren requested the Georgia Bureau of Investigation conduct an independent criminal investigation into the incident. Officers Aguilar and Dudley were both transported to Occupational Medicine for a drug/alcohol screen. The results for both were negative.

Incident Summary

On January 9, 2017, at around 0500 hours, Hector Arreola called 911 and requested units respond to 760 Moss Drive, his mother's residence, in reference to advice. The call was the third Arreola had placed to 911 during the morning of January 9, 2017. He had called at 0346 hours requesting police at the Efficiency Lodge, 1776 Boxwood Place, in reference to a dispute. Police could not locate anyone. At 0356 hours, he called requesting a welfare check at 760 Moss Drive. Officers Aguilar and Dudley responded to Moss Drive and made contact with Concepcion Arreola, Hector's mother, who was confused as to why police were called but stated she was fine. Hector Arreola was not present.

Upon Officers Aguilar and Dudley arriving on Moss Drive in response to the 0500 hours call, they met with Arreola in the front yard of 760 Moss Drive. Arreola again wanted officers to check on his mother. Based on the conversation, officers believed Arreola to either be under the influence of drugs or having a psychiatric episode. The officers requested EMS for a psychiatric evaluation. Arreola's mother, eventually, came outside but could not get Arreola to calm down.

Before EMS arrived, Arreola began to walk down the street. He entered the yard of 747 Moss Drive. Officers instructed Arreola not to disturb the neighborhood but Arreola began knocking on the front door of 747 Moss Drive. After Arreola would not comply with the officers demands to leave 747 Moss Drive and return to the street, officers approached Arreola to arrest him for disorderly conduct. Arreola began struggling with the officers and refused to be placed in handcuffs. During the struggle, Officers Aguilar and Dudley were able to get Arreola onto the ground, but Arreola continued to resist the officers' efforts to handcuff him. During part of the struggle on the ground, Arreola was lying on his stomach. During the struggle on the ground, Arreola could be heard yelling, "I can't breathe." According to witnesses, he was continuing to be in non-compliance with the officers. Aguilar and Dudley were, eventually, able to

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 8 of 20

17-01 INVESTIGATIVE SUMMARY                                                OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                                  Page 2 of 12

handcuff Arreola as other officers arrived. Arreola was checked for weapons and was sat up as EMS arrived. A laceration was noticed over Arreola's left eye. Arreola had previously suffered the laceration and it was re-opened during the struggle. Arreola was breathing and conscious when he was placed in the ambulance for transport to the hospital.

Within a block of Moss Drive, Arreola ceased breathing in the ambulance and went into cardiac arrest. EMS personnel performed lifesaving procedures on Arreola, and eventually, transported him to the hospital. Arreola was pronounced deceased on January 10, 2017. There was no evidence discovered to suggest the officers used any type of department-issued lethal or less-lethal weapon or a weapon of opportunity when exacting the arrest of Arreola.

*Notes:* Concepcion Arreola did provide a statement to the Georgia Bureau of Investigation. She, also, provided a written statement to the Columbus Police Department. The Office of Professional Standards (see the Letter to File concerning an attempted interview) did not formerly interview her.

Interview:      Chris Moreland (754 Moss Drive, Columbus, Georgia/███)

On January 11, 2017, at 1113 hours, Sergeant J. G. Bridges met with Chris Moreland outside of his residence. Sergeant Bridges conducted an interview regarding the arrest of Hector Arreola by Officers Michael Aguilar and Brian Dudley.

Mr. Moreland stated, on the morning of January 9, 2017, at approximately 0520 hours, he heard someone yelling outside. He believed he heard someone say, "kill me . . . kill me." He went outside, heard some arguing, and saw two police officers "wrestling" with somebody on the ground. He explained, the person (Arreola) was "struggling" the whole time. He continued to explain, by saying, Arreola was "fighting and yelling." Moreland stated that, after the officers were able to get Arreola handcuffed, Arreola was quiet. He went inside and upon returning outside, he saw Arreola sitting up with his hands handcuffed behind his back. EMS then arrived and left with Arreola.

Interview:      Raymond Tarvin (747 Moss Drive, Columbus, Georgia/███)

On January 11, 2017, at 1016 hours, Sergeant J. G. Bridges met with Raymond Tarvin at his residence. Sergeant Bridges conducted an interview regarding the arrest of Hector Arreola by Officers Michael Aguilar and Brian Dudley.

Mr. Tarvin reported that, around 0510 hours, he was awakened by a knock at the door. He stated he and his son, Alan Tarvin, approached the front door. He stated, there was one person (Hector Arreola) at the door, and Arreola said, "Let me in. I need to use the telephone. They're trying to kill me." Mr. Tarvin refused to open the door and noticed two officers standing at the bottom of the hill in his yard attempting to talk to Arreola. After Arreola and the officers argued back and forth for a short time, the officers came up into the yard and to the sidewalk leading to the front porch, where Arreola was located. The officers attempted to "subdue" Arreola, at which time; a "wrestling match" took place.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 9 of 20

17-01 INVESTIGATIVE SUMMARY                                    OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                          Page 3 of 12

Mr. Tarvin continued to explain the "wrestling match" by saying, the officers could not get control of Arreola and it appeared Arreola was ". . . really strong. Stronger than normal." The struggle went on and the officers finally got Arreola, but he continued to explain, the officers ". . . had a real . . . real tough time with the guy." The officers were able to get Arreola handcuffed after Arreola "went limp." The ambulance arrived later and transported Arreola.

When questioned, Tarvin stated, he believed he heard a Taser based on watching television, but he did not see a Taser being used. He further reported that he believed Arreola was trying to throw punches but the officers had his arms. He stated, it was hard for the officers to keep Arreola on the ground, saying again, Arreola was ". . . just really . . . really strong." Tarvin did acknowledge that, after the struggle and handcuffs being placed on Arreola, the officers sat Arreola up. He described Arreola, at that time as being "groggy, semi-conscious." Tarvin also noticed blood on Arreola's face.

Interview:     Alan Tarvin (747 Moss Drive, Columbus, Georgia/███████)

On January 11, 2017, at 1016 hours, Sergeant J. G. Bridges met with Alan Tarvin at his residence. Sergeant Bridges conducted an interview regarding the arrest of Hector Arreola by Officers Michael Aguilar and Brian Dudley.

Alan Tarvin reported, just after 0500 hours on January 9, 2017, he heard a light tap at his front door and then heard a loud bang at the door. Upon going to the door with his father, they saw a person (Arreola), who kept stating, he needed to use the phone. His father refused to let Arreola inside and Arreola requested they call 911. Tarvin found this odd because he looked down the driveway and saw two Columbus police officers. As Arreola stepped off the porch, he began to argue with the officers. He told the officers, ". . . y'all aren't cops. That's not protocol . . ." The officers then walked up the driveway and tried to put handcuffs on Arreola. Tarvin noticed that Arreola's mother also approached him.

Alan Tarvin reported that, as the officers were trying to arrest Arreola, he began to "jerk away" so the officer took him to the ground. He heard the officers telling Arreola to stop resisting. He explained, the officers could not get the handcuffs on Arreola and the struggle took a long time. Arreola was resisting the officers by "kicking 'em, trying to elbow 'em, trying to free his self . . ." and was yelling at his mother at the same time.

Tarvin explained, another officer arrived, and at about that time, the officers were able to get Arreola in handcuffs. According to Tarvin, the struggle wore out the officers. He spoke to one of the officers afterwards and the officer was bent over breathing heavy while making the comment that Arreola was strong.

Mr. Tarvin stated that, after being placed in handcuffs, Arreola "quit resisting. He quit talking. Just complete silence with him . . . you know, and no movement at all." The officers sat him (Arreola) up and tried to communicate with him. Arreola only gave "mumbling" responses. EMS arrived and Arreola was placed in the ambulance.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 10 of 20

17-01 INVESTIGATIVE SUMMARY                                    OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                    Page 4 of 12

When asked, Tarvin described Arreola as someone appearing to be on drugs and acting "out of his mind." He did not see any of the officers use any type of weapon or throw any punches or kicks during the struggle. He did notice the blood on Arreola's face after the struggle had ended.

Interview:   Officer First Class Aaron D. Evrard

On January 12, 2017, at 0814 hours, members of the Office of Professional Standards--which included, Major F. D. Blackmon, Lieutenant R. L. Graham, Sergeant T. L. Birris-Mayo, and Sergeant J. G. Bridges-- interviewed Officer First Class Aaron Evrard concerning the arrest of Hector Arreola.

Officer Evrard explained he was originally dispatched to the call on Moss Drive around 0500 hours but was disregarded after he had made a traffic stop while en route. A short time later, he heard Officer Aguilar asking the dispatcher to hold traffic and explained, "sounded as if he was having a problem, so I activated my lights and sirens and my body camera and I drove to his location." While he was en route, he heard Aguilar again come over the radio and ask for another unit. Just before Evrard arrived at the location, Aguilar alerted everyone over the radio that he had one in custody.

Upon his arrival to the location, Officer Evrard located Aguilar, Dudley, and Arreola. Arreola was still lying on the ground--on his stomach--and he relieved officers by holding Arreola's wrist while Dudley went to get some leg shackles. He explained, Arreola "was grabbing at my hands," so he ordered Arreola to stop. The leg shackles were placed on Arreola, at which time, Evrard attempted to search Arreola by turning him. Arreola resisted, but Evrard searched Arreola's pockets and then, with assistance from Aguilar, sat Arreola up so that he was in a seated position, leaning against Aguilar. Officer Evrard stated Arreola "was breathing" at the time.

EMS arrived, and Evrard took Officer Dudley to Dudley's residence. Due to the struggle, Dudley was having a hard time catching his breath and needed his inhaler. Upon retrieving the inhaler and starting to return to Moss Drive, Evrard noticed the ambulance stopped on River Road. He exited his vehicle and noticed that the EMS personnel were administering CPR to Arreola in the back of the ambulance.

When asked if Arreola was showing resistance after he (Evrard) arrived, Evrard responded that Arreola was showing resistance. Evrard explained, by stating, ". . . he was kicking his legs, and then, grabbing my hands . . . when I tried to roll him one-way . . . he was pulling to go back towards the ground. And then, again, trying to sit him upright was as if he was trying to almost . . . like a plank. You know, like pulling away that way."

Evrard also indicated he spoke to some witnesses while on scene. He spoke to the Tarvins, Alan and Raymond, and to Concepcion Arreola. All three provided written statements. He stated that Mrs. Arreola gave brief answers but did say that her son was acting strange. Evrard reported, to his knowledge, no lethal or less lethal weapon was used in the incident and he did not sustain any injuries.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 11 of 20

17-01 INVESTIGATIVE SUMMARY　　　　　　　　　　　　　　　　OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY　　　　　　Page 5 of 12

Interview:     Officer W. Ronnie Oakes

On January 13, 2017, at 0806 hours, members of the Office of Professional Standards--which included Major F. D. Blackmon, Lieutenant R. L. Graham, Sergeant T. L. Birris-Mayo, and Sergeant J. G. Bridges--interviewed Officer Ronnie Oakes concerning the arrest of Hector Arreola.

Officer Oakes stated that he was servicing a burglary call when he heard Officer Aguilar on the radio. He stated he heard someone screaming and thought it may be Aguilar. He responded to Moss Drive. When he arrived, Officer Evrard was "on top" of Arreola. He additionally stated that, "Officer Aguilar and Dudley looked like they were completely winded." Arreola was still kicking, so Oakes ran up and grabbed Arreola's legs as Officer Dudley retrieved some leg shackles. After the leg shackles were in place, officers sat Arreola up, and then, assisted in placing him on the stretcher once EMS arrived. He reported Arreola was not talking but was still breathing at the time.

The only force that Oakes reported being used against Arreola was Officer Evrard and himself holding Arreola down to prevent him from kicking. To his knowledge, no one used a lethal or less lethal weapon or used hard empty hands to strike Arreola. When asked if he spoke to Officer Aguilar or Dudley concerning the incident, he stated Officer Dudley told him, ". . . that's the most he's ever had to put up with some-body trying to resist him."

Interview:     Sergeant Randolph M. Kiel

On January 13, 2017, at 0831 hours, members of the Office of Professional Standards--which included Lieutenant R. L. Graham, Sergeant T. L. Birris-Mayo, and Sergeant J. G. Bridges--interviewed Sergeant Randy Kiel concerning the arrest of Hector Arreola.

Sergeant Kiel indicated he was at the north precinct when he heard either Officer Aguilar or Dudley request for an ambulance (psychiatric evaluation) to respond to Moss Drive. He prepared to be en route to Moss Drive, when he heard Aguilar ask for backup. By the time Kiel arrived on scene, Arreola had already been placed in the ambulance. He observed a small cut above Arreola's eyebrow. He attempted to speak to Arreola but Arreola was not talking to anyone. However, he did observe Arreola sitting up and breathing.

Kiel stated Officer Dudley was having a hard time breathing, so he instructed Officer Evrard to take Dudley home to get his (Dudley's) inhaler. He was notified that the ambulance had stopped on River Road and responded to that location. Medical personnel were administering CPR to Arreola. Kiel then returned to Moss Drive.

Sergeant Kiel said no one reported to him that any lethal or less lethal weapon was used to arrest Arreola. In addition, he did not recall any of the officers sustaining an injury during the struggle. First injury reports were completed because the officers were exposed to a contagious blood disease, sepsis.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 12 of 20

17-01 INVESTIGATIVE SUMMARY | OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY | Page 6 of 12

Interview:     Emergency Medical Technician James Barnes

On January 17, 2017, at 0956 hours, members of the Office of Professional Standards--which included Lieutenant R. L. Graham and Sergeant J. G. Bridges--interviewed EMT James Barnes concerning the arrest of Hector Arreola.

EMT Barnes stated he and Aaron Bush received a call for service on Moss Drive. Although the location was out of their territory (stationed on 10th Street), all other closer units were busy. He indicated the nature of the call was a psychiatric evaluation and they responded. Once they arrived, he briefly spoke to one of the officers on scene who reported a psychiatric evaluation was needed and the person (Arreola) had been combative.

Arreola was "sitting on his rear end . . . like, he was sitting with his legs out in front." Arreola had been placed in handcuffs and leg shackles. Barnes reported, as he approached Arreola, ". . . I could see him breathing but . . . you know, shined a flashlight down and I looked up . . . you know, looked at him. Looked like his eyes were a little glazed, he may be a little sluggish." He asked Arreola's mother if she had knowledge of him doing any drugs. She reported she did not.

Arreola was placed on a stretcher. Barnes asked that Arreola be kept in handcuffs and leg shackles because he had been combative with the officers. Arreola was placed in the ambulance, at which time, he was still breathing but was not talking. About the time Aaron Bush went up front and drove away, Barnes reported, ". . . the monitor went all the way up . . . .I think it was . . . like, maybe, 150 . . . 160, which is systolic blood pressure and goes all the way back down." The monitor would not give him a blood pressure reading. The only injury Barnes noticed on Arreola was the laceration to the left eyebrow area. Arreola was still breathing and Barnes was going to get a blood pressure reading manually and then start on all the normal protocols. Barnes noticed, the vehicle turn (onto River Road), and then, Arreola took a deep breath and stopped breathing. Barnes then had the ambulance stop and administered lifesaving procedures. A fire truck arrived to assist and Arreola was transported to the Midtown Medical Center.

Interview:     Firefighter Aaron Bush

On January 17, 2017, at 1057 hours, members of the Office of Professional Standards--which included Major F. D. Blackmon, Lieutenant R. L. Graham, and Sergeant J. G. Bridges--interviewed Firefighter Aaron Bush concerning the arrest of Hector Arreola.

Firefighter Bush reported on January 9, 2017, at approximately 0500 hours, he and EMT James Barnes were dispatched on a psychiatric call to Moss Drive. Upon arrival, an officer explained to them that a struggle had taken placed between the officers and subject, Hector Arreola. Arreola was handcuffed and leaning up against an officer's legs. Arreola would not respond to them. They placed Arreola on a stretcher and trans-ported him. After turning onto River Road, Barnes asked for assistance, so he stopped and got in the back of the ambulance, where lifesaving procedures were administered. A fire truck arrived and Arreola was transported to the hospital.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 13 of 20

17-01 INVESTIGATIVE SUMMARY                                    OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                         Page 7 of 12

When asked, Bush reported that Arreola was breathing, when he arrived on scene, and there was not any need for lifesaving procedures while in the yard of 747 Moss Drive. The officers were not doing anything to Arreola that would restrict Arreola's breathing.

Interview:     Officer Brian J. Dudley

On January 11, 2017, at 0759 hours, members of the Office of Professional Standards—which included Major F. D. Blackmon, Lieutenant R. L. Graham, Sergeant T. L. Birris-Mayo, and Sergeant J. G. Bridges—interviewed Officer Brian Dudley concerning the arrest of Hector Arreola.

Officer Dudley reported on January 9, 2017, at approximately 0400 hours, he and Officer Aguilar received a call to conduct a welfare check at 760 Moss Drive. They checked on the resident, Concepcion Arreola, and returned to service. He noted that, due to her surprised reaction and the fact that there appeared to be no reason a welfare check would be needed, he found it odd that the call was placed. Dudley responded to a few more calls, and then, he and Aguilar received the call to return to 760 Moss Drive to meet with Hector Arreola. Upon arrival, Arreola had parked his vehicle blocking the driveway to 760 Moss Drive.

Officers Aguilar and Dudley spoke to Hector Arreola. Officer Dudley said Arreola was making statements as to something not being right in the house. He would say he saw flashlights on inside the house. Dudley said, he never saw or understood about what Arreola was talking. After conversing for a while, Officer Dudley began to believe Arreola was possibly under the influence of drugs or alcohol or had "some type of mental condition." They continued to talk to Arreola, who--at one point--asked Dudley why his gun was in it's holster. Shortly after making that comment, Arreola began to walk away and hid behind trashcans. As he was walking away, Arreola said, he thought the officers were going to shoot him. Mrs. Arreola joined them in the driveway and attempted to reason with her son. After a brief continuation of the conversation, Hector Arreola began to walk west down the street.

Officer Dudley explained that Arreola went into a neighbor's yard and up to the door. He was knocking on the door. Officers Dudley and Aguilar, as well as Mrs. Arreola, tried to reason with Arreola and get him to come back to the street. Officer Dudley stated, at one point, he told Arreola, ". . . you need to come down here and talk with us or we're gonna take you to jail for disorderly conduct." Arreola responded by saying, "well, where's your backup." They decided to go up the hill and told Arreola to place his hands behind his back. A struggle then took place near the steps of the front porch. Officers were unable to gain control of Arreola. Officers were able to get Arreola away from the steps and onto the grass where all three went to the ground. Officers were still unable to gain full control of Arreola's arms. Arreola was screaming during the struggle. Dudley remembered Arreola screaming, "don't let them arrest me," "they're gonna kill me," and "I can't breath." At one point, when Arreola said he could not breathe, Dudley stated, he "let up a little bit," but Arreola then broke away. The struggle continued and Aguilar was able to radio for additional units. Dudley was finally able to get him handcuffed.

Officer Evrard arrived and assisted in holding Arreola's legs as Dudley went to get leg shackles. After putting the leg shackles on, Dudley stated he had to "step away" because of his asthma. He determined he needed his inhaler, and eventually, Officer Evrard took him to get the inhaler. Upon returning, they

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 14 of 20

17-01 INVESTIGATIVE SUMMARY                                    OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                       Page 8 of 12

noticed the ambulance stopped on River Road. They then returned to the scene and secured the area per Sergeant Kiel.

During questioning, Officer Dudley stated he did not use his taser or any other department-issued weapon during the struggle with Arreola. He, also, did not recall Aguilar or himself ever putting their hands around Arreola's neck/throat in a manner that would cause choking. He did indicate that his body camera fell off during the incident. Dudley, also, stated that, as EMS arrived, officers had Arreola sitting up and Arreola was breathing.

*Notes: Officer Dudley was provided and signed the Garrity Warning before being interviewed.*

Interview:    Officer First Class Michael S. Aguilar

On January 10, 2017, at 0823 hours, members of the Office of Professional Standards—which included Major F. D. Blackmon, Lieutenant R. L. Graham, Sergeant T. L. Birris-Mayo, and Sergeant J. G. Bridges—interviewed Officer First Class Michael Aguilar concerning the arrest of Hector Arreola.

Officer Aguilar reported on January 9, 2017, at around 0400 hours, he and Officer Dudley responded to 760 Moss Drive for a welfare check on the mother of the complaining party. The mother, Concepcion Arreola, was fine and had been asleep. After the call, he responded to a few additional calls before being dispatched back out to 760 Moss Drive.

The second time Officer Aguilar responded, Hector Arreola was present. The second call was around 0500 hours. Upon talking to Arreola, Officers Aguilar and Dudley inquired as to why they were again called out to the address for a welfare check at the time of morning that it was. Arreola made strange comments about things going on in the house. Aguilar believed Arreola "had some mental health issues." An ambulance was requested to get Arreola some help. Arreola began making comments about seeing lights in the house. No lights were seen by the officers. After speaking to Arreola for a while longer, Arreola began to question whether Aguilar and Dudley were the real police.

After being advised not to, Arreola went into a neighbor's yard and began knocking on the door. Officers warned Arreola that he would be arrested if he did not stop disturbing the neighborhood and come back to the street. Arreola then stated, ". . . where's your backup." Officer Aguilar and Dudley approached Arreola near the front porch in the neighbor's (747 Moss Drive) yard. Arreola refused to leave the yard and officers attempted to arrest Arreola for Disorderly Conduct.

According to Officer Aguilar, after Arreola resisted Aguilar taking his arm, Arreola began to "yell, scream, and fight." Due to Arreola struggling and resisting, officers attempted to get Arreola to the ground to handcuff him. Aguilar was not sure how but stated they all (officers and Arreola) did end up on the ground. He called for assistance on the radio and continued to try and handcuff Arreola. Aguilar stated he had been in several situations where someone was resisting arrest but indicated "this is by far the . . . the biggest struggle for someone attempting to get away." Officers kept trying to "flatten out" Arreola's arms so he could not escape. Arreola "kept rolling over" and tucked his hands in the middle of his body. Officers Aguilar and Dudley were, finally, able to get Arreola handcuffed at the same time Officer Evrard arrived.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 15 of 20

17-01 INVESTIGATIVE SUMMARY                           OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY              Page 9 of 12

Aguilar stated, at that point, ". . . I was so tired, I needed to . . . you know, I needed to get up. My arms were weak; my body was weak." Officer Evrard assisted by holding Arreola's legs while Dudley was able to get leg shackles.

Although Arreola resisted, officers sat Arreola up in an upright position. EMS arrived and looked at Arreola. Arreola had a laceration on his face. Aguilar was unsure as to how the laceration occurred. He reported, "we never used knees, fists, no ASP baton, no Taser, no pepper spray . . . and, we never used any kicks or anything. Everything we used was soft empty hands, and it was just, basically, trying to get him in custody." Arreola was placed on a stretcher. EMS personnel requested handcuffs be left on Arreola and a unit follow them to the hospital.

Officer Aguilar followed the ambulance and was behind the ambulance when it pulled over on River Road. He got out and questioned EMS personnel as to what was happening and noticed CPR being performed on Arreola. After a fire truck arrived, Arreola was transported to the Midtown Medical Center. At the hospital the doctor removed a piece of glass "that was about an inch long and about a half inch wide" from the cut on Arreola's head. Aguilar stated that he had no idea where the glass came from.

*Notes: Officer First Class Aguilar was provided and signed the Garrity Warning before being interviewed.*

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 16 of 20

17-01 INVESTIGATIVE SUMMARY                                OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY                Page 10 of 12

## Investigative Findings

- On January 9, 2017, at 0501 hours, Officers Michael Aguilar and Brian Dudley responded to a 911 call at 760 Moss Drive.

- Officers met and spoke with Hector Arreola. The conversation led officers to believe Arreola was either under the influence of drugs or had a mental disorder.

- The officers could be clearly identified as Columbus Police officers based on their uniforms and patrol vehicles.

- Arreola entered into the yard and onto the porch of 747 Moss Drive against the commands of the officers.

- Arreola disturbed the neighbors by knocking on the door to 747 Moss Drive.

- Officers attempted to place Arreola under arrest for disorderly conduct; at which time, a struggle ensued.

- Arreola had previously suffered a laceration to his left eyebrow area, which was re-opened during the struggle. Glass was discovered inside the wound by hospital staff. During an interview with the Georgia Bureau of Investigation, Concepcion Arreola indicated the glass in Hector Arreola's head was from a previous injury.

- Taser downloads for the involved officers indicated that a Taser was not deployed during the incident.

- Autopsy results indicated the cause of death to be from methamphetamine toxicity and the manner of death to be an accident.

- On July 5, 2017, the Georgia Bureau of Investigation completed their investigation into the case. Their findings were turned over to the Muscogee County District Attorney's Office.

### Georgia Peace Officer Standards and Training (P.O.S.T.) Certification Status

- On March 22, 2013, Officer Dudley completed the Basic Law Enforcement Training Course at the Georgia Public Safety Training Center Regional Academy in Columbus, Georgia.

- On December 4, 2009, Officer First Class Aguilar completed the Basic Law Enforcement Training Course at the Georgia Public Safety Training Center Regional Academy in Columbus, Georgia.

- A report obtained on April 4, 2017, reflected that Officer Dudley's status as actively employed with the Columbus Police Department and his power of arrest were current.

Case 4:19-cv-00005-CDL   Document 40-7   Filed 08/07/20   Page 17 of 20

17-01 INVESTIGATIVE SUMMARY  OFFICE OF PROFESSIONAL STANDARDS
OFFICER FIRST CLASS MICHAEL AGUILAR AND OFFICER BRIAN DUDLEY  Page 11 of 12

- A report obtained on April 4, 2017, reflected that Officer First Class Aguilar's status as actively employed with the Columbus Police Department and his power of arrest were current.

- Officer Dudley has completed the required training each calendar year since completing the Basic Law Enforcement Training Course. He is not required to submit any waivers for training.

- Officer First Class Aguilar has completed the required training each calendar year since completing the Basic Law Enforcement Training Course. He is not required to submit any waivers for training.

- Officer Dudley does not have any prior, pending, or active P.O.S.T. investigations or complaints.

- Officer First Class Aguilar does not have any prior, pending, or active P.O.S.T. investigations or complaints.

Conclusion

The Office of Professional Standards has completed the investigation into the incident involving the arrest of Hector Arreola. The investigation revealed that Officer First Class Michael Aguilar and Officer Brian Dudley used the amount of force necessary to exact the arrest of Hector Arreola. There is no evidence to suggest or support the use of excessive force by either officer and both officers acted in accordance with Columbus Police Department Policy Manual Section 3-1 (Use of Force).

**OFFICER FIRST CLASS MICHAEL AGUILAR**

SECTION 3-1   --USE OF FORCE--                              EXONERATED

**OFFICER BRIAN DUDLEY**

SECTION 3-1   --USE OF FORCE--                              EXONERATED

Respectfully Submitted,

OFFICE OF PROFESSIONAL STANDARDS

*[signature]*
Freddie D. Blackmon, Major

*[signature]*
Roderick L. Graham, Lieutenant

*[signature]*
Tammy L. Birris-Mayo, Sergeant

*[signature]*
Jeffery G. Bridges, Sergeant

JGB/db

# Columbus Police Department
# Executive Summary

| | |
|---|---|
| CASE NUMBER | 17-000680 |
| OFFENSE TITLE-INCLUDE DEGREE  Disorderly Conduct | POINT OF ENTRY |
| DESCRIBE TYPE FORCE OR THREAT USED | |
| NATURE OF INJURY | |
| LOCATION OF OCCURRENCE   760 MOSS DR | |
| OCCURRED ON/BETWEEN   1/9/2017 5:01:00 AM | REPORTED ON   1/9/2017 5:01:24 AM |

VICTIM OR BUSINESS       NAME: ENTITY: State of Georgia

### SUPPLEMENTAL NARRATIVE

A few minutes after Officer Dudley and Officer Aguilar arrived on scene I heard Officer Aguilar over the radio ask to hold traffic. It sounded as if he was struggling with a suspect. I left Home Depot (2891 Sowega Dr.) and ran code (lights and sirens) to 760 Moss Dr. I arrived on scene and found Officers Dudley and Aguilar in the front yard of 747 Moss Dr. They had the suspect, Mr. Arreola handcuffed and on the ground. The suspect was still struggling and kicking his feet. I helped hold the suspect while Officer Dudley went to get leg irons. Mr. Arreola tried to grab my fingers and pull them. He tried to pull away from Officers. Officer Aguilar and I turned the suspect on his side and searched him for any weapons. We placed him in a seated position and called EMS to ensure that they were coming to our location.

Medic 1 arrived at 0539 and began to treat Mr. Arreola.

I spoke to Mr. Alan Tarvin, Witness (resident of 747 Moss Dr.). He stated that Mr. Arreola knocked on his front door multiple times at about 0510 hours. He stated that when he answered the door Mr. Arreola asked to use his phone. Mr. Tarvin stated that he did not know and had never seen Mr. Arreola. He was acting strange and may have been under the influence of some type of drug. He stated that when police attempted to place him in custody, Mr. Arreola refused to comply and actively fought with police for several minutes.

I spoke to Officer Brian Dudley. He stated that he arrived to 760 Moss Dr. in reference to a call from Hector Arreola. Officer Dudley reported that Mr. Arreola stated that he was worried for his Mother's safety because he saw what looked like flashlights inside her house. Officer Dudley said that during the interview, Mr. Arreola got scared at one point that Officer Dudley was going to shoot him for no apparent reason and hid behind some trash cans. Mr. Arreola stated to Officers that he was going to go call the police and walked into a neighbor's Yard (747 Moss Dr.) and knocked on the door. Mr. Arreola was attempting to wake up the neighbor by banging on the door. Officers Dudley and Aguilar told Mr. Arreola to come back to them so that they would not further disturb the resident at 747 Moss Dr. Due to Mr. Arreola's strange behavior and disturbing neighbors, Officers Dudley and

Aguilar attempted to detain Mr. Arreola. They also wanted to have him evaluated by EMT's. Officer Dudley stated that Mr. Arreola refused to comply and they had to struggle with him for several minutes before they were able to place him in custody. During the struggle Mr. Arreola pulled away from police, kicked at them and refused to place his arms behind his back.

This case remains under investigation.

Supplement 01-10-17 (Sgt. Randy Kiel)

On 01-09-17 Officers Brian Dudley and Officer Michael Aguilar came in contact with Hector Arreola and attempted to place him in custody. A struggle followed and Mr. Arreola was taken to the ground (grass portion of the front yard). Officers Aaron Evrard and Ronnie Oakes then arrived on the scene and assisted in detaining Mr. Arreola. After Mr. Arreola was restrained and handcuffed, officers noticed that he was bleeding from a small laceration above his left eye. Emergency Medical Personnel arrived on the scene and rendered aid to Mr. Arreola. He was then transported to Midtown Medical Center by M-1 and treated by hospital personnel. It was later learned that Mr. Arreola has a sepsis infection and that the officers who came in contact with him should use caution. The officers involved in restraining Mr. Arreola were advised of this information and a injury incident report was completed.

Supplement 01-10-17 (Lt. Walton)

On 01-09-17 Sgt. Kiel attempted to interview Mr. Arreola in the ambulance while EMTs worked on Mr. Arreola. It was later learned that he (Sgt. Kiel ) was also in contact with Mr. Arreola and possibly exposed to an infectious desease.

This case remains under investigation