

Deposition of:

## Jezreel Custodio

*April 23, 2020*

In the Matter of:

## Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Veritext Legal Solutions

800.808.4958 | calendar-atl@veritext.com | 770.343.9696

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
 2                    COLUMBUS DIVISION
 3    RODRIGO ARREOLA, as parent
      of Hector Arreola, Deceased,
 4    and as Personal Representative
      and Administrator of the
 5    Estate of Hector Arreola,
      CONCEPCION ARREOLA, as
 6    parent of Hector Arreola,
      and S.A., minor child of
 7    Hector Arreola, by next
      friend Jezreel Imee Custodio,
 8
           Plaintiffs,
 9                          CASE NO. 4:19-cv-00005
        vs.
10
      THE CONSOLIDATED GOVERNMENT
11    OF COLUMBUS, GEORGIA,
      OFFICER MICHAEL AGUILAR, in
12    his individual and official
      capacity, OFFICER BRIAN
13    DUDLEY, in his individual
      and official capacity, OFFICER
14    AARON EVRARD, in his individual
      and official capacity, and
15    COLUMBUS POLICE DEPARTMENT
      CHIEF OF POLICE RICHARD T.
16    BOREN, in his individual and
      official capacity,
17
           Defendants.
18    _____
19         DEPOSITION OF JEZREEL IMEE CUSTODIO
20          TAKEN BY REMOTE VIDEOCONFERENCE
21
                     April 23, 2020
22
                      1:14 p.m.
23
24
25         LAURA R. SINGLE, CCR-B-1343
```

Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 2

```
 1                A P P E A R A N C E S
 2
 3    For the Plaintiffs:
 4            MARK C. POST, Esq.
              (via remote videoconference)
 5            Mark Post Law, LLC
              3 Bradley Park Court
 6            Suite F
              Columbus, Georgia  31904
 7               (706) 221-9371
                mpost@markpostlaw.com
 8
 9
10
11
12
13
14    For the Defendants:
15            ALAN G. SNIPES, Esq.
              JAMES C. CLARK, JR., Esq.
16            (via remote videoconference)
              Page Scrantom, Sprouse, Tucker & Ford, P.C.
17            1111 Bay Avenue
              Third Floor
18            Columbus, Georgia  31901
                 (706) 324-0251
19              ags@psstf.com
                jcc@psstf.com
20
21
22
23
24
25
```

Page 3

1                          I N D E X

2

3    EXAMINATION OF JEZREEL IMEE CUSTODIO            PAGE

4    BY MR. SNIPES..................................  4

5

6

7

8

9

10

11                    (No exhibits were marked.)

12

13

14

15

16

17

18                    *        *        *

19

20

21

22

23

24

25

Page 4

1              P R O C E E D I N G S

2              (Pursuant to Article 10(B) of the Rules and

3        Regulations of the Georgia Board of Court

4        Reporting, a written disclosure statement was

5        submitted by the court reporter to all counsel

6        present at the proceeding.)

7                    *       *       *

8              JEZREEL IMEE CUSTODIO,

9   Having been first duly sworn to state the truth, was

10  examined and testified as follows:

11                  EXAMINATION

12  BY MR. SNIPES:

13       Q.   Good afternoon. I guess it's good morning

14  for you. I'm Alan Snipes.  I represent the

15  Defendants in the lawsuit that's been filed related

16  to the death of Hector Arreola.

17            Have you ever given a deposition before?

18       A.   No. This is my first time.

19       Q.   All right. The good news is it's going to

20  be pretty short.

21       A.   Okay.

22       Q.   The way the process works is I'm going to

23  ask you a series of questions today. We have a court

24  reporter, who is in Snellville, Georgia, remotely,

25  who is taking down everything that you and I both

Page 5

1    say. For that reason, if we can answer audibly and

2    as loud as you can, it will help her greatly in terms

3    of getting everything we say down.

4            Is that fair?

5       A.   Yes.

6       Q.   All right. If you don't understand any of

7    my questions, please just let me know and I'll be

8    happy to try to rephrase them.  The main thing we

9    want to do is make sure that we have a record that is

10   accurate of what I ask and what you intended to

11   answer. Okay?

12      A.   Okay.

13           MR. POST: We are reserving objections

14      except as to the form of the question and

15      privilege, correct?

16           MR. SNIPES: Correct.

17   BY MR. SNIPES:

18      Q.   Can you state your full name for me, please?

19      A.   Yes. It's Jezreel Imee Custodio.

20      Q.   Where do you live, Ms. Custodio?

21      A.   Right now I live at ███████████████

     ████████████████████████ Hawaii 96815.

23      Q.   How long have you lived in ███████?

24      A.   Since August of 2019.

25      Q.   And what brought you to ███████?

Page 6

1      A.   My boyfriend is stationed here. He's an

2  officer in the Coast Guard.

3      Q.   Do you have any plans to move back to the

4  Mainland?

5      A.   Yes, we are. Actually, in the summer we're

6  going to move to Washington, D.C.

7      Q.   Do you have anybody with you in the room

8  while you're giving this deposition?

9      A.   Yes, I do.

10      Q.   Okay. Who is --

11      A.   Well, my boyfriend is here. He's working.

12      Q.   I can't see, so I have to ask. It's no big

13  deal.

14      A.   All right.

15      Q.   Can you give me a history of where all you

16  have lived starting when you moved out of your

17  parents' home?

18      A.   When I moved out of my parents' -- well,

19  like when I was -- is that what you're asking?

20      Q.   Well, I was asking actually generally and

21  then I was going to drill down into where Hector fit

22  in that puzzle.  I was asking just when you moved out

23  of your parents home where did you first start

24  living?

25      A.   Well, I moved -- when I moved here, yeah,

Jezreel Custodio                                April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                      Page 7

1    that was it. I was living with my parents for a

2    while.

3         Q.    Okay. And where were you living with your

4    parents?

5         A.    In Suwanee, Georgia.

6         Q.    How old are you, Jezreel?

7         A.    I'm 30 years old.

8         Q.    And so you moved directly from your parents'

9    home in Suwanee to Honolulu; is that right?

10        A.    Correct.

11        Q.    How long have you been with your current

12   boyfriend?

13        A.    Two years.

14        Q.    When did you first meet Hector?

15        A.    I met Hector in 2005.

16        Q.    What was the context of you meeting Hector?

17        A.    He was friends with one of my classmates.

18   He didn't go to my school. I went to Hardaway High

19   School in Columbus and Hector went to Jordan High

20   School, I think, from what can I remember. That was

21   years ago.

22        Q.    Did you grow up in Columbus?

23        A.    I did. I moved there in 2004 from the

24   Philippines.

25        Q.    Were your parents in the military?

Page 8

1        A.    No; they're nurses.

2        Q.    They're nurses.

3              And then they moved from Columbus to Suwanee

4    at some point?

5        A.    Yes, correct. Well, from Columbus we moved

6    to the Washington, D.C., area and then we moved to

7    Suwanee.

8        Q.    And how old were you when you first met

9    Hector?

10       A.    I think I was about 15 or 16.

11       Q.    Did you graduate from high school?

12       A.    Did he or did I?

13       Q.    Did you?

14       A.    Yes, I did.

15       Q.    What year?

16       A.    2007.

17       Q.    All right. When did you and Hector start

18   dating?

19       A.    In 2007, March of 2007.

20       Q.    And how long did you and Hector date?

21       A.    I think it was July of 2011.

22       Q.    So give or take a little, about four years?

23       A.    About four years, correct.

24       Q.    And you-all were together that entire time?

25       A.    No.  We had we broke up a few times but had

Page 9

```
 1    gone back together when I got pregnant with our

 2    daughter in 2010.

 3         Q.   Okay.  What's your daughter's date of birth?

 4         A.   ███████████████.

 5         Q.   So she's ████ years old then?

 6         A.   Correct.

 7         Q.   What is her full name?

 8         A.   Her full name is ██████  ██████████.

 9         Q.   Is Hector's name on her birth certificate?

10         A.   Yes.

11         Q.   He's confirmed to be the father of ███████;

12    is that right?

13         A.   That's right.

14         Q.   Now, you understand, Ms. Custodio, that this

15    lawsuit is brought related to the arrest of Hector on

16    January 9, 2017; is that right?

17         A.   Correct.

18         Q.   All right. I represent The Columbus

19    Consolidated Government, Michael Aguilar, Brian

20    Dudley, and Aaron Evrard.

21              Have you ever talked to Officer Michael

22    Aguilar before?

23         A.   No.

24         Q.   Have you ever talked to Brian Dudley before?

25         A.   No.
```

Jezreel Custodio                                                April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                              Page 10

1       Q.    Have you ever talked to Aaron Evrard before?

2       A.    No.

3       Q.    Have you talked with anybody affiliated with

4   The Columbus Consolidated Government about the arrest

5   of Hector or this lawsuit?

6       A.    No, I have not.

7       Q.    Have you talked to any paramedics or

8   ambulance drivers about the care received by Hector

9   Arreola on January 9, 2017?

10      A.    No.

11      Q.    Have you talked to any doctors about

12  Mr. Arreola's condition on January 9, 2017?

13      A.    No.

14      Q.    Were you and Hector ever married?

15      A.    No, we weren't.

16      Q.    Were you ever engaged?

17      A.    No.

18      Q.    So you started dating Hector at or around

19  the time you graduated from high school?

20      A.    Correct.

21      Q.    At that time, which would have been 2007,

22  had Hector already dropped out of high school?

23      A.    He got his GED from my knowledge according

24  to him, so yes.

25      Q.    Do you know whether he got a GED?  You said

Case 4:19-cv-00005-CDL   Document 69   Filed 03/15/21   Page 13 of 47
Jezreel Custodio                              April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 11

1   according to him he told you that.

2        A.   That's what he told me and then years later

3   I helped him apply to college at Columbus Technical

4   College, which meant that he did have a GED, so...

5        Q.   Okay. Do you know why Hector dropped out of

6   high school?

7        A.   I did not know why.

8        Q.   Did he drop out of high school or was he

9   kicked out of high school?

10        A.   From my knowledge, he dropped out of high

11   school to get a GED.

12        Q.   All right. After Hector dropped out of high

13   school, what type of jobs did he have?

14        A.   He -- I remember he worked -- I remember he

15   told me he worked at the PX in Fort Benning and his

16   family had a business that he worked with his mom.

17        Q.   And what type of job was he doing working

18   with his mom?

19        A.   I think -- from my knowledge, he was helping

20   out in the store, probably cashier work or helping

21   out cleaning the store.

22        Q.   When you first started dating Hector in

23   2007, where did he live?

24        A.   He lived with his parents in Midland.

25        Q.   Okay. Did he ever move after that?

Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                        Page 12

1       A.    When I was dating him or after the fact,

2    after --

3       Q.    During the time you were dating him first.

4       A.    No, he didn't.  I think he -- actually, he

5    did. He moved to Patricia's, his sister, for a

6    little bit and then he moved to Arizona to live with

7    his grandma, I think.

8       Q.    And then after he lived in Arizona for a

9    while he came back to the Columbus area?

10      A.    Yes, he did.

11      Q.    And then I understand his parents divorced

12   in around 2012. Where did he go to live then?  Of

13   course, that would have been after you broke up with

14   him, I suppose.

15      A.    Yeah. We didn't have any more communication

16   at that time. So after 2011 in September or so was

17   the last time that I had spoken to him.

18   Q.   All right. Your daughter was born March 19,19

     2011, right?

20      A.    That's correct.

21      Q.    And you and Hector broke up in approximately

22   September of 2011; is that right?

23      A.    We broke up in July, but I kept -- I was

24   communicating with him for about two months to kind

25   of --

Case 4:19-cv-00005-CDL   Document 69   Filed 03/15/21   Page 15 of 47
Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 13

1      Q.   And after -- and then after September 2011,
2  you stopped communicating with him at all, right?
3      A.   That's correct.
4      Q.   Was that a result of some specific incident?
5      A.   It was just -- I wanted him to respect my
6  choices as a mother because I think he was trying to
7  get me back, but his behaviors weren't really
8  acceptable. I didn't want my daughter to grow up
9  around that, which is why I told him to get his life
10  together for us to be able to co-parent for his
11  daughter. Since he wasn't doing that, I told him I'm
12  not going to communicate with him up until he gets
13  his life together.
14      Q.   All right. And after September of 2011, did
15  he ever get his life together such that you could
16  co-parent?
17      A.   He didn't get the chance to do that, no.
18      Q.   Well, I understand that he passed away on
19  January the 9th, 2017; but between September of 2011
20  and January of 2017, did he act as a parent at all to
21  ██████?
22      A.   In terms of acting as a parent, what do you
23  mean by that?
24      Q.   Between September of 2011 and Hector's
25  death, did he ever see ██████?

Page 14

1       A.   He did not.

2       Q.   Okay. Between September of 2011 and

3   Hector's death, did he ever have any phone calls with

4   ██████?

5       A.   He did not have phone calls, but there are

6   text -- he tried texting; but that was the extent of

7   that, just text messaging.

8       Q.   Were they text messages to the daughter or

9   to you?

10      A.   Both of us just checking up on us.

11      Q.   During that time, your daughter would have

12  been, you know, three or four or five years old,

13  right?

14      A.   Yeah, correct.

15      Q.   So he would text you and you would relay

16  messages to the daughter?

17      A.   Yes; just to say hello or to wish her a

18  happy birthday.

19      Q.   But you interpreted that more that he was

20  trying to get back with you; is that right?

21      A.   Oh, not those messages. He had messages

22  where he would.

23      Q.   Between July of 2011 -- excuse me. Strike

24  that.

25           Between September of 2011 and Hector's

Jezreel Custodio                                April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 15

1    death, did he ever provide any financial assistance

2    for ██████?

3         A.   He didn't.

4         Q.   Has Hector ever paid any child support for

5    ██████?

6         A.   He did not.

7         Q.   In her entire life?

8         A.   No.

9         Q.   From September of 2011 through Hector's

10   death, did he ever buy ██████ any gifts?

11        A.   No, he didn't. He  sent a card, a birthday

12   card.

13        Q.   But for birthdays or Christmas, he never

14   provided any presents?

15        A.   He sent one birthday card from what I can

16   remember.

17        Q.   So over that roughly six-year period, the

18   extent of his communication with your daughter has

19   been some text messages to you and one birthday card;

20   is that right?

21        A.   Correct.

22        Q.   Now, you mentioned that, you know, sometime

23   in the summer of 2011 you communicated to Hector that

24   he needed to -- I think your words were get his life

25   together. What did you mean by that?

Jezreel Custodio                                      April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                        Page 16

1        A.    At that time, he was -- I think he was

2    struggling with being a parent, being a new parent.

3    So he wasn't being helpful enough as a dad with

4    ███████ and he was not working at that time either to

5    provide for her.

6        Q.    Okay.

7        A.    And he was drinking a lot.  So when I told

8    him that, I meant for him to stop drinking and to get

9    a job so he can be a good father to her.

10       Q.    Now, in 2011 when he was drinking a lot, was

11   it impacting his ability to find or keep a job?

12       A.    I would say so, yes.

13       Q.    Are we talking about him being, you know,

14   visibly drunk on a daily basis?

15       A.    Pretty much, yes.

16       Q.    Now, in 2011 was Hector also using elicit

17   drugs?

18       A.    From my knowledge, probably smoking

19   marijuana.

20       Q.    Did you know at any time that Hector was a

21   regular user of methamphetamine?

22       A.    To my knowledge, no.

23       Q.    Have you ever seen Hector use

24   methamphetamine?

25       A.    No, I have not.

Page 17

1        Q.    Have you ever seen Hector Arreola use any

2    sort of intravenous drugs?

3        A.    No, I have not.

4        Q.    Have you ever known Hector Arreola to take

5    prescription pain medication?

6        A.    From what I can remember, yes.

7        Q.    And that would have been back in the same

8    time frame of 2011?

9        A.    Not -- I don't think it was during that

10   time, but he had stories that he told me.

11       Q.    Tell me about those stories.

12       A.    I think it was around -- before we started

13   dating. He did dabble with that, I think, is what --

14   from what I can remember. It's been so long --

15       Q.    Yeah.

16       A.    -- that I can't really give you the actual

17   facts of what he said.

18       Q.    So we're not talking about pain pills

19   prescribed by a doctor for a condition; you're

20   talking about taking pain pills recreationally?

21       A.    Yes.

22       Q.    Were there ever any circumstances between

23   you and Hector of domestic violence?

24       A.    Yes.

25       Q.    Can you describe that for me, please?

Page 18

1      A.   It happened one time in June of 2010. We

2  were -- we were drinking, and we were just talking

3  about his life. And I think I might have upset him,

4  which in turn we started yelling at each other; and

5  then I told him that I was just -- because I was

6  visiting him. At that time, I was already living in

7  Hawaii. So I was staying with him in Midland.  And

8  we went outside because I was waiting for my parents,

9  and that's when he pushed me and then he spat on my

10  face. And he was -- that was the extent of that,

11  no -- he just shoved me and he spat on my face, but

12  he -- that was it for that.

13      Q.   Were you pregnant with your daughter at that

14  time?

15      A.   At that time, I wasn't yet. To my

16  knowledge, I didn't know that I -- because I found

17  out I was pregnant in July of 2011 because we broke

18  up after that.

19  Q.   Did you call the police about this incident20

    in 2010?

21      A.   I didn't, but I had my family pick me up.

22      Q.   Did your family call the police?

23      A.   No, we didn't.

24      Q.   Okay. What do you know about times Hector

25  has been arrested in his life?

Jezreel Custodio                                          April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                              Page 19

1        A.    I just know -- since we -- well, from my

2   knowledge when we were dating, he was not -- he was

3   never arrested.  During those four years, he wasn't

4   arrested.  After that sometimes I would Google search

5   him; and from what I can remember, there were once or

6   twice that he was arrested.

7        Q.    Do you recall what it was for?

8        A.    I do not remember.

9        Q.    Now, after you-all broke up in 2011, did you

10  really keep track of him very much?

11       A.    Did I keep track of him?

12       Q.    Yeah.

13             How regularly did you communicate with him?

14       A.    I didn't communicate with him much. I think

15  I called him one time from September of 2011 up until

16  his death to tell him to leave me alone and stop

17  calling me. Like, I think that was around February

18  or March of 2012.

19       Q.    And why did you feel the need to tell him to

20  leave you alone?

21       A.    Because I felt harassed because sometimes

22  the extent of the text messages that were sent to me

23  aren't very nice, like nice words I would say and I

24  just didn't want that type of negativity to be

25  around. And I didn't want to block him because I

Case 4:19-cv-00005-CDL   Document 69   Filed 03/15/21   Page 22 of 47
Jezreel Custodio                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 20

1    guess I was waiting for him to -- if he was going to

2    take me to court eventually one day to try to get

3    custody of my daughter, then I would have a case

4    against him.

5         Q.   Okay. Is it fair to say after September of

6    2011 you didn't want Hector Arreola anywhere near

7    your daughter?

8         A.   Can you repeat that?

9         Q.   I said, is it fair to say after September of

10   2011 you didn't want Hector Arreola anywhere near

11   your daughter?

12        A.   No. I wanted him to be in her life, but I

13   wanted him to be better.

14        Q.   And unless he stopped his addiction to

15   alcohol and drugs, you weren't going to allow him to

16   see your daughter, were you?

17        A.   No, I was not going to allow that.

18        Q.   Were you aware in 2017 that Hector Arreola

19   and a new girlfriend were using intravenous drugs?

20        A.   No.

21        Q.   Do you know what the cause of death was on

22   Hector Arreola's autopsy report?

23        A.   Do I know the cause of death in his autopsy

24   report? Is that your question?

25        Q.   Yes.

Jezreel Custodio                                     April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                      Page 21

1       A.   Yes, I did because I obtained a copy of his

2  death certificate because I wanted to get a passport

3  for my daughter.

4       Q.   And so on the death certificate, you knew

5  that the cause of death had been determined to be

6  methamphetamine toxicity; is that right?

7       A.   According to the death certificate, yes.

8       Q.   Do you have any reason to believe that's not

9  true?

10      A.   Based on what I have read, I have reasons

11 believe that it is not the cause of death, no.

12      Q.   Well, let me ask you about that. In terms

13 of what happened on January 9, 2017, obviously you

14 weren't there, right?

15      A.   Correct.

16      Q.   So you don't have any firsthand knowledge of

17 anything that happened that day; is that right?

18      A.   That's right.

19      Q.   So any knowledge that you have about what

20 happened or didn't happen is all based on other

21 people, what they've said or what you've read; is

22 that right?

23      A.   That's correct.

24      Q.   And so you don't know the basis of anything

25 that you heard, whether that's true or not; is that

Jezreel Custodio                          April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                    Page 22

1    right?

2         A.    That's right.

3         Q.    But in terms of the autopsy report completed

4    by a physician, who is the coroner of Muscogee

5    County, Georgia, and who says he died of

6    methamphetamine toxicity, you don't have any way to

7    dispute that, do you?

8         A.    No; because I'm not a medical doctor, so I

9    couldn't say that.

10        Q.    Other than the domestic violence situation

11   you talked to me about a few minutes ago, during your

12   time with Hector, did you ever see him have any other

13   violent outbursts?

14        A.    Well, he did -- not physical, no.

15        Q.    Did he have a bad temper?

16        A.    He -- only when he's drinking, but when he's

17   not drinking -- but I --

18        Q.    When he's drinking, he has a bad tamper? Is

19   that what you're trying to say?

20        A.    Correct.

21        Q.    Did you ever see him hit anybody?

22        A.    No.

23        Q.    Okay. Have you ever seen him push anybody

24   other than you that time?

25        A.    No.

Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 23

1        Q.   On the day of January 9, 2017, did Hector
2    call you or reach out to you at all that day?
3        A.   No. The last time that I heard from him
4    was -- I think he sent a text on New Year's Eve or
5    New Year's Day.
6        Q.   And the subject of that text was Happy New
7    Year?
8        A.   Yes, correct.
9        Q.   Now, the alcohol and drug problems you have
10   talked to me about, do you know if Hector's parents
11   knew about those problems?
12       A.   With the alcohol, yes; but with drugs, to my
13   knowledge, no.
14       Q.   Why do you think his parents would have had
15   knowledge of the alcohol?
16       A.   When he was living with them, he would be
17   intoxicated, so...
18       Q.   Are you aware of any physical confrontation
19   that ever took place between Hector and his parents?
20       A.   To my knowledge -- from what I can remember,
21   no.
22       Q.   Now, you understand that this lawsuit that's
23   been filed, you were named as a party bringing the
24   case on behalf of your daughter. Did you know that?
25       A.   Yes.

Jezreel Custodio                                     April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                          Page 24

 1      Q.   When did you first think about filing a

 2   lawsuit over the death of Hector?

 3      A.   You're asking when did I think about --

 4      Q.   Yes.

 5      A.   -- a lawsuit?

 6           When -- well, I felt like since -- I was

 7   waiting for his family or for his parents to do that.

 8   So whatever their position was, that's what I would

 9   have done because there's no specific time frame that

10   I can remember that I thought, okay, I'm going to do

11   that.

12      Q.   Okay. Did Mr. Arreola reach out to you and

13   say we need you to put your name on a lawsuit that

14   we're going to file?

15      A.   From what I can remember -- because at that

16   time it was after his death, so it was -- it's really

17   blurry looking back thinking about it, but I think

18   it's --  it's one of his parents. Most likely Rodrigo

19   did.

20      Q.   Okay.

21      A.   So yes.

22      Q.   Do you think he reached out to you and said

23   we're filing a lawsuit and we need you to be a part

24   of it because of the child?

25      A.   No, he didn't state it that way.

Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 25

1       Q.    Okay. Can you tell me how he did state it?

2       A.    I think we all wanted collectively as

3   family, his family and my family, to get justice for

4   Hector because I felt -- we all felt like it was too

5   early. He was only 30 years old when he passed away

6   and he didn't get the chance to, I guess, be a better

7   man for his daughter and for his family.  So I think

8   we all wanted that, like justice for him being taken

9   away too soon.

10      Q.    At the time of his death -- you had given

11  Hector an ultimatum six years earlier to be a better

12  man; is that right?

13      A.    Yes.

14      Q.    And he had not done anything in that

15  six-year period to do so, had he?

16      A.    He didn't, and now I guess we'll never know

17  if he would have.

18      Q.    Ms. Custodio, did you know that when the

19  officers confronted Hector on the night of January 9,

20  2017, they pleaded with him for over ten minutes to

21  try to get him help before they attempted to arrest

22  him?

23      A.    You asked me if I knew that?

24      Q.    Yeah. Did you know that?

25      A.    Well, according to what I've read, yes.

Case 4:19-cv-00005-CDL   Document 69   Filed 03/15/21   Page 28 of 47
Jezreel Custodio                          April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 26

1      Q.   Is there any agreement amongst you and

2   Mr. Arreola as to how any money you might receive

3   from this lawsuit would be split?

4           MR. POST: Objection.

5           Don't answer that. That's privileged.

6           MR. SNIPES: I didn't ask if there was an

7       agreement with you. I asked if there was an

8       agreement between the two of them.

9           MR. POST: It's privileged.  Those

10      conversations are privileged. Any agreements we

11      entered into are privileged. They're all my

12      clients.

13          MR. SNIPES: So you're taking the position

14      that your plea agreement is privileged and their

15      split of money that they're going to ask for from

16      the jury is privileged? Because it's not.

17          MR. POST: Well, I think it's established by

18      law and it's a legal question as to who is

19      entitled to what, and frankly I think it is.

20          MR. SNIPES: Well, are you instructing her

21      not to answer the question, Mark? Let's just cut

22      to it.

23          MR. POST: I don't think we really have

24      anything to hide, so I'm going to object as to

25      privilege; but I'll allow her to go ahead and

Page 27

```
 1        answer that question.
 2               MR. SNIPES: All right.
 3   BY MR. SNIPES:
 4        Q.   Is there any agreement between you and
 5   Mr. Arreola as to how you would split any proceeds
 6   that you might receive from this lawsuit?
 7        A.   No, there isn't.
 8        Q.   Now, in approximately February of 2012, did
 9   you attempt to have ███████ name changed?
10        A.   I thought about it.
11        Q.   Did you file a petition in Gwinnett County
12   State Court for a name change to remove Mr. Arreola's
13   name from --
14        A.   I did.
15        Q.   -- her name?
16        A.   Yes, I did.
17        Q.   You did?
18        A.   Yes.
19        Q.   Why did you do that?
20        A.   At that time -- I can't really say. I don't
21   remember what my -- because that was a difficult time
22   in my life at that time being a new parent, a single
23   parent, I guess, kind of realizing it's just going to
24   with me and ███████, which is why I wanted to change
25   her last name to mine.
```

Jezreel Custodio                                        April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 28

1        Q.   So less than a year after █████ was born,
2    you made a decision and filed an action to change
3    ████████████████████████████████████████████████
█    ████████████████; is that right?
5        A.   That's right.
6        Q.   And that's consistent with your earlier
7    testimony that you didn't want Hector to have
8    anything to do with ██████; is that right?
9        A.   Can you repeat that question?
10       Q.   That's consistent with your earlier
11   testimony that you didn't want Hector to have
12   anything to do with ██████?
13       A.   At that time, yes.
14       Q.   You didn't even want your daughter to have
15   his name; is that right?
16       A.   No. Well, that's right.  I didn't because I
17   was raising her by myself.
18       Q.   Can we do this, Ms. Custodio? I want to
19   take about a five-minute break. I'm almost done, I
20   think. Can we -- it's 1:51 my time, I guess 7:51
21   your time. Can we take a nine-minute break, I guess,
22   and reconvene at 8 o'clock your time, 2 o'clock my
23   time?
24       A.   Okay.
25            (A recess was taken.)

Case 4:19-cv-00005-CDL   Document 69   Filed 03/15/21   Page 31 of 47
Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 29

1   BY MR. SNIPES:

2       Q.   All right, Ms. Custodio. I've got a couple

3   more questions for you and then we're going to be

4   finished.

5            You mentioned earlier that Hector had sent

6   you text messages through the years; is that right?

7       A.   That's right.

8       Q.   And you said you kept those text messages in

9   case there was ever some custody fight that you would

10  need them for?

11      A.   Correct.

12      Q.   You still have those, I assume; is that

13  right?

14      A.   Yes, I do.

15      Q.   So under contacts -- do you have an iPhone?

16      A.   Yes. Well, I've changed phones throughout

17  the years, so I still have the iPhones, the older

18  phones, throughout the years.  So I have the text

19  messages, yes. I do have an iPhone right now.

20      Q.   Right.

21           Okay. So under your contacts, how is Hector

22  listed in your contacts? Just as Hector?

23      A.   Just Hector, yeah, correct.

24      Q.   All right. So if you went through your

25  current phone or any previous phones you had, you

Jezreel Custodio                                      April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 30

1    could pull those texts together and provide them to

2    us?

3         A.   Yes.

4         Q.   Will you do that for us?

5         A.   Yes, I can do it. I do not have -- the

6    other phone from before, it's at my parents' house,

7    so I cannot get access to that at the moment; but

8    whatever I do have on my phone currently I can get

9    access to that and send it.

10        Q.   How many texts do you think it is?

11        A.   I can look right now and see.

12        Q.   If you don't -- if you don't mind,

13   Ms. Custodio, could you hold your phone up to the

14   camera just so we can see how the texts look?

15        A.   Actually, this is my daughter's old phone

16   because my phone got wet at the beach and stopped

17   working. So currently I'm using her old iPhone that

18   she has that has some text messages. This is one of

19   them. These are some of the text messages.

20        Q.   Okay. Can you just take a screen shot of

21   those and send them to Mr. Post?

22        A.   Yes, I can do that.

23        Q.   Okay. Now, do you also communicate via text

24   with Rodrigo Arreola?

25        A.   Yes; but not -- I don't have it on this

Jezreel Custodio                                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 31

1   phone, but I think I might have it on my laptop

2   because I have a MacBook. I can try and see if I can

3   take screen shots of those that are on my laptop.

4   Right now I don't have access to my other phone.

5          Q.   If you don't mind pulling those together and

6   also getting them to Mr. Post. Now, if Mr. Post is

7   involved in the conversation also, it's a different

8   issue that he'll instruct you about; but if the

9   conversation is just between you and Mr. Arreola,

10  those would be the conversations  I  would  be

11  interested in.

12         A.   Okay.

13         Q.   That's all the questions I have,

14  Ms. Custodio. Thank you.

15         A.   Thank you so much.

16             MR. POST: Thank you.

17              THE COURT REPORTER: Did y'all want to order

18        the transcripts for both depos?

19             MR. SNIPES: Yeah, I do want a copy of them,

20        please.

21              THE COURT REPORTER: What format would you

22        like, PDF or Etran?

23             MR. SNIPES: PDF.

24              THE COURT REPORTER: Mr. Post, did you need

25        a copy?

Page 32

1            MR. POST: Let me get back to you on that.

2            THE COURT REPORTER: Thank you.

3            (It was stipulated and agreed by

4      and between counsel for the respective

5      parties and the witness that the

6      reading and signing of the deposition

7      by the witness be waived.)

8            (Proceedings concluded at 2:06 p.m.)

9                         *      *      *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jezreel Custodio                                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 33

1                    VERITEXT LEGAL SOLUTIONS
2                 FIRM CERTIFICATE AND DISCLOSURE
3

4    Veritext represents that the foregoing transcript as
5    produced by our Production Coordinators, Georgia
6    Certified Notaries, is a true, correct and complete
7    transcript of the colloquies, questions and answers
8    as submitted by the certified court reporter in this
9    case.  Veritext further represents that the attached
10   exhibits, if any, are a true, correct and complete
11   copy as submitted by the certified reporter,
12   attorneys or witness in this case; and that the
13   exhibits were handled and produced exclusively
14   through our Production Coordinators, Georgia
15   Certified Notaries. Copies of notarized production
16   certificates related to this proceeding are available
17   upon request to litsup-ga@veritext.com.
18

19   Veritext is not taking this deposition under any
20   relationship that is prohibited by OCGA
21   15-14-37(a)and(b). Case-specific discounts are
22   automatically applied to all parties, at such time as
23   any party receives a discount. Ancillary services
24   such as calendar and financial reports are available
25   to all parties upon request.

Jezreel Custodio                                    April 23, 2020
Areola, Rodrigo v. Consolidated Government of Columbus Georgia et al

Page 34

1                          **CERTIFICATE**

2    **STATE OF GEORGIA:**

3    COUNTY OF GWINNETT:

4              I hereby certify that the foregoing
     transcript was taken down, as stated in the caption,

5    and the colloquies, questions and answers were
     reduced to typewriting under my direction; that the

6    transcript is a true and correct record of the
     evidence given upon said proceeding.

7              I further certify that I am not a
     relative or employee or attorney of any party, nor am

8    I financially interested in the outcome of this
     action.

9              I have no relationship of interest in
     this matter which would disqualify me from

10   maintaining my obligation of impartiality in
     compliance with the Code of Professional Ethics.

11             I have no direct contract with any
     party in this action and my compensation is based

12   solely on the terms of my subcontractor agreement.
               Nothing in the arrangements made for

13   this proceeding impacts my absolute commitment to
     serve all parties as an impartial officer of the

14   court.
               This the 4th day of **May**, 2020.

15

16

17

18

19

              LAURA R. SINGLE, CCR-B-1343

20

21

22

23

24

25

Jezreel Custodio
April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**[& - benning]**
Page 1

| **&** |
| --- |
| **&**   2:16 |

| **0** |
| --- |
| **00005**   1:9 |

| **1** |
| --- |
| **10**   4:2 |
| **1072**   5:22 |
| **1111**   2:17 |
| **12314**   34:18 |
| **1343**   1:25 34:19 |
| **15**   8:10 |
| **15-14-37**   33:21 |
| **16**   8:10 |
| **19**   9:4 12:18 |
| **1:14**   1:22 |
| **1:51**   28:20 |

| **2** |
| --- |
| **2**   28:22 |
| **2004**   7:23 |
| **2005**   7:15 |
| **2007**   8:16,19,19 |
| 10:21 11:23 |
| **2010**   9:2 18:1,20 |
| **2011**   8:21 9:4 |

| **2:06**   32:8 |
| --- |

| **3** |
| --- |
| **3**   2:5 |
| **30**   7:7 25:5 |
| **31901**   2:18 |
| **31904**   2:6 |
| **320**   5:21 |
| **324-0251**   2:18 |

| **4** |
| --- |
| **4**   3:4 |
| **4:19**   1:9 |
| **4th**   34:14 |

| **7** |
| --- |
| **706**   2:7,18 |

| **8** |
| --- |
| **8**   28:22 |

| **9** |
| --- |
| **9**   9:16 10:9,12 |
| 21:13 23:1 25:19 |
| **96815**   5:22 |
| **9th**   13:19 |

| **a** |
| --- |
| **aaron**   1:14 9:20 |

**afternoon**   4:13
**ago**   7:21 22:11
**agreed**   32:3
**agreement**   26:1,7
26:8,14 27:4
34:12
**agreements**   26:10
**ags**   2:19
**aguilar**   1:11 9:19
9:22
**ahead**   26:25
**alan**   2:15 4:14
**alcohol**   20:15 23:9
23:12,15
**allow**   20:15,17
26:25
**ambulance**   10:8
**ancillary**   33:23
**answer**   5:1,11
26:5,21 27:1
**answers**   33:7 34:5
**anybody**   6:7 10:3
22:21,23
**apartment**   5:22
**applied**   33:22
**apply**   11:3

**arrest**   9:15 10:4
25:21
**arrested**   18:25
19:3,4,6
**article**   4:2
**asked**   25:23 26:7
**asking**   6:19,20,22
24:3
**assistance**   15:1
**assume**   29:12
**attached**   33:9
**attempt**   27:9
**attempted**   25:21
**attorney**   34:7
**attorneys**   33:12
**audibly**   5:1
**august**   5:24
**automatically**
33:22
**autopsy**   20:22,23
22:3
**available**   33:16,24
**avenue**   2:17 5:22
**aware**   20:18 23:18

| **b** |
| --- |

Jezreel Custodio                                            April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

| | | | |
|---|---|---|---|
| 12:16,19,22 13:1<br>13:14,19,24 14:2<br>14:23,25 15:9,23<br>16:10,16 17:8<br>18:17 19:9,15<br>20:6,10<br>**2012**  12:12 19:18<br>27:8<br>**2017**  9:16 10:9,12<br>13:19,20 20:18<br>21:13 23:1 25:20<br>**2019**  5:24<br>**2020**  1:21 34:14<br>**221-9371**  2:7<br>**23**  1:21 | 10:1<br>**ability**  16:11<br>**able**  13:10<br>**absolute**  34:13<br>**acceptable**  13:8<br>**access**  30:7,9 31:4<br>**accurate**  5:10<br>**act**  13:20<br>**acting**  13:22<br>**action**  28:2 34:8<br>  34:11<br>**actual**  17:16<br>**addiction**  20:14<br>**administrator** 1:4<br>**affiliated**  10:3 | **approximately**<br>  12:21 27:8<br>**april**  1:21<br>**area**  8:6 12:9<br>**arizona**  12:6,8<br>**arrangements**<br>  34:12<br>**arreola**  1:3,3,5,5,6<br>  1:7 4:16 9:8 10:9<br>  17:1,4 20:6,10,18<br>  24:12 26:2 27:5<br>  28:3 30:24 31:9<br>**arreola's**  10:12<br>  20:22 27:12 | **b**  1:25 4:2 33:21<br>  34:19<br>**back**  6:3 9:1 12:9<br>  13:7 14:20 17:7<br>  24:17 32:1<br>**bad**  22:15,18<br>**based**  21:10,20<br>  34:11<br>**basis**  16:14 21:24<br>**bay**  2:17<br>**beach**  30:16<br>**behalf**  23:24<br>**behaviors**  13:7<br>**believe**  21:8,11<br>**benning**  11:15 |

Jezreel Custodio                                                 April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**better** 20:13 25:6 25:11
**big** 6:12
**birth** 9:3,9
**birthday** 14:18 15:11,15,19
**birthdays** 15:13
**bit** 12:6
**block** 19:25
**blurry** 24:17
**board** 4:3
**boren** 1:16
**born** 12:18 28:1
**boyfriend** 6:1,11 7:12
**bradley** 2:5
**break** 28:19,21
**brian** 1:12 9:19,24
**bringing** 23:23
**broke** 8:25 12:13 12:21,23 18:17 19:9
**brought** 5:25 9:15
**business** 11:16
**buy** 15:10

**c**

**c** 2:1,4,15 4:1
**calendar** 33:24
**call** 18:19,22 23:2
**called** 19:15
**calling** 19:17
**calls** 14:3,5
**camera** 30:14
**capacity** 1:12,13 1:14,16
**caption** 34:4
**card** 15:11,12,15 15:19
**care** 10:8
**case** 1:9 20:3 23:24 29:9 33:9

33:12,21
**cashier** 11:20
**cause** 20:21,23 21:5,11
**ccr** 1:25 34:19
**certificate** 9:9 21:2,4,7 33:2 34:1
**certificates** 33:16
**certified** 33:6,8,11 33:15
**certify** 34:4,7
**chance** 13:17 25:6
**change** 27:12,24 28:2
**changed** 27:9 29:16
**checking** 14:10
**chief** 1:15
**child** 1:6 15:4 24:24
**choices** 13:6
**christmas** 15:13
**circumstances** 17:22
**clark** 2:15
**classmates** 7:17
**cleaning** 11:21
**clients** 26:12
**coast** 6:2
**code** 34:10
**collectively** 25:2
**college** 11:3,4
**colloquies** 33:7 34:5
**columbus** 1:2,11 1:15 2:6,18 7:19 7:22 8:3,5 9:18 10:4 11:3 12:9
**commitment** 34:13

**communicate** 13:12 19:13,14 30:23
**communicated** 15:23
**communicating** 12:24 13:2
**communication** 12:15 15:18
**compensation** 34:11
**complete** 33:6,10
**completed** 22:3
**compliance** 34:10
**concepcion** 1:5
**concluded** 32:8
**condition** 10:12 17:19
**confirmed** 9:11
**confrontation** 23:18
**confronted** 25:19
**consistent** 28:6,10
**consolidated** 1:10 9:19 10:4
**contacts** 29:15,21 29:22
**context** 7:16
**contract** 34:11
**conversation** 31:7 31:9
**conversations** 26:10 31:10
**coordinators** 33:5 33:14
**copies** 33:15
**copy** 21:1 31:19 31:25 33:11
**coroner** 22:4
**correct** 5:15,16 7:10 8:5,23 9:6,17

10:20 12:20 13:3 14:14 15:21 21:15 21:23 22:20 23:8 29:11,23 33:6,10 34:6
**counsel** 4:5 32:4
**county** 22:5 27:11 34:3
**couple** 29:2
**course** 12:13
**court** 1:1 2:5 4:3,5 4:23 20:2 27:12 31:17,21,24 32:2 33:8 34:14
**current** 7:11 29:25
**currently** 30:8,17
**custodio** 1:7,19 3:3 4:8 5:19,20 9:14 25:18 28:4 28:18 29:2 30:13 31:14
**custody** 20:3 29:9
**cut** 26:21
**cv** 1:9

**d**

**d** 3:1 4:1
**d.c.** 6:6 8:6
**dabble** 17:13
**dad** 16:3
**daily** 16:14
**date** 8:20 9:3
**dating** 8:18 10:18 11:22 12:1,3 17:13 19:2
**daughter** 9:2 12:18 13:8,11 14:8,11,16 15:18 18:13 20:3,7,11,16 21:3 23:24 25:7 28:14

Jezreel Custodio                                                     April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**[daughter's - good]**                                                 Page 3

| | | | |
|---|---|---|---|
| **daughter's** 9:3 30:15 | **drill** 6:21 | **excuse** 14:23 | **foregoing** 33:4 34:4 |
| **day** 20:2 21:17 23:1,2,5 34:14 | **drinking** 16:7,8,10 18:2 22:16,17,18 | **exhibits** 3:11 33:10,13 | **form** 5:14 |
| **deal** 6:13 | **drivers** 10:8 | **extent** 14:6 15:18 18:10 19:22 | **format** 31:21 |
| **death** 4:16 13:25 14:3 15:1,10 19:16 20:21,23 21:2,4,5,7,11 24:2 24:16 25:10 | **drop** 11:8 | | **fort** 11:15 |
| | **dropped** 10:22 11:5,10,12 | **f** | **found** 18:16 |
| | **drug** 23:9 | **f** 2:6 | **four** 8:22,23 14:12 19:3 |
| | **drugs** 16:17 17:2 20:15,19 23:12 | **face** 18:10,11 | **frame** 17:8 24:9 |
| **deceased** 1:3 | **drunk** 16:14 | **fact** 12:1 | **frankly** 26:19 |
| **decision** 28:2 | **dudley** 1:13 9:20 9:24 | **facts** 17:17 | **friend** 1:7 |
| **defendants** 1:17 2:14 4:15 | **duly** 4:9 | **fair** 5:4 20:5,9 | **friends** 7:17 |
| **department** 1:15 | | **family** 11:16 18:21 18:22 24:7 25:3,3 25:3,7 | **full** 5:18 9:7,8 |
| **depos** 31:18 | **e** | | **further** 33:9 34:7 |
| **deposition** 1:19 4:17 6:8 32:6 33:19 | **e** 2:1,1 3:1 4:1,1 | **father** 9:11 16:9 | **g** |
| **describe** 17:25 | **earlier** 25:11 28:6 28:10 29:5 | **february** 19:17 27:8 | **g** 2:15 4:1 |
| **determined** 21:5 | **early** 25:5 | **feel** 19:19 | **ga** 33:17 |
| **died** 22:5 | **either** 16:4 | **felt** 19:21 24:6 25:4,4 | **ged** 10:23,25 11:4 11:11 |
| **different** 31:7 | **elicit** 16:16 | **fight** 29:9 | **generally** 6:20 |
| **difficult** 27:21 | **employee** 34:7 | **file** 24:14 27:11 | **georgia** 1:1,11 2:6 2:18 4:3,24 7:5 22:5 33:5,14 34:2 |
| **direct** 34:11 | **engaged** 10:16 | **filed** 4:15 23:23 28:2 | |
| **direction** 34:5 | **entered** 26:11 | **filing** 24:1,23 | **getting** 5:3 31:6 |
| **directly** 7:8 | **entire** 8:24 15:7 | **financial** 15:1 33:24 | **gifts** 15:10 |
| **disclosure** 4:4 33:2 | **entitled** 26:19 | **financially** 34:8 | **girlfriend** 20:19 |
| **discount** 33:23 | **esq** 2:4,15,15 | **find** 16:11 | **give** 6:15 8:22 17:16 |
| **discounts** 33:21 | **established** 26:17 | **finished** 29:4 | **given** 4:17 25:10 34:6 |
| **dispute** 22:7 | **estate** 1:5 | **firm** 33:2 | **giving** 6:8 |
| **disqualify** 34:9 | **ethics** 34:10 | **first** 4:9,18 6:23 7:14 8:8 11:22 12:3 24:1 | **go** 7:18 12:12 26:25 |
| **district** 1:1,1 | **etran** 31:22 | | **going** 4:19,22 6:6 6:21 13:12 20:1 20:15,17 24:10,14 26:15,24 27:23 29:3 |
| **division** 1:2 | **eve** 23:4 | **firsthand** 21:16 | |
| **divorced** 12:11 | **eventually** 20:2 | **fit** 6:21 | |
| **doctor** 17:19 22:8 | **evidence** 34:6 | **five** 14:12 28:19 | |
| **doctors** 10:11 | **evrard** 1:14 9:20 10:1 | **floor** 2:17 | **good** 4:13,13,19 16:9 |
| **doing** 11:17 13:11 | **examination** 3:3 4:11 | **follows** 4:10 | |
| **domestic** 17:23 22:10 | **examined** 4:10 | **ford** 2:16 | |
| | **exclusively** 33:13 | | |

Jezreel Custodio                                                       April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

█████████████                                                         Page 4

google   19:4
government   1:10
  9:19 10:4
graduate   8:11
graduated   10:19
grandma   12:7
greatly   5:2
grow   7:22 13:8
guard   6:2
guess   4:13 20:1
  25:6,16 27:23
  28:20,21
gwinnett   27:11
  34:3

**h**

handled   33:13
happen   21:20
happened   18:1
  21:13,17,20
happy   5:8 14:18
  23:6
harassed   19:21
hardaway   7:18
hawaii   5:22 18:7
he'll   31:8
heard   21:25 23:3
hector   1:3,5,6,7
  4:16 6:21 7:14,15
  7:16,19 8:9,17,20
  9:15 10:5,8,14,18
  10:22 11:5,12,22
  12:21 15:4,23
  16:16,20,23 17:1,4
  17:23 18:24 20:6
  20:10,18,22 22:12
  23:1,19 24:2 25:4
  25:11,19 28:7,11
  29:5,21,22,23
hector's   9:9 13:24
  14:3,25 15:9
  23:10

hello   14:17
help   5:2 25:21
helped   11:3
helpful   16:3
helping   11:19,20
hide   26:24
high   7:18,19 8:11
  10:19,22 11:6,8,9
  11:10,12
history   6:15
hit   22:21
hold   30:13
home   6:17,23 7:9
honolulu   5:22,23
  5:25 7:9
house   30:6

**i**

imee   1:7,19 3:3
  4:8 5:19
impacting   16:11
impacts   34:13
impartial   34:13
impartiality   34:10
incident   13:4
  18:19
individual   1:12,13
  1:14,16
instruct   31:8
instructing   26:20
intended   5:10
interest   34:9
interested   31:11
  34:8
interpreted   14:19
intoxicated   23:17
intravenous   17:2
  20:19
involved   31:7
iphone   29:15,19
  30:17

iphones   29:17
issue   31:8

**j**

james   2:15
january   9:16 10:9
  10:12 13:19,20
  21:13 23:1 25:19
jcc   2:19
jezreel   1:7,19 3:3
  4:8 5:19 7:6
job   11:17 16:9,11
jobs   11:13
jordan   7:19
jr   2:15
july   8:21 12:23
  14:23 18:17
june   18:1
jury   26:16
justice   25:3,8

**k**

keep   16:11 19:10
  19:11
kept   12:23 29:8
kicked   11:9
kind   12:24 27:23
knew   21:4 23:11
  25:23
know   5:7 10:25
  11:5,7 14:12
  15:22 16:13,20
  18:16,24 19:1
  20:21,23 21:24
  23:10,24 25:16,18
  25:24
knowledge   10:23
  11:10,19 16:18,22
  18:16 19:2 21:16
  21:19 23:13,15,20
known   17:4

**l**

laptop   31:1,3
laura   1:25 34:19
law   2:5 26:18
lawsuit   4:15 9:15
  10:5 23:22 24:2,5
  24:13,23 26:3
  27:6
leave   19:16,20
legal   26:18 33:1
life   13:9,13,15
  15:7,24 18:3,25
  20:12 27:22
███████████   5:21
listed   29:22
litsup   33:17
little   8:22 12:6
live   5:20,21 11:23
  12:6,12
lived   5:23 6:16
  11:24 12:8
living   6:24 7:1,3
  18:6 23:16
llc   2:5
long   5:23 7:11
  8:20 17:14
look   30:11,14
looking   24:17
lot   16:7,10
loud   5:2

**m**

macbook   31:2
main   5:8
mainland   6:4
maintaining   34:10
man   25:7,12
march   8:19 9:4
  12:18 19:18
█████████████

Jezreel Custodio                                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 5

marijuana  16:19
mark  2:4,5 26:21
marked 3:11
markpostlaw.com
  2:7
married 10:14
matter  34:9
mean  13:23 15:25
meant  11:4 16:8
medical 22:8
medication 17:5
meet  7:14
meeting 7:16
mentioned 15:22
  29:5
 messages 14:8,16
  14:21,21 15:19
  19:22 29:6,8,19
  30:18,19
messaging 14:7
met  7:15 8:8
methamphetamine
  16:21,24 21:6
  22:6
michael 1:11 9:19
  9:21
middle 1:1
midland 11:24
  18:7
military  7:25
mind  30:12 31:5
mine  27:25
minor  1:6
minute 28:19,21
minutes 22:11
  25:20
mom 11:16,18
moment 30:7
money  26:2,15

months  12:24
morning  4:13
mother  13:6
move  6:3,6 11:25
moved  6:16,18,22
  6:25,25 7:8,23 8:3
  8:5,6 12:5,6
mpost  2:7
muscogee 22:4

**n**

n  2:1 3:1 4:1
name  5:18 9:7,8,9
  24:13 27:9,12,13
  27:15,25 28:3,15
named 23:23
near  20:6,10
need  19:19 24:13
  24:23 29:10 31:24
needed  15:24
negativity  19:24
never  15:13 19:3
  25:16
new  16:2 20:19
  23:4,5,6 27:22
news  4:19
nice  19:23,23
night  25:19
nine  9:5 28:21
notaries  33:6,15
notarized  33:15
nurses  8:1,2

**o**

o  4:1
o'clock  28:22,22
object  26:24
objection  26:4
objections  5:13
obligation  34:10
obtained  21:1

obviously  21:13
ocga  33:20
officer  1:11,12,13
  6:2 9:21 34:13
officers  25:19
official  1:12,13,14
  1:16
oh  14:21
okay  4:21 5:11,12
  6:10 7:3 9:3 11:5
  11:25 14:2 16:6
  18:24 20:5 22:23
  24:10,12,20 25:1
  28:24 29:21 30:20
  30:23 31:12
old  7:6,7 8:8 9:5
  14:12 25:5 30:15
  30:17
older  29:17
once  19:5
order  31:17
outbursts  22:13
outcome 34:8
outside  18:8

**p**

p  2:1,1 4:1
p.c.  2:16
p.m.  1:22 32:8
page  2:16 3:3
paid  15:4
pain  17:5,18,20
paramedics 10:7
parent  1:3,6 13:10
  13:16,20,22 16:2,2
  27:22,23
parents  6:17,18,23
  7:1,4,8,25 11:24
  12:11 18:8 23:10
  23:14,19 24:7,18
  30:6

park  2:5
part  24:23
parties  32:5 33:22
  33:25 34:13
party  23:23 33:23
  34:7,11
passed  13:18 25:5
passport  21:2
patricia's  12:5
pdf  31:22,23
people  21:21
period  15:17
  25:15
personal  1:4
petition  27:11
philippines  7:24
phone  14:3,5
  29:25 30:6,8,13,15
  30:16 31:1,4
phones  29:16,18
  29:25
physical  22:14
  23:18
physician  22:4
pick  18:21
pills  17:18,20
place  23:19
plaintiffs  1:8 2:3
plans  6:3
plea  26:14
pleaded  25:20
please  5:7,18
  17:25 31:20
point  8:4
police  1:15,15
  18:19,22
position  24:8
  26:13
post  2:4,5 5:13
  26:4,9,17,23 30:21
  31:6,6,16,24 32:1

Jezreel Custodio                                    April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

[pregnant - snipes]                                              Page 6

| | | | |
|---|---|---|---|
| **pregnant** 9:1 | **questions** 4:23 5:7 | 27:21 | **s** |
| 18:13,17 | 29:3 31:13 33:7 | **remote** 1:20 2:4,16 | |
| **prescribed** 17:19 | 34:5 | **remotely** 4:24 | **s** 2:1 4:1 |
| **prescription** 17:5 | **r** | **remove** 27:12 | **s.a.** 1:6 |
| **present** 4:6 | | **repeat** 20:8 28:9 | **says** 22:5 |
| **presents** 15:14 | **r** 1:25 2:1 4:1 | **rephrase** 5:8 | **school** 7:18,19,20 |
| **pretty** 4:20 16:15 | 34:19 | **report** 20:22,24 | 8:11 10:19,22 |
| **previous** 29:25 | **raising** 28:17 | 22:3 | 11:6,8,9,11,13 |
| **privilege** 5:15 | **reach** 23:2 24:12 | **reporter** 4:5,24 | **scrantom** 2:16 |
| 26:25 | **reached** 24:22 | 31:17,21,24 32:2 | **screen** 30:20 31:3 |
| **privileged** 26:5,9 | **read** 21:10,21 | 33:8,11 | **search** 19:4 |
| 26:10,11,14,16 | 25:25 | **reporting** 4:4 | **see** 6:12 13:25 |
| **probably** 11:20 | **reading** 32:6 | **reports** 33:24 | 20:16 22:12,21 |
| 16:18 | **realizing** 27:23 | **represent** 4:14 | 30:11,14 31:2 |
| **problems** 23:9,11 | **really** 13:7 17:16 | 9:18 | **seen** 16:23 17:1 |
| **proceeding** 4:6 | 19:10 24:16 26:23 | **representative** 1:4 | 22:23 |
| 33:16 34:6,13 | 27:20 | **represents** 33:4,9 | **send** 30:9,21 |
| **proceedings** 32:8 | **reason** 5:1 21:8 | **request** 33:17,25 | **sent** 15:11,15 |
| **proceeds** 27:5 | **reasons** 21:10 | **reserving** 5:13 | 19:22 23:4 29:5 |
| **process** 4:22 | **recall** 19:7 | **respect** 13:5 | **september** 12:16 |
| **produced** 33:5,13 | **receive** 26:2 27:6 | **respective** 32:4 | 12:22 13:1,14,19 |
| **production** 33:5 | **received** 10:8 | **result** 13:4 | 13:24 14:2,25 |
| 33:14,15 | **receives** 33:23 | **richard** 1:15 | 15:9 19:15 20:5,9 |
| **professional** 34:10 | **recess** 28:25 | **right** 4:19 5:6,21 | **series** 4:23 |
| **prohibited** 33:20 | **reconvene** 28:22 | 6:14 7:9 8:17 9:12 | **serve** 34:13 |
| **provide** 15:1 16:5 | **record** 5:9 34:6 | 9:13,16,18 11:12 | **services** 33:23 |
| 30:1 | **recreationally** | 12:18,19,22 13:2 | **short** 4:20 |
| **provided** 15:14 | 17:20 | 13:14 14:13,20 | **shot** 30:20 |
| **psstf.com** 2:19,19 | **reduced** 34:5 | 15:20 21:6,14,17 | **shots** 31:3 |
| **pull** 30:1 | **regular** 16:21 | 21:18,22 22:1,2 | **shoved** 18:11 |
| **pulling** 31:5 | **regularly** 19:13 | 25:12 27:2 28:4,5 | **signature** 34:18 |
| **pursuant** 4:2 | **regulations** 4:3 | 28:8,15,16 29:2,6 | **signing** 32:6 |
| **push** 22:23 | **related** 4:15 9:15 | 29:7,13,19,20,24 | **single** 1:25 27:22 |
| **pushed** 18:9 | 33:16 | 30:11 31:4 | 34:19 |
| **put** 24:13 | **relationship** 33:20 | **rodrigo** 1:3 24:18 | **sister** 12:5 |
| **puzzle** 6:22 | 34:9 | 30:24 | **situation** 22:10 |
| **px** 11:15 | **relative** 34:7 | **room** 6:7 | **six** 15:17 25:11,15 |
| **q** | **relay** 14:15 | **roughly** 15:17 | **smoking** 16:18 |
| | **remember** 7:20 | **rules** 4:2 | **snellville** 4:24 |
| **question** 5:14 | 11:14,14 15:16 | | **snipes** 2:15 3:4 |
| 20:24 26:18,21 | 17:6,14 19:5,8 | | 4:12,14 5:16,17 |
| 27:1 28:9 | 23:20 24:10,15 | | 26:6,13,20 27:2,3 |

Jezreel Custodio                                                 April 23, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

[snipes - want]                                                        Page 7

29:1 31:19,23
**solely** 34:12
**solutions** 33:1
**soon** 25:9

█████████
███████
██████████
█████
████████████

**sort** 17:2
**spat** 18:9,11
**specific** 13:4 24:9
  33:21
**split** 26:3,15 27:5
**spoken** 12:17
**sprouse** 2:16
**start** 6:23 8:17
**started** 10:18
  11:22 17:12 18:4
**starting** 6:16
**state** 4:9 5:18
  24:25 25:1 27:12
  34:2
**stated** 34:4
**statement** 4:4
**states** 1:1
**stationed** 6:1
**staying** 18:7
**stipulated** 32:3
**stop** 16:8 19:16
**stopped** 13:2
  20:14 30:16
**store** 11:20,21
**stories** 17:10,11
**strike** 14:23
**struggling** 16:2
**subcontractor**
  34:12
**subject** 23:6

**submitted** 4:5
  33:8,11
**suite** 2:6
**summer** 6:5 15:23
**support** 15:4
**suppose** 12:14
**sure** 5:9
**suwanee** 7:5,9 8:3
  8:7
**sworn** 4:9

**t**

**t** 1:15
**take** 8:22 17:4
  20:2 28:19,21
  30:20 31:3
**taken** 1:20 25:8
  28:25 34:4
**talked** 9:21,24
  10:1,3,7,11 22:11
  23:10
**talking** 16:13
  17:18,20 18:2
**tamper** 22:18
**technical** 11:3
**tell** 17:11 19:16,19
  25:1
**temper** 22:15
**ten** 25:20
**terms** 5:2 13:22
  21:12 22:3 34:12
**testified** 4:10
**testimony** 28:7,11
**text** 14:6,7,8,15
  15:19 19:22 23:4
  23:6 29:6,8,18
  30:18,19,23
**texting** 14:6
**texts** 30:1,10,14
**thank** 31:14,15,16
  32:2

**thing** 5:8
**think** 7:20 8:10,21
  11:19 12:4,7 13:6
  15:24 16:1 17:9
  17:12,13 18:3
  19:14,17 23:4,14
  24:1,3,17,22 25:2
  25:7 26:17,19,23
  28:20 30:10 31:1
**thinking** 24:17
**third** 2:17
**thought** 24:10
  27:10
**three** 14:12
**time** 4:18 8:24
  10:19,21 12:3,16
  12:17 14:11 16:1
  16:4,20 17:8,10
  18:1,6,14,15 19:15
  22:12,24 23:3
  24:9,16 25:10
  27:20,21,22 28:13
  28:20,21,22,23
  33:22
**times** 8:25 18:24
**today** 4:23
**told** 11:1,2,15 13:9
  13:11 16:7 17:10
  18:5
**toxicity** 21:6 22:6
**track** 19:10,11
**transcript** 33:4,7
  34:4,6
**transcripts** 31:18
**tried** 14:6
**true** 21:9,25 33:6
  33:10 34:6
**truth** 4:9
**try** 5:8 20:2 25:21
  31:2

**trying** 13:6 14:20
  22:19
**tucker** 2:16
**turn** 18:4
**twice** 19:6
**two** 7:13 12:24
  26:8
**type** 11:13,17
  19:24
**typewriting** 34:5

**u**

**ultimatum** 25:11
**understand** 5:6
  9:14 12:11 13:18
  23:22
**united** 1:1
**upset** 18:3
**use** 16:23 17:1
**user** 16:21

**v**

**veritext** 33:1,4,9
  33:19
**veritext.com.**
  33:17
**videoconference**
  1:20 2:4,16
**violence** 17:23
  22:10
**violent** 22:13
**visibly** 16:14
**visiting** 18:6
**vs** 1:9

**w**

**waiting** 18:8 20:1
  24:7
**waived** 32:7
**want** 5:9 13:8
  19:24,25 20:6,10
  28:7,11,14,18
  31:17,19

**[wanted - yelling]**                                                              Page 8

| |
|---|
| **wanted**  13:5 20:12 20:13 21:2 25:2,8 27:24 |
| **washington**  6:6 8:6 |
| **way**  4:22 22:6 24:25 |
| **went**  7:18,19 18:8 29:24 |
| **wet**  30:16 |
| **wish**  14:17 |
| **witness**  32:5,7 33:12 |
| **words**  15:24 19:23 |
| **work**  11:20 |
| **worked**  11:14,15 11:16 |
| **working**  6:11 11:17 16:4 30:17 |
| **works**  4:22 |
| **written**  4:4 |

| **x** |
|---|
| **x**  3:1 |

| **y** |
|---|
| **y'all**  31:17 |
| **yeah**  6:25 12:15 14:14 17:15 19:12 25:24 29:23 31:19 |
| **year**  8:15 15:17 23:7 25:15 28:1 |
| **year's**  23:4,5 |
| **years**  7:7,13,21 8:22,23 9:5 11:2 14:12 19:3 25:5 25:11 29:6,17,18 |
| **yelling**  18:4 |

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted
to access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.