

Deposition of:

**Jezreel Custodio**

*June 5, 2020*

In the Matter of:

**Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al**

Veritext Legal Solutions

800.808.4958 | calendar-atl@veritext.com | 770.343.9696

Jezreel Custodio                                June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
 2                    COLUMBUS DIVISION
 3
      RODRIGO ARREOLA, as parent of ) CASE NO.:
 4    Hector Arreola, Deceased, and ) 4:19-CV-00005-CDL
      as Personal Representative    )
 5    and Administrator of the      )
      Estate of Hector Arreola,     )
 6    CONCEPCION ARREOLA, as parent )
      of Hector Arreola and S.A.,   )
 7    minor child of Hector Arreola )
      by next friend Jezreel Imee   )
 8    Custodio,                     )
            Plaintiffs,             )
 9                                  )
      v.                            )
10                                  )
      THE CONSOLIDATED GOVERNMENT OF)
11    COLUMBUS, GEORGIA, OFFICER    )
      MICHAEL AGUILAR, in his       )
12    individual and official       )
      capacity, OFFICER BRIAN DUDLEY)
13    in his individual and official)
      capacity, OFFICER AARON       )
14    EVRARD, in his individual and )
      official capacity, and        )
15    COLUMBUS POLICE DEPARTMENT     )
      CHIEF OF POLICE RICHARD T.    )
16    BOREN, in his individual and  )
      official capacity,            )
17          Defendants.             )
18
19
20
21          The deposition of JEZREEL CUSTODIO, taken by
22    the Defendant, before Russell D. Anderson, a
23    Georgia Certified Court Reporter, at ███████
   ████████████████████████████████████████ on
25    the 5th of June, 2020, beginning at 2:00 P.M.
```

Jezreel Custodio                                          June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 2

```
 1               A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4         HON. MARK POST

 5         3 Bradley Park Court, Suite F

 6         Columbus, Georgia, 31904

 7         mpost@markpostlaw.com

 8

 9   FOR THE DEFENDANTS:

10         HON. TYLER CASHBAUGH

11         HON. ALAN SNIPES

12         3rd Floor, Synovus Building

13         Bay Avenue

14         Columbus, Georgia, 31902

15         tcashbaugh@psstf.com

16         ags@passtf.com

17

18

19

20

21

22         RUSSELL D. ANDERSON, COURT REPORTER

23                P.  O. BOX 2572

24         COLUMBUS, GEORGIA  31902-2572

25                (706) 905-1759
```

Jezreel Custodio                                    June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                        Page 3

1                    D I S C L O S U R E

2              VERITEXT LEGAL SOLUTIONS

3          FIRM CERTIFICATE AND DISCLOSURE

4          Veritext represents that the foregoing

   transcript as produced by our Production

5   Coordinators, Georgia Certified Notaries, is a

6   true, correct and complete transcript of the

7   colloquies, questions and answers as submitted by

8   the certified court reporter in this case.

9   Veritext further represents that the attached

10  exhibits, if any, are a true, correct and

11  complete copy as submitted by the certified

12  reporter, attorneys or witness in this case; and

13  that the exhibits were handled and produced

14  exclusively through our Production Coordinators,

15  Georgia Certified Notaries. Copies of notarized

16  production certificates related to this

17  proceeding are available upon request to

18  litsup-ga@veritext.com.

19          Veritext is not taking this deposition under

20  any relationship that is prohibited by OCGA

21  15-14-37(a)and(b). Case-specific discounts are

22  automatically applied to all parties, at such

23  time as any party receives a discount. Ancillary

24  services such as calendar and financial reports

25  are available to all parties upon request.

Jezreel Custodio                                    June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 4

1                        STIPULATIONS

2

3        IT IS STIPULATED AND AGREED, by and between

4    the parties through their respective counsel that

5    the deposition of JEZREEL CUSTODIO, may be

6    taken before Russell D. Anderson, a Georgia

7    Certified Court Reporter, at ███████████████

8    ████████████████████████████, on the 5th of

9    June, 2020, beginning at 2:00 P.M.

10       IT IS STIPULATED AND AGREED, that the

11   signature and reading of the deposition by the

12   witness is waived, the deposition to have the same

13   force and effect as if full compliance had been

14   had with all laws and rules of court relating to

15   the taking of depositions.

16       IT IS FURTHER STIPULATED AND AGREED, that it

17   shall not be necessary for any objections to be

18   made by counsel to any questions, except as to the

19   form of the question and that counsel for the

20   parties may make objections and assign grounds at

21   the time of trial, or at the time said deposition

22   is offered in evidence, or prior thereto.

23       IT IS FURTHER STIPULATED AND AGREED, that

24   notice of filing of the deposition by the court

25   reporter is waived.

Page 5

1                          INDEX

2                                              PAGE

3    Examination by Mr. Snipes ............. 6

4    Certificate of Reporter ............... 17

5

6                    INDEX OF EXHIBITS

7    No Exhibits Identified.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 4:19-cv-00005-CDL   Document 70   Filed 03/15/21   Page 8 of 31
Jezreel Custodio                               June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 6

1                D-E-P-O-S-I-T-I-O-N

2                  JEZREEL CUSTODIO

3        having been first duly sworn, testified

4                      as follows:

5                  CROSS-EXAMINATION

6    BY MR. SNIPES:

7        Q.   All right. Good afternoon, Ms.

8    Custodio or good morning to you in Hawaii. My

9    name is Alan Snipes. I represent the Defendants

10   in this lawsuit. You and I met when we took your

11   deposition the first time on the April 23, 2020.

12   Do you remember giving that deposition?

13       A.   Yes, I do.

14       Q.   And when you gave that deposition on

15   April 23rd I assume everything you told me under

16   oath was true?

17       A.   Yes.

18       Q.   All right. In your prior deposition

19   you testified that you broke up with Mr. Arreola

20   sometime in late 2011; is that right?

21       A.   Yes, in 2011. Correct.

22       Q.   And Mr. Arreola was involved in an

23   incident that has resulted in this lawsuit on

24   January 9, 2017; is that right?

25       A.    Right.

Page 7

1      Q.   All right. So I want to talk to you

2   about the period from late 2011 through January

3   of 2017. And specifically text messages that you

4   had Hector Arreola who during that time.

5      A.   Okay.

6      Q.   Do you understand the time period I'm

7   talking about?

8      A.   Yes.

9      Q.   All right. You testified in your prior

10  deposition that you had always had iPhones during

11  that time period; is that right?

12     A.   Correct.  It seemed actually from 2011

13  up until his death in 2017, correct?

14     Q.   Yes.

15     A.   Yes.

16     Q.   And at your prior deposition I asked

17  you to go back into your iPhones and try to

18  recover text messages between you and Hector

19  Arreola; do you recall that?

20     A.   Yes.

21     Q.   Can you tell me what efforts you

22  undertook to do that and what you found?

23     A.   Well, the iPhone at that time, after my

24  deposition I told you that I don't have -- I had

25  a different phone at that time, which was a

Page 8

1    iPhone 6S. And so for that phone it's not

2    working properly so I couldn't take screen shots.

3    So I took photos of the text messages from that

4    phone that I had with Hector and those are the

5    copies that I sent out to Mark.

6         Q.   All right. Did you have any other

7    iPhones with text messages between you and

8    Hector?

9         A.   That's the only iPhone that I had text

10   messages with him. But the other ones are older

11   and I don't have access to all of that because

12   they had already broke.

13        Q.   All right. You testified about a cell

14   phone that you previously had that you thought

15   was at your parent's house?

16        A.   Can you repeat that, please?

17        Q.   In your prior deposition you said one

18   of your prior Iphones might be at your parent's

19   house?

20        A.   Yes. So that was an iPhone 4 from

21   years ago which I'm not sure if -- I don't think

22   it's working. So the only phones that I have on

23   me are the ones that I showed you on that

24   deposition.

25        Q.   And so during the deposition we had you

Jezreel Custodio                                    June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 9

1    had hold up the phone and scroll through it on

2    the ZOOM call; do you recall that?

3          A.   Yes.

4          Q.   All right. And what type of iPhone was

5    that one that you were holding up to the Webb

6    camera?

7          A.   That was the iPhone 6S.

8          Q.   All right. And that phone that you

9    held up that day was the phone that you

10   ultimately took the screen shots of the text

11   messages; is that right?

12         A.   I took a picture of the phone from the

13   text messages from that phone, yeah.

14         Q.   Okay.  You took -- describe for me how

15   you got these images that you sent me?

16         A.   Well, for the images from that phone I

17   couldn't take screen shots because that phone is

18   not working properly, so I took photos of the

19   phone itself and then just sent those photos to

20   Mark, to his email.

21         Q.   Okay. You took another phone and took

22   photos of that phone and sent those pictures to

23   Mark?

24         A.   Correct.

25         Q.   Now, of the text messages that you

Page 10

1   produced to Mr. Post, were from roughly July of

2   2016 on and off through November of 2016; is that

3   right?

4        A.   No. Well, the messages that I did send

5   are from -- I guess the last message that I

6   received from him was on New Year's of 2017. I

7   guess New Year's Eve or New Year's Day.

8        Q.   Okay.

9        A.   I can't remember, from what I can

10  remember.

11       Q.   You're correct. I apologize, Ms.

12  Custodio, I wasn't looking at the last page. So

13  the text messages that you produced to us after

14  your deposition were from roughly July 4, 2016

15  through the last one being January 1 of 2017; is

16  that right?

17       A.   That's right.

18       Q.   Now, as I looked through those text

19  messages they all appear to be from Hector; is

20  that right?

21       A.   Correct.

22       Q.   Okay. Did you respond to any of them?

23       A.   No. From what I can remember, no.

24       Q.   And why didn't you respond to his text

25  messages?

Page 11

1      A.   Why haven't I responded? Like did I

2  not respond to his text message?

3      Q.   Yes.

4      A.   Is that your question? At that time I

5  felt like it didn't really warrant a text message

6  -- a text back from me. And that was the

7  decision that I made during that time.

8      Q.   Other than these text messages you

9  produced to us through these photographs that you

10  shared with Mr. Post, do you believe you had

11  other text messages with Hector but they're just

12  on a phone that you can't access; is that right?

13      A.   The phones that I don't have any more,

14  correct. I don't have access to or don't have

15  any more.

16      Q.   All right. So you know there is other

17  text messages out there, you just don't have

18  access to them; is that what you're saying?

19      A.   Correct.

20      Q.   Now, in your deposition that I took

21  before -- well, strike that, let me ask you this.

22      Your prior deposition the Court Reporter

23  there made a transcript of the deposition and you

24  knew that they were doing that at the time. Have

25  you seen the transcripts?

Page 12

1       A.   I got a copy of it, I skimmed through

2    it yesterday or two days ago.

3       Q.   Okay. Well, since we don't have the

4    text messages, I need to ask you a little bit

5    about what they say. And in particularly on page

6    19 of the transcript, your answer at your prior

7    deposition was, "Because I felt harassed, because

8    sometimes the extent of the text messages that

9    were sent to me aren't very nice. Like nice

10   words I would say and I just didn't want that

11   type of negativity to be around."

12       Can you describe for me the nature of those

13   text messages that were, as you said, not very

14   nice?

15            MR. POST: I object based on the fact

16       that that's been asked and answered before.

17       Go ahead and answer at this point for the

18       deposition.

19            THE WITNESS: Okay.  I say -- I got

20       -- like I felt like the messages were rude

21       in nature and I didn't want to deal with

22       them.

23   BY MR. SNIPES:

24       Q.   And what do you mean by rude?

25       A.   He's upset that I wouldn't talk to him,

Page 13

```
 1   so he called me like really mean words, that I
 2   must be a --
 3        Q.   All right.
 4        A.   Yeah. That I'm mean for not talking to
 5   him or responding to his text messages. They
 6   were just mean in nature.
 7        Q.   All right. Did he call you names?
 8        A.   Yes.
 9        Q.   And what type of names did he call you?
10        A.   From what I can remember he just called
11   me a bitch for not talking to him.
12        Q.   Did he threaten you?
13        A.   No. From what I can remember, no.
14        Q.   Did he ever threaten your daughter?
15        A.   No. Definitely not.
16        Q.   Did he threaten your current boyfriend
17   or any member of your family?
18        A.   No.
19        Q.   Did you ever feel like Hector was
20   stalking you?
21        A.   I didn't feel -- no, I didn't feel that
22   way.
23        Q.   Were you ever concerned for your
24   safety?
25        A.   Sorry, you said stalking, correct? Is
```

Page 14

1    that what was your question, previous question?

2         Q.    You broke up a little on me.

3         A.    Okay. Your question was have I ever

4    felt like he was stalking me, correct?

5         Q.    Yes.

6         A.    Okay. No, I don't -- I didn't.

7         Q.    Were you ever concerned for your safety

8    about something Hector might do?

9         A.    Yes.

10        Q.    And why were your concerned for your

11   safety?

12        A.    I think I was just worried that he

13   would come over unannounced and I guess I'm just

14   worried that he would be -- he'll be -- he'll

15   come to my parent's house and just see my

16   daughter like without my -- I guess without my

17   consent.

18        Q.    And you didn't want him to see your

19   daughter at that time under any circumstances?

20        A.    I would have if it were like through

21   court or something like that. Like with someone

22   there, not just me.

23        Q.    Did you not feel safe if Hector was

24   around?

25        A.    During that time, no.

Jezreel Custodio                                      June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

                                                    Page 15

 1      Q.   And you wouldn't have felt that your

 2   daughter was safe if Hector was around during

 3   that time; is that right?

 4      A.   Correct.

 5      Q.   Did Hector ever deny being the father

 6   of your daughter?

 7      A.   No.

 8      Q.   Now, I asked you earlier about efforts

 9   you made to retrieve text messages.  As we sit

10   here today can you think of anything else you

11   could do to find any of those old text messages?

12      A.   Well, all I have are the ones that is

13   on the iPhone 6.  And since Hector didn't have an

14   iPhone I won't be able the retrieve it through

15   any other -- there is no other way that I could

16   have been able to retrieve all of that.

17      Q.   In your prior deposition, and I'm

18   quoting from page 20, you also testified that you

19   were keeping text messages because you were

20   worried, quote, he was going to take me to court

21   eventually one day to try to get custody of my

22   daughter, then I would have a case against him,

23   close quote.

24      Do you remember testifying to that?

25      A.   Yes.

Case 4:19-cv-00005-CDL   Document 70   Filed 03/15/21   Page 18 of 31
Jezreel Custodio                                June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 16

1        Q.   All right. Now, I know you don't have

2    the text messages because they're on an old

3    phone, but can you describe for me the content of

4    text messages about custody of your daughter?

5        A.   About the custody, if he ever -- are

6    you asking if he's ever mentioned that in any of

7    the text messages he sent me from years ago?

8        Q.   Yes.

9        A.   No. He hasn't said anything about

10   that.

11       Q.   You were just concerned that one day

12   down the road he might; is that fair?

13       A.   Correct. Yes.

14       Q.   Did you ever email with Hector or

15   communicate in any other way?

16       A.   We emailed like years ago. I would say

17   in the beginning of our relationship, I'd say

18   -- but that was about 13, 12 or 13 years ago.

19       Q.   Okay. All right.  So in the time frame

20   I was talking about earlier from the end of 2011

21   when you broke up until his death in 2017, like

22   most of us casual conversation would have been

23   text messages?

24       A.   Correct.

25       Q.   Were there any particular text messages

Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

Page 17

1    that Hector sent that stick out in your mind that

2    you thought you might could use to make a case

3    against him in the future if you needed to?

4         A.   Well, I guess just him when he would

5    call me names.

6         Q.   Okay. And other than the names you

7    mentioned earlier, were there any other

8    particular names that he liked to call you in a

9    derogatory way?

10        A.   No. That's pretty much it, just that.

11        Q.   Okay. Ms. Custodio, that's all the

12   questions I have.

13             MR. SNIPES: Mark, do you have any

14        questions?

15             MR. POST: I do not.  Everybody have a

16        good day, and good morning to you Jezreel.

17             COURT REPORTER: Copy, Mr. Post?

18             MR. POST: Yes.

19             COURT REPORTER: Copy, Mr. Snipes?

20             MR. SNIPES: Sure.

21             MR. POST: She doesn't need to read and

22        sign.

23             DEPOSITION CONCLUDED at 2:28 P.M.

24

25

Jezreel Custodio                                June 5, 2020
An eola, Rodrigo v. ConsolidatedGovernment of Columbus, Georgia, et al

                                                    Page 18

1                         **CERTIFICATE**

2       **STATE OF GEORGIA**

3       **COUNTY OF MUSCOGEE**

4            I, Russell D. Anderson, a Georgia Certified

5       Court Reporter, in and for Muscogee County,

6       Georgia, do hereby certify that the aforegoing

7       pages numbered 2 through 17, inclusive, contain a

8       true and correct transcription of the

9       stenographic notes taken by me on the 5th of

10      June, 2020 of the testimony of Jezreel Custodio,

11      held at ███████████████████████████████

        ████████████████   to the best of my skill and

13      ability.

14           I further certify that I am not of counsel,

15      nor am I related to the parties in this action,

16      nor am I in anywise interested in the result of

17      said action.

18      WITNESS MY HAND, this 15th day of June, 2020.

19

20

21

22      RUSSELL D. ANDERSON

23      COURT REPORTER

24      CERTIFICATE NO. B-403

25

Jezreel Custodio                                                    June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**[00005 - conversation]**                                              Page 1

| **0** | **5** | |
|---|---|---|
| 00005   1:4 | 5th   1:25 4:8 18:9 | |

| **1** | **6** |
|---|---|
| **1**   10:15 | **6**   5:3 15:13 |
| **12**   16:18 | **6s**   8:1 9:7 |
| **12290**   18:21 | **7** |
| **13**   16:18,18 | **706**   2:25 |
| **15-14-37**   3:21 | **9** |
| **15th**   18:18 | **9**   6:24 |
| **17**   5:4 18:7 | **905-1759**   2:25 |
| **19**   12:6 | **96815**   1:24 4:8 |
| | 18:12 |

**appear**   10:19
**applied**   3:22
**april**   6:11,15
**arreola**   1:3,4,5,6,6
  1:7 6:19,22 7:4,19
**asked**   7:16 12:16
  15:8
**asking**   16:6
**assign**   4:20
**assume**   6:15
**attached**   3:9
**attorneys**   3:12
**automatically**
  3:22
**available**   3:17,25
**avenue**   1:24 2:13
  4:8 18:11

**call**   9:2 13:7,9
  17:5,8
**called**   13:1,10
**camera**   9:6
**capacity**   1:12,13
  1:14,16
**case**   1:3 3:8,12,21
  15:22 17:2
**cashbaugh**   2:10
**casual**   16:22
**cdl**   1:4
**cell**   8:13
**certificate**   3:3 5:4
  18:1,24
**certificates**   3:16
**certified**   1:23 3:5
  3:8,11,15 4:7 18:4
**certify**   18:6,14
**chief**   1:15
**child**   1:7
**circumstances**
  14:19
**close**   15:23
**colloquies**   3:7
**columbus**   1:2,11
  1:15 2:6,14,24
**come**   14:13,15
**communicate**
  16:15
**complete**   3:6,11
**compliance**   4:13
**concepcion**   1:6
**concerned**   13:23
  14:7,10 16:11
**concluded**   17:23
**consent**   14:17
**consolidated**   1:10
**contain**   18:7

---

| **2** | **a** |
|---|---|
| **2**   18:7 | |
| **20**   15:18 | **aaron**   1:13 |
| **2011**   6:20,21 7:2 | **ability**   18:13 |
|   7:12 16:20 | **able**   15:14,16 |
| **2016**   10:2,2,14 | **access**   8:11 11:12 |
| **2017**   6:24 7:3,13 |   11:14,18 |
|   10:6,15 16:21 | **action**   18:15,17 |
| **2020**   1:25 4:9 6:11 | **administrator**   1:5 |
|   18:10,18 | **aforegoing**   18:6 |
| **23**   6:11 | **afternoon**   6:7 |
| **23rd**   6:15 | **ago**   8:21 12:2 16:7 |
| **2572**   2:23 |   16:16,18 |
| **2:00**   1:25 4:9 | **agreed**   4:3,10,16 |
| **2:28**   17:23 |   4:23 |

**b**

**b**   3:21 18:24
**back**   7:17 11:6
**based**   12:15
**bay**   2:13
**beginning**   1:25 4:9
  16:17
**believe**   11:10
**best**   18:12
**bit**   12:4
**bitch**   13:11
**boren**   1:16
**box**   2:23
**boyfriend**   13:16
**bradley**   2:5
**brian**   1:12
**broke**   6:19 8:12
  14:2 16:21
**building**   2:12

---

| **3** | |
|---|---|
| **3**   2:5 | **ags**   2:16 |
| **31902**   2:14 | **aguilar**   1:11 |
| **31902-2572**   2:24 | **ahead**   12:17 |
| **31904**   2:6 | **alan**   2:11 6:9 |
| **320** ▬▬▬▬▬ | **ancillary**   3:23 |
| **3rd**   2:12 | **anderson**   1:22 |
| |   2:22 4:6 18:4,22 |

**c**

| **4** | **answer**   12:6,17 |
|---|---|
| **4**   8:20 10:14 | **answered**   12:16 |
| **403**   18:24 | **answers**   3:7 |

Jezreel Custodio                                        June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

| **4:19**  1:4 | **anywise**  18:16<br>**apologize**  10:11 | **c**  2:1 3:1<br>**calendar**  3:24 | **content**  16:3<br>**conversation**<br>   16:22 |
|---|---|---|---|

Jezreel Custodio                                              June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**[coordinators - iphones]**                                    Page 2

**coordinators** 3:5
  3:14
**copies** 3:15 8:5
**copy** 3:11 12:1
  17:17,19
**correct** 3:6,10
  6:21 7:12,13 9:24
  10:11,21 11:14,19
  13:25 14:4 15:4
  16:13,24 18:8
**counsel** 4:4,18,19
  18:14
**county** 18:3,5
**court** 1:1,23 2:5
  2:22 3:8 4:7,14,24
  11:22 14:21 15:20
  17:17,19 18:5,23
**cross** 6:5
**current** 13:16
**custodio** 1:8,21
  4:5 6:2,8 10:12
  17:11 18:10
**custody** 15:21
  16:4,5
**cv** 1:4

**d**

**d** 1:22 2:22 3:1 4:6
  6:1 18:4,22
**daughter** 13:14
  14:16,19 15:2,6,22
  16:4

**definitely** 13:15
**deny** 15:5
**department** 1:15
**deposition** 1:21
  3:19 4:5,11,12,21
  4:24 6:11,12,14,18
  7:10,16,24 8:17,24
  8:25 10:14 11:20
  11:22,23 12:7,18
  15:17 17:23
**depositions** 4:15
**derogatory** 17:9
**describe** 9:14
  12:12 16:3
**different** 7:25
**disclosure** 3:3
**discount** 3:23
**discounts** 3:21
**district** 1:1,1
**division** 1:2
**doing** 11:24
**dudley** 1:12
**duly** 6:3

**e**

**e** 2:1,1 3:1 6:1
**earlier** 15:8 16:20
  17:7
**effect** 4:13
**efforts** 7:21 15:8
**email** 9:20 16:14
**emailed** 16:16

**exhibits** 3:10,13
  5:6,7
**extent** 12:8

**f**

**f** 2:5
**fact** 12:15
**fair** 16:12
**family** 13:17
**father** 15:5
**feel** 13:19,21,21
  14:23
**felt** 11:5 12:7,20
  14:4 15:1
**filing** 4:24
**financial** 3:24
**find** 15:11
**firm** 3:3
**first** 6:3,11
**floor** 2:12
**follows** 6:4
**force** 4:13
**foregoing** 3:4
**form** 4:19
**found** 7:22
**frame** 16:19
**friend** 1:7
**full** 4:13
**further** 3:9 4:16
  4:23 18:14
**future** 17:3

**g**

**government** 1:10
**grounds** 4:20
**guess** 10:5,7 14:13
  14:16 17:4

**h**

**hand** 18:18
**handled** 3:13
**harassed** 12:7
**hawaii** 1:24 4:8
  6:8 18:12
**he'll** 14:14,14
**hector** 1:4,5,6,7
  7:4,18 8:4,8 10:19
  11:11 13:19 14:8
  14:23 15:2,5,13
  16:14 17:1
**held** 9:9 18:11
**hold** 9:1
**holding** 9:5
**hon** 2:4,10,11
  ▮▮▮▮▮ 1:24 4:8
  18:11
**house** 8:15,19
  14:15

**i**

**identified** 5:7
**images** 9:15,16
**imee** 1:7
**incident** 6:23
**inclusive** 18:7

| | | | |
|---|---|---|---|
| **day**  9:9 10:7 15:21 16:11 17:16 18:18 | **estate**  1:5 | **ga**  3:18 | **index**  5:1,6 |
| **days**  12:2 | **eve**  10:7 | **georgia**  1:1,11,23 2:6,14,24 3:5,15 4:6 18:2,4,6 | **individual**  1:12,13 1:14,16 |
| **deal**  12:21 | **eventually**  15:21 | | **interested**  18:16 |
| **death**  7:13 16:21 | **everybody**  17:15 | **giving**  6:12 | **involved**  6:22 |
| **deceased**  1:4 | **evidence**  4:22 | **go**  7:17 12:17 | **iphone**  7:23 8:1,9 8:20 9:4,7 15:13 15:14 |
| **decision**  11:7 | **evrard**  1:14 | **going**  15:20 | |
| **defendant**  1:22 | **examination**  5:3 6:5 | **good**  6:7,8 17:16 17:16 | **iphones**  7:10,17 8:7,18 |
| **defendants**  1:17 2:9 6:9 | **exclusively**  3:14 | | |

Jezreel Custodio                                                    June 5, 2020

Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**[january - relating]**                                                    Page 3

| j | | | |
|---|---|---|---|

**january**  6:24 7:2 10:15
**jezreel**  1:7,21 4:5 6:2 17:16 18:10
**july**  10:1,14
**june**  1:25 4:9 18:10,18

**k**

**keeping**  15:19
**knew**  11:24
**know**  11:16 16:1

**l**

**l**  3:1
**late**  6:20 7:2
**laws**  4:14
**lawsuit**  6:10,23
**legal**  3:2
**liked**  17:8
███████████
██████
**litsup**  3:18
**little**  12:4 14:2
**looked**  10:18
**looking**  10:12

**m**

**mark**  2:4 8:5 9:20 9:23 17:13
**markpostlaw.com**  2:7
**mean**  12:24 13:1,4

11:8,11,17 12:4,8 12:13,20 13:5 15:9,11,19 16:2,4 16:7,23,25
**met**  6:10
**michael**  1:11
**middle**  1:1
**mind**  17:1
**minor**  1:7
**morning** 6:8 17:16
**mpost**  2:7
**muscogee** 18:3,5

**n**

**n**  2:1 6:1
**name**  6:9
**names**  13:7,9 17:5 17:6,8
**nature**  12:12,21 13:6
**necessary**  4:17
**need**  12:4 17:21
**needed**  17:3
**negativity**  12:11
**new**  10:6,7,7
**nice**  12:9,9,14
**notaries**  3:5,15
**notarized**  3:15
**notes**  18:9
**notice**  4:24
**november**  10:2
**numbered**  18:7

**o**

**official**  1:12,13,14 1:16
**okay**  7:5 9:14,21 10:8,22 12:3,19 14:3,6 16:19 17:6 17:11
**old**  15:11 16:2
**older**  8:10
**ones**  8:10,23 15:12

**p**

**p**  2:1,1,23 6:1
**p.m.**  1:25 4:9 17:23
**page**  5:2 10:12 12:5 15:18
**pages**  18:7
**parent**  1:3,6
**parent's**  8:15,18 14:15
**park**  2:5
**particular**  16:25 17:8
**particularly**  12:5
**parties**  3:22,25 4:4 4:20 18:15
**party**  3:23
**passtf.com** 2:16
**period**  7:2,6,11
**personal**  1:4
**phone**  7:25 8:1,4 8:14 9:1,8,9,12,13 9:16,17,19,21,22

**plaintiffs**  1:8
**please**  8:16
**point**  12:17
**police**  1:15,15
**post**  2:4 10:1 11:10 12:15 17:15 17:17,18,21
**pretty**  17:10
**previous**  14:1
**previously**  8:14
**prior**  4:22 6:18 7:9 7:16 8:17,18 11:22 12:6 15:17
**proceeding**  3:17
**produced**  3:4,13 10:1,13 11:9
**production**  3:4,14 3:16
**prohibited**  3:20
**properly**  8:2 9:18
**psstf.com** 2:15

**q**

**question**  4:19 11:4 14:1,1,3
**questions**  3:7 4:18 17:12,14
**quote**  15:20,23
**quoting**  15:18

**r**

**r**  2:1 3:1
**read**  17:21

Jezreel Custodio                                    June 5, 2020

Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

| | | | |
|---|---|---|---|
| 13:6 | **o**  2:23 3:1 6:1,1 | 11:12 16:3 | **reading**  4:11 |
| **member** 13:17 | **oath**  6:16 | **phones**  8:22 11:13 | **really**  11:5 13:1 |
| **mentioned** 16:6 | **object**  12:15 | **photographs**  11:9 | **recall**  7:19 9:2 |
| 17:7 | **objections**  4:17,20 | **photos**  8:3 9:18,19 | **received**  10:6 |
| **message** 10:5 11:2 | **ocga**  3:20 | 9:22 | **receives**  3:23 |
| 11:5 | **offered**  4:22 | **picture**  9:12 | **recover**  7:18 |
| **messages**  7:3,18 | **officer**  1:11,12,13 | **pictures**  9:22 | **related**  3:16 18:15 |
| 8:3,7,10 9:11,13 | | **plaintiff**  2:3 | **relating**  4:14 |
| 9:25 10:4,13,19,25 | | | |

Jezreel Custodio                                                June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**relationship** 3:20
   16:17
**remember** 6:12
   10:9,10,23 13:10
   13:13 15:24
**repeat** 8:16
**reporter** 1:23 2:22
   3:8,12 4:7,25 5:4
   11:22 17:17,19
   18:5,23
**reports** 3:24
**represent** 6:9
**representative** 1:4
**represents** 3:4,9
**request** 3:17,25
**respective** 4:4
**respond** 10:22,24
   11:2
**responded** 11:1
**responding** 13:5
**result** 18:16
**resulted** 6:23
**retrieve** 15:9,14
   15:16
**richard** 1:15
**right** 6:7,18,20,24
   6:25 7:1,9,11 8:6
   8:13 9:4,8,11 10:3
   10:16,17,20 11:12
   11:16 13:3,7 15:3
   16:1,19
**road** 16:12
**rodrigo** 1:3
**roughly** 10:1,14
**rude** 12:20,24
**rules** 4:14
**russell** 1:22 2:22
   4:6 18:4,22

**s**

**s** 2:1 3:1,1 6:1
**s.a.** 1:6
**safe** 14:23 15:2
**safety** 13:24 14:7
   14:11
**saying** 11:18
**screen** 8:2 9:10,17
**scroll** 9:1
**see** 14:15,18
**seen** 11:25
**send** 10:4
**sent** 8:5 9:15,19,22
   12:9 16:7 17:1
**services** 3:24
**shared** 11:10
**shots** 8:2 9:10,17
**showed** 8:23
**sign** 17:22
**signature** 4:11
   18:21
**sit** 15:9
**skill** 18:12
**skimmed** 12:1
**snipes** 2:11 5:3 6:6
   6:9 12:23 17:13
   17:19,20
**solutions** 3:2
**sorry** 13:25
**specific** 3:21
**specifically** 7:3
**stalking** 13:20,25
   14:4
**state** 18:2
**states** 1:1
**stenographic** 18:9
**stick** 17:1
**stipulated** 4:3,10
   4:16,23
**stipulations** 4:1

**strike** 11:21
**submitted** 3:7,11
**suite** 2:5
**sure** 8:21 17:20
**sworn** 6:3
**synovus** 2:12

**t**

**t** 1:15 6:1
**take** 8:2 9:17
   15:20
**taken** 1:21 4:6
   18:9
**talk** 7:1 12:25
**talking** 7:7 13:4,11
   16:20
**tcashbaugh** 2:15
**tell** 7:21
**testified** 6:3,19 7:9
   8:13 15:18
**testifying** 15:24
**testimony** 18:10
**text** 7:3,18 8:3,7,9
   9:10,13,25 10:13
   10:18,24 11:2,5,6
   11:8,11,17 12:4,8
   12:13 13:5 15:9
   15:11,19 16:2,4,7
   16:23,25
**thereto** 4:22
**think** 8:21 14:12
   15:10
**thought** 8:14 17:2
**threaten** 13:12,14
   13:16
**time** 3:23 4:21,21
   6:11 7:4,6,11,23
   7:25 11:4,7,24
   14:19,25 15:3
   16:19
**today** 15:10

**told** 6:15 7:24
**transcript** 3:4,6
   11:23 12:6
**transcription** 18:8
**transcripts** 11:25
**trial** 4:21
**true** 3:6,10 6:16
   18:8
**try** 7:17 15:21
**two** 12:2
**tyler** 2:10
**type** 9:4 12:11
   13:9

**u**

**u** 3:1
**ultimately** 9:10
**unannounced**
   14:13
**understand** 7:6
**undertook** 7:22
**united** 1:1
**upset** 12:25
**use** 17:2

**v**

**v** 1:9
**veritext** 3:2,4,9,19
**veritext.com.** 3:18

**w**

**waived** 4:12,25
**want** 7:1 12:10,21
   14:18
**warrant** 11:5
**way** 13:22 15:15
   16:15 17:9
**webb** 9:5
**witness** 3:12 4:12
   12:19 18:18
**words** 12:10 13:1
**working** 8:2,22
   9:18

Jezreel Custodio                                                    June 5, 2020
Arreola, Rodrigo v. Consolidated Government of Columbus, Georgia, et al

**[worried - zoom]**                                                   Page 5

| | |
|---|---|
| **worried** | 14:12,14 |
| | 15:20 |
| **y** | |
| **yeah** | 9:13 13:4 |
| **year's** | 10:6,7,7 |
| **years** | 8:21 16:7,16 |
| | 16:18 |
| **yesterday** | 12:2 |
| **z** | |
| **zoom** | 9:2 |

Georgia Code

Title 9, Chapter 11

Article 5, Section 9-11-30

(e) Review by witness; changes; signing.
If requested by the deponent or a party before
completion of the deposition, the deponent shall
have 30 days after being notified by the officer
that the transcript or recording is available in
which to review the transcript or recording and, if
there are changes in form or substance, to sign a
statement reciting such changes and the reasons
given by the deponent for making them. The officer
shall indicate in the certificate prescribed by
paragraph (1) of subsection (f) of this Code
section whether any review was requested and, if
so, shall append any changes made by the deponent
during the period allowed. If the deposition is not
reviewed and signed by the witness within 30 days
of its submission to him or her, the officer shall
sign it and state on the record that the deposition
was not reviewed and signed by the deponent within
30 days. The deposition may then be used as fully
as though signed unless, on a motion to suppress
under paragraph (4) of subsection (d) of Code

Section 9-11-32, the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.