```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

RODRIGO ARREOLA, CONCEPCION       *
ARREOLA, and S.A., ex rel.
JEZREEL IMEE CUSTODIO,            *

     Plaintiffs,                  *

vs.                               *      CASE NO. 4:19-CV-5 (CDL)

OFFICER MICHAEL AGUILAR,          *
OFFICER BRIAN DUDLEY, and
OFFICER AARON EVRARD,             *

     Defendants.                  *
```

O R D E R

Defendants have filed a motion in limine to exclude statements made by Raymond Tarvin who is now deceased and who allegedly witnessed from the front door of his house the struggle that Plaintiffs claim led to Hector Arreola's death. Prior to his death, Tarvin made multiple statements to law enforcement officers. He died before his deposition could be taken to preserve his testimony. Plaintiffs argue that his statements are admissible under Federal Rule of Evidence 807, the residual exception for otherwise inadmissible hearsay evidence. Defendants respond that the statements do not carry sufficient guarantees of trustworthiness to be admissible under Rule 807. The Court agrees. For the following reasons, Defendants' motion in limine (ECF No. 85) is granted.

DISCUSSION

Under Rule 807, otherwise inadmissible hearsay evidence is not excluded if "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Rule 807 was intended "to be used very rarely, and only in exceptional circumstances."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (quoting *United States v. Ingram*, 501 F.3d 963, 967 (8th Cir. 2007)).  As such, it "appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present."  *Id.* (quoting *United States v. Wright*, 363 F.3d 237, 245 (3d Cir. 2004)).

In determining whether a statement carries "exceptional guarantees of trustworthiness," courts may consider "the probable motivation of the declarant in making the statement, the circumstances under which [the statement] was made, the knowledge and qualifications of the declarant, and the existence of corroborating evidence."  *Bratt v. Genovese*, 782 F. App'x 959, 965 (11th Cir. 2019) (per curiam) (quoting *Rivers v. United States*, 777 F.3d 1306, 1315 (11th Cir. 2015)).  Essentially, a court must "look at 'the totality of the circumstances surrounding the making

2

of the statement and those rendering the declarant particularly worthy of belief.'" *Id.* (quoting *United States v. Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993)).

Tarvin's statements do not satisfy the stringent Rule 807 requirements. Defendants correctly note that several of Tarvin's assertions – such as his contention that the officers used tasers – are in fact just plain wrong and contradicted by the undisputed evidence.[1] *See* Pls.' Resp. to Defs.' Mot. in Lim. Ex. 2, Raymond Tarvin Statement to Off. Evrard 3, ECF No. 88-2 ("I heard the taser. I don't know how many times they tased him. But I heard the taser go off."). Additionally, Defendants argue that Tarvin's statements lack sufficient guarantees of trustworthiness because Tarvin was 79 years old and suffered at least one stroke prior to witnessing Arreola's arrest. While a witness is not incompetent simply because they are elderly and have had a stroke, evidence of these circumstances most certainly would have been explored in a thorough and sifting cross examination and would be essential for the jury to consider in deciding the truth of the matter.

---

[1] Plaintiffs speculate that there are other possible explanations for Tarvin's contention that an officer used a taser, such as potentially misidentifying a different sound as that of a taser firing. Defendants correctly note, however, that Tarvin is dead and thus cannot be cross-examined about what he meant when he said that an officer used a taser. Plaintiffs also speculate that a taser may actually have been used but do not point the Court to any evidence in the record suggesting that the officer Defendants used tasers at any point during the struggle.

Further, Tarvin's statements are not significantly more probative or necessary than other available admissible evidence. While Tarvin was a witness to Arreola's arrest, his son – Alan – was also a witness to Arreola's arrest. Alan is alive and can be called as a witness and cross-examined at trial. Concepcion Arreola was also a witness to Arreola's arrest, and can be called as a witness and cross-examined at trial. Plaintiffs speculate that Alan is biased because he was frequently in police custody and wanted to "suck up" to the officers. Pls.' Resp. to Defs.' Mot. in Lim. 7 n.7, ECF No. 88. Any such bias, however, can be addressed on cross examination in front of the jury.

Plaintiffs also contend that Raymond Tarvin's testimony is necessary because Concepcion Arreola, who observed the struggle from a closer location, "was sick," "awakened in the wee hours of the morning, "went outside in twenty-degree weather," "struggled with English," and "was in the stressful situation of watching the police struggle mightily with her son." Pls.' Resp. 6 n.6. The Court is unconvinced that Tarvin's statements are more probative than Concepcion Arreola's testimony, particularly given concerns about the reliability of Tarvin's statements due to his age and medical condition.[2]

---

[2] Plaintiffs also contend that Raymond Tarvin's testimony is unique because no other witness observed the entire duration of Arreola's struggle from that particular location. Plaintiffs note that Alan Tarvin, who watched the beginning of the struggle while standing behind his father, left to get coffee and returned to watch the struggle from

4

A party seeking to introduce out of court statements for the purpose of demonstrating the truth of what is contained in them must meet a high bar for them to be heard by a jury when the declarant is not available to be subjected to one of the most effective tools for ascertaining the truth—a thorough and sifting cross examination.  Plaintiffs have not met that bar here.  Rule 807 does not authorize the admissibility of Raymond Tarvin's hearsay statements.  And they must be excluded from evidence at trial.[3]

CONCLUSION

For the foregoing reasons, Defendants' motion in limine (ECF No. 85) is granted.  Raymond Tarvin's statements are inadmissible hearsay evidence and cannot be used at trial.[4]

IT IS SO ORDERED, this 11th day of June, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

a different location.  Pls.' Resp. 3.  The Court is unpersuaded that Raymond Tarvin's vantage point makes his testimony necessary or more probative than available evidence, which includes testimony from living witnesses who observed most of the struggle from the same or a similar location (Alan Tarvin) or the entire struggle from a closer location (Concepcion Arreola).

[3] In a footnote, Plaintiffs contend that at least some of Raymond Tarvin's statements are admissible as a present sense impression.  Plaintiffs, however, admit that these statements came nearly an hour after Raymond Tarvin witnessed the struggle.  Pl.'s Resp. 4 n.3.  Under these facts, Raymond Tarvin's statements do not qualify as a present sense impression.

[4] This evidence includes statements captured on Officer Evrard's body camera, Raymond Tarvin's handwritten witness note, a transcript of Raymond Tarvin's interview with the Columbus Police Department's Office of Professional Standards, and an audio recording of Raymond Tarvin's interview with the Office of Professional Standards.  Pls.' Resp. 2.